UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Ansly DAMUS, *et al.*, on behalf of themselves and others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>Kirstjen NIELSEN, Secretary of the Department of Homeland Security, in her official capacity, *et al.*<br><br>*Defendants.* | Civil Action No. _____ |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS N.J.J.R., H.A.Y., A.M.M., L.H.A., E.E.C.S., AND L.I.L.M.'S MOTION TO PROCEED ANONYMOUSLY AND TO FILE SUPPORTING EXHIBITS UNDER SEAL**

**BACKGROUND**

As alleged in the Complaint in this action, Plaintiffs N.J.J.R., H.A.Y., A.M.M., L.H.A., E.E.C.S., and L.I.L.M. ("Anonymous Plaintiffs") are asylum seekers detained by U.S. Immigration and Customs Enforcement ("ICE"), who have been found to have a credible fear of persecution if forced to return to their countries of origin and have been referred for hearings before immigration judges to pursue their asylum claims.  Their suit challenges the policy of the Department of Homeland Security ("DHS") of denying parole to them and others similarly situated without an individualized determination of flight risk or dangerousness, in order to deter other migrants from coming to the United States.

Because each of Anonymous Plaintiffs has been specifically targeted for violence and fears continued persecution, as well as retaliation for reporting their persecutors to governmental authorities by seeking asylum, Anonymous Plaintiffs respectfully request to file under seal Exhibits 1-6, their declarations in support of their motion, and to proceed anonymously in this litigation.  Anonymous Plaintiffs also seek to file under seal Exhibit 7, a list of Anonymous Plaintiffs' true names and alien numbers, matched with the pseudonyms they seek to use in this suit.  Finally, Anonymous Plaintiffs request an order prohibiting Defendants from publicly disclosing their identities.  (They do not seek to remain anonymous with respect to Defendants.)

Anonymous Plaintiffs fear that their persecution would become more severe if their status as asylum applicants were publicly disclosed.[1]  Specifically:

- Plaintiff L.I.L.M. is a native of Mexico, who fled after members of a cartel kidnapped two of his brothers and threatened to kill him and his family.  After his brothers were kidnapped, L.I.L.M. tried to investigate their disappearance, but members of the cartel came to his family home with guns, and threatened to "disappear" him and his family if he did not stop the investigation.  Fearing for his life, L.I.L.M. came to the United States to seek asylum, and is currently being detained at the James A. Musick detention facility in Irvine, California.  L.I.L.M. Decl. ¶¶ 2, 4-6.

- Plaintiff E.E.C.S. is a native of El Salvador, who fled after members of the MS-13 gang, as well as the Salvadoran police, beat him and threatened to kill him.  His cousin, a leader of MS-13, sent members of the gang to recruit E.E.C.S.  They also asked E.E.C.S. for information about his other family members, who were members of the Salvadoran

---

[1] The descriptions of the facts underlying Plaintiffs' asylum claims in this Memorandum and in other documents filed in this case are skeletal and not a complete account of their experiences.

military. After E.E.C.S. refused, members of the gang beat him. The police also targeted E.E.C.S. because they believed that he was a member of MS-13, because his cousin was a member of MS-13. Fearing for his life, E.E.C.S. came to the United States to seek asylum. E.E.C.S. is currently being detained at the James A. Musick detention facility in Irvine, California. E.E.C.S. Decl. ¶¶ 3-5.

- Plaintiff H.A.Y. is a native of Mexico, who fled after members of Gente Nueva, the armed wing of the Sinaloa cartel, threatened her family and took control of their home. In October 2017, members of the Gente Nueva came to H.A.Y.'s town, and "took" five people. One day, one of the workers on H.A.Y.'s husband's farm disappeared, and H.A.Y.'s husband began to receive threatening text messages from the disappeared worker's cell phone. H.A.Y. and her family left their home and fled to Ciudad Juárez, fearing that the Gente Nueva would come for them next; about a week later, they heard that the gang had indeed come to their house looking for H.A.Y.'s husband because they wanted to kill him. After the family received another phone call from the Gente Nueva indicating that they could look for and kill her husband whenever they wanted to, H.A.Y. and her husband sought safety in the United States. H.A.Y. is currently being detained at the El Paso Processing Center in El Paso, Texas. H.A.Y. Decl. ¶¶ 3, 7-16.

- Plaintiff A.M.M. is a native of Mexico, and the husband of Plaintiff H.A.Y. He fled Mexico with his wife when members of the Gente Nueva disappeared one of the workers on his cattle farm, and sent him messages from the disappeared worker's phone saying that "[they] ha[d] the owner of th[e] phone," and that A.M.M. was "on [their] list too." After fleeing to a different city in Mexico and hearing that members of the gang had showed up at their house, A.M.M. and H.A.Y. fled the country to seek asylum in the

United States. A.M.M. was separated from his wife and is currently being detained at the Otero County Processing Center in Chaparral, New Mexico. A.M.M. Decl. ¶¶ 1, 3-4, 7-18.

- Plaintiff N.J.J.R. is a native of Venezuela. N.J.J.R. was forced to flee Venezuela when members of the Círculos Bolivarianos, a government-supported armed group, showed up outside of his house, beat him, and threatened him with a gun, telling him that if he continued to participate in marches protesting the government, there would be problems. Because N.J.J.R. continued taking part in these political activities, believing that the cause was important, he continued to receive verbal death threats, and also received threatening text messages ten or twelve times from different numbers. When the situation in Venezuela worsened, N.J.J.R. fled the country and eventually entered the United States seeking asylum. N.J.J.R. is currently detained at the Essex County Correctional Facility in Newark, New Jersey. N.J.J.R. Decl. ¶¶ 1, 3-6.

- Plaintiff L.H.A. is a native of El Salvador. L.H.A. was forced to leave El Salvador when members of a dangerous gang attempted to recruit him, and threatened to kill him and his family if he did not work for them. After L.H.A. refused, they demanded that he give them a monthly payment, but he could not pay what they were demanding. The gang members then threatened to kill him, and warned him that if he went to the police, they would kill his family as well. L.H.A. fled the country and came to the United States to seek asylum. L.H.A. is currently detained at the El Paso Processing Center in El Paso, Texas. L.H.A. Decl. ¶¶ 2, 4, 6-9.

**ARGUMENT**

  **A. Legal Standard.**

  For a plaintiff to proceed anonymously, "the need for anonymity" should "outweigh[] the general presumption that parties' identities are public information and the risk of unfairness to the opposing party." *Qualls v. Rumsfeld*, 228 F.R.D. 8, 10 (D.D.C. 2005) (internal quotation marks and citation omitted).  The burden on Plaintiffs is not a heavy one at the time of filing—Plaintiffs need only make a "colorable argument in support of the request" that is "not frivolous." *Id.* at 10.  A trial court abuses its discretion when it fails to consider thoroughly "that in some cases the general presumption of open trials—including identification of parties and witnesses by their real names—should yield in deference to sufficiently pressing needs for party or witness anonymity." *James v. Jacobson*, 6 F.3d 233, 242 (4th Cir. 1993); *see also R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 172 (D.D.C. 2015); *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 189-90 (2d Cir. 2008); *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 684-87 (11th Cir. 2001); *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000).

  In keeping with these principles, this Court and the D.C. Circuit have routinely permitted parties to proceed anonymously when circumstances justify such anonymity. *See, e.g.*, *Doe v. Stephens*, 851 F.2d 1457, 1459 n.2 (D.C. Cir. 1988); *Doe v. U.S. Dep't of Justice*, 660 F. Supp. 2d 31, 40 (D.D.C. 2009); *Doe v. MAMSI Life & Health Ins. Co.*, 471 F. Supp. 2d 139, 140 (D.D.C. 2007); *Doe v. Rumsfeld*, 341 F. Supp. 2d 1 (D.D.C. 2004); *Doe v. Islamic Salvation Front*, 257 F. Supp. 2d 115, 117 (D.D.C. 2003).

  **B. This Court Should Grant the Requested Relief.**

  The nature of the harm faced by Anonymous Plaintiffs demonstrates that their need for confidentiality outweighs the public's interest in knowing their identities. *See Qualls*, 228

F.R.D. at 11.  Anonymous Plaintiffs fled their countries of origin because they were persecuted or feared that they would be persecuted if they remained.  As asylum seekers fleeing persecution, Anonymous Plaintiffs fall within a particularly vulnerable class of migrants for whom confidentiality about the nature and existence of their claims is particularly important, as their "identification [would] create[] a risk of retaliatory physical or mental harm."  *Qualls*, 228 F.R.D. at 10-11 (internal quotation marks and citation omitted); *see also* United Nations High Commissioner for Refugees, *Advisory opinion on the rules of confidentiality regarding asylum information* ("UNHCR Advisory Opinion") (Mar. 31, 2005) at 2-3, *http://www.refworld.org/docid/42b9190e4.html* ("[P]rivacy and its confidentiality requirements are especially important for an asylum-seeker, whose claim inherently supposes a fear of persecution by the authorities of the country of origin and whose situation can be jeopardized if protection of information is not ensured.").

The federal government itself recognizes that protecting the identities of asylum seekers is of critical importance.  Asylum regulations provide for the confidentiality of asylum applicants and credible fear interviewees, including the fact that an applicant has applied for asylum or received a credible fear interview.  *See* 8 C.F.R. §§ 208.6, 1208.6.  DHS has acknowledged the importance of these regulations to the future safety of asylum applicants:

> As DHS recognizes, the confidentiality regulations are of utmost importance in protecting asylum applicants because the "regulations safeguard information that, if disclosed publicly, could subject the claimant to retaliatory measures by government authorities or non-state actors in the event that the claimant is repatriated, or endanger the security of the claimant's family members who may still be residing in the country of origin."

*Anim v. Mukasey*, 535 F.3d 243, 253 (4th Cir. 2008) (quoting U.S. Citizenship and Immigration Serv. Asylum Div., U.S. Dep't of Homeland Sec., *Fact Sheet: Fed. Regulations Protecting the Confidentiality of Asylum Applicants* (2005)).  Indeed, the disclosure of an asylum applicant's

identity creates such a severe risk of persecution in her country of origin that a breach of confidentiality can itself serve as grounds for asylum. *See, e.g.*, *id.* at 256 (remanding asylum case to BIA so that petitioner could present new asylum claim based upon U.S. Government's breach of her confidentiality).

In recognition of the powerful interest that asylum seekers possess in maintaining their confidentiality, numerous courts have allowed them to proceed with pseudonyms or initials. *See, e.g.*, *R.I.L-R*, 80 F. Supp. 3d at 172; *N.L.A. v. Holder*, 744 F.3d 425, 428 n.1 (7th Cir. 2014); *Doe v. Holder*, 736 F.3d 871, 872 n.1 (9th Cir. 2013); *Doe v. Holder*, 651 F.3d 824, 826 (8th Cir. 2011); *Smith v. Holder*, 627 F.3d 427, 427 n.\* (1st Cir. 2010); *Doe v. Immigration & Naturalization Serv., U.S. Dep't of Justice*, 867 F.2d 285, 286 n.1 (6th Cir. 1989).

Moreover, "[c]ourts may be more inclined to permit pseudonymous suits by plaintiffs when the government is the defendant," *Qualls*, 228 F.R.D. at 11, a factor present in this case.

In contrast to Anonymous Plaintiffs' strong interest in confidentiality, the countervailing interests in disclosure are minimal or nonexistent. The public's interest, if any, in knowing the identities of Anonymous Plaintiffs is negligible. To be sure, the issues that Anonymous Plaintiffs raise in this lawsuit are important ones and may well be a matter of concern to the general public. However, that is not true of the identities of Anonymous Plaintiffs: "[P]arty anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them." *Does I Thru XXIII*, 214 F.3d at 1068-69 (quoting *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981)).

Nor would granting Anonymous Plaintiffs' request create any risk of unfairness or prejudice to Defendants. As stated above, Anonymous Plaintiffs do not seek to withhold their identities from Defendants. And there is no reason to believe a fact-finder would be influenced

by the fact that Anonymous Plaintiffs are proceeding anonymously. *See, e.g.*, *Sealed Plaintiff*, 537 F.3d at 190; *Does I thru XXIII*, 214 F.3d at 1068; *James*, 6 F.3d at 240-41; *see also Doe #1 v. Williams*, 167 F. Supp. 2d 45, 46, n.1 (D.D.C. 2001) (granting plaintiffs leave to proceed by pseudonym on condition that they disclose identity to defendants), *rev'd on other grounds*, 2003 WL 21466903 (D.C. Cir. June 19, 2003).

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs N.J.J.R., H.A.Y., A.M.M., L.H.A., E.E.C.S., and L.I.L.M.'s Motion to Proceed Anonymously and to File Supporting Exhibits Under Seal.

Dated: March 15, 2018

Respectfully submitted,

*/s/*

| | |
|---|---|
| Judy Rabinovitz<br>Michael K.T. Tan<br>AMERICAN CIVIL LIBERTIES UNION<br>FOUNDATION, IMMIGRANTS' RIGHTS PROJECT<br>125 Broad Street, 18th Floor<br>New York, NY 10004<br>(212) 549-2618 | Dennis B. Auerbach (D.C. Bar No. 418982)<br>Philip J. Levitz (D.C. Bar No. 1018430)<br>COVINGTON & BURLING LLP<br>One CityCenter<br>850 Tenth St., N.W.<br>Washington, D.C. 20001–4956<br>(202) 662-6000 |
| Stephen B. Kang<br>AMERICAN CIVIL LIBERTIES UNION<br>FOUNDATION, IMMIGRANTS' RIGHTS PROJECT<br>39 Drumm Street<br>San Francisco, CA 94111<br>(415) 343-0783 | Eunice Lee<br>Blaine Bookey<br>CENTER FOR GENDER & REFUGEE STUDIES<br>200 McAllister St.<br>San Francisco, CA 94102<br>(415) 565-4877 |
| Hardy Vieux (D.C. Bar No. 474762)<br>Laura Gault[*]<br>HUMAN RIGHTS FIRST<br>805 15th Street, N.W., Suite 900<br>Washington, D.C. 20005<br>(202) 547-5692 | Arthur B. Spitzer (D.C. Bar. No. 235960)<br>AMERICAN CIVIL LIBERTIES UNION OF THE<br>DISTRICT OF COLUMBIA<br>915 15th Street, NW, 2nd floor<br>Washington, D.C. 20005-2302<br>(202) 457-0800 |
| Josie Cardoso-Rojo<br>HUMAN RIGHTS FIRST<br>75 Broad Street, 31st floor<br>New York, NY 10004<br>(212) 845-5200 | Farrin R. Anello<br>Edward Barocas<br>Jeanne LoCicero<br>AMERICAN CIVIL LIBERTIES UNION OF NEW<br>JERSEY FOUNDATION<br>P.O. Box 32159<br>Newark, NJ 07102<br>(973) 642-2084 |

---

[*] Although LCvR 83.2(c) and (d) do not apply to Ms. Gault, she appears before the Court pursuant to LCvR 83.2(g), which states, "ATTORNEYS REPRESENTING INDIGENTS. Notwithstanding (c) and (d) above, an attorney who is a member in good standing of the District of Columbia Bar or who is a member in good standing of the bar of any United States Court or of the highest court of any State may appear, file papers and practice in any case handled without a fee on behalf of indigents upon filing a certificate that the attorney is providing representation without compensation." Ms. Gault is not receiving compensation for her services.

9

Michael J. Steinberg
Abril Valdes
AMERICAN CIVIL LIBERTIES UNION FUND OF
MICHIGAN
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6814

Leon Howard
Kristin Greer Love
ACLU OF NEW MEXICO
1410 Coal Ave. SW
Albuquerque, NM 87104
(505) 266-5915, x1007

Witold J. Walczak
Golnaz Fakhimi
ACLU OF PENNSYLVANIA
247 Ft. Pitt Blvd., 2nd floor
Pittsburgh, PA 15222
(412) 681-7864

Freda J. Levenson
ACLU OF OHIO
4506 Chester Ave.
Cleveland, OH 44103
(216) 472-2220

Ahilan T. Arulanantham
Sameer Ahmed
ACLU FOUNDATION OF SOUTHERN
CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
(213) 977-5232

Edgar Saldivar
Andre Segura
ACLU FOUNDATION OF TEXAS, INC.
1500 McGowen, Suite 250
Houston, TX 77004
(713) 942-8146 x111