## DECLARATION OF ANSLY DAMUS

I, Ansly Damus, make this declaration from my personal knowledge and, if called to testify to these facts, could and would do so competently.

**My Persecution in Haiti and Grants of Asylum in the United States**

1.      I am currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Geauga County Safety Center in Chardon, Ohio. I have been in immigration detention since October 2016, or for a year and four months, while seeking asylum from Haiti. I continue to be detained even though the immigration judge has granted me asylum twice.

2.      I was born in Grand-Rivière-du-Nord in Haiti in ███. I have a wife, Adeline, and two children: my daughter, ███, is eight years old, and my son, ███, is four years old. They all live in Haiti.

3.      I was forced to flee Haiti in September 2014 because of political persecution I faced at the hands of "La Meezorequin" ("the Shark Bones Army"), a well-armed gang that supported a local government official, Benjamin Ocenjac. In Haiti I worked as a teacher, teaching courses in several areas, including ethics. In one of my seminars, I used Ocenjac as an example of a politician who had used bandits to terrorize the population. In retribution, members of La Meezorequin attacked me while I was riding home on my motorcycle. They accused me of telling my students not to vote for Ocenjac, and dragged and beat me—breaking several bones and leaving me with scars which I bear to this day —and they set my motorcycle on fire. The gang threatened to kill me.

4.      Fearing for my life, I left Haiti about ten days later. I eventually reached Brazil in December 2014, where I remained for about 18 months—living first at a refugee camp,

and later in a shared, rented room. I found work as an electrician and in construction.

Like other Haitians, I suffered terrible discrimination in Brazil and feared for my personal

safety, as many Haitians were being killed in Brazil in hate crimes at that time.

5.      I left Brazil in July 2016 and eventually reached the United States. On or around

October 26, 2017, I presented myself to the immigration authorities at the border in

Calexico, California and requested asylum. I was interviewed by an asylum officer who,

on December 6, 2016, found that I have a credible fear of persecution and referred me for

a hearing on my asylum claim in immigration court.

6.      On April 4, 2017, the immigration judge found I had testified credibly to my fear

of persecution in Haiti and granted me asylum. The government then appealed my

asylum grant to the Board of Immigration Appeals ("BIA"). On September 29, 2017, the

BIA found that I had testified credibly to my experiences, but reversed the judge's

decision. The BIA remanded for further proceedings to determine if I had firmly resettled

in Brazil, and was thus ineligible for a grant of asylum, and if I was entitled to asylum

based on my fear of future persecution in Haiti based on the political opinions imputed to

me by La Meezorequin.

7.      On January 10, 2018, after holding a new hearing in my case, the immigration

judge again found my testimony was credible and granted me asylum a second time. The

judge found that because the Brazilian government never offered me a form of permanent

residence, I never firmly resettled in Brazil. The judge also found that I would continue to

face threats to my life from La Meezorequin if I were to return to Haiti based on my

imputed political opinions. Indeed, La Meezorequin has continued to harass my wife in

an effort to draw me back to Haiti since I left.

8.      However, the government again appealed the immigration judge's decision to the

BIA. As a result, I have remained in ICE custody and will do so until my immigration

case is resolved.

**My Prolonged Detention Without an Adequate Parole Review or a Custody Hearing Before the Immigration Judge**

9.      I have been in immigration detention since coming to the United States in October

2016, or for about one year and three months, with no end in sight.

10.     I passed my credible fear interview on December 6, 2016. ICE never interviewed

me to consider me for release on parole.

11.     Instead, I had to submit a parole request to ICE myself. I filed my parole request

on January 4, 2017, after I had retained an immigration attorney to prepare the

application.

12.     My parole request included ample evidence of my identity, including copies of

my birth certificate, marriage certificate, Haitian identification card, and valid and

unexpired passport. I also provided copies of my school diplomas and school

certification, as well as a letter of support from my sponsor attesting to my identity.

13.     My parole request included evidence that I am not a flight risk. I informed ICE

that, if released, I would reside with a sponsor—Albarete Pavilus, a lawful permanent

resident—and provided Mr. Pavilus' home address in Irvington, New Jersey. Mr. Pavilus

is a long-time friend who I grew up with in Haiti and have known for more than 30 years.

Mr. Pavilus submitted statements assuring ICE that he would be financially responsible

for me and provide me with a home and meals during the pendency of my immigration

case.

14.     My parole application also explained that I do not have any criminal record and pose no danger to the community. As a former ethics teacher, I am deeply committed to making the community where I live a better place.

15.     Despite my submissions, ICE denied my parole request for reasons that are unknown to me to this day. ICE has never provided me or my attorney with a written decision on my parole application. I only learned that ICE had denied my parole request on January 23, 2017, when I was in immigration court for a hearing in my immigration case, and the government attorney informed me and my attorney that ICE had decided not to release me. At no point has the government ever explained to me or my attorney why I cannot be released on parole.

16.     On January 15, 2018, after I won asylum a second time before the immigration judge, my attorney contacted the Detroit ICE Field Office, which has authority over my parole case, to ask whether ICE would accept a new parole request from me in light of my second grant of asylum. My attorney did not hear back from ICE. She then filed a second parole request for me on February 19, 2018. ICE denied my request the next day, telling my lawyer by phone that they were denying my parole application.

17.     The time I have spent in detention has been very painful. I already have spent more than a year of my life behind bars. I have not seen my wife and children since I left Haiti and do not know when I will see them again. I miss my wife and children, and constantly worry that my elderly father will die before I get to see him again.

18.     There is no outdoor recreation at the Geauga County Safety Center, and the immigration detainees are kept in windowless rooms. As a result, I have not been outside for more than a year. I have not even glimpsed natural light. I have not breathed fresh air

or felt the sun on my face, and I never know if it is cold or hot outside, if the sun is out, and if the seasons are changing.

19.     For the last year and four months, I've had to subsist on unhealthy, unappetizing fatty and starchy meals accompanied by chemical-powder beverages—which is all we are provided. I've lost weight and my physical health has gotten worse and worse.

20.     I've tried to stay positive by building community with my fellow immigration detainees through prayer groups and other activities, but for the last eleven months there have been no other French-speaking detainees, so it's hard for me to communicate with anyone, and thus my detention has been very isolating. Communication with the outside world is difficult because we have no access to any computer—no internet or email. There are 60 men confined here; we sleep in a dormitory on thin pallets on metal frames. Since my detention, I've been unbearably sad, uncomfortable and totally lacking in privacy. There is so much I want to do with my life in America, but I cannot because I am detained.

21.     During my time in detention, I have met many other asylum seekers in my position. Many of these asylum seekers gave up strong asylum claims and agreed to their deportation because they could no longer stand being locked up in an immigration jail.

**Exhibits**

22.     Attached as exhibit A is a true and correct copy of the immigration judge's most recent order granting my asylum, dated January 10, 2018.

23.     Attached as exhibit B is a true and correct copy of the parole request and supporting documents I submitted to ICE on January 4, 2018.

24.     Attached as exhibit C is a true and correct copy of the parole request and supporting documents I submitted to ICE on February 19, 2018.

I declare under penalty of perjury of the laws of the District of Columbia and the United

States that the foregoing is true and correct.

*Damus Ansly*

Ansly Damus

Executed this __8__ th day of March 2018 in Chardon, Ohio.

## CERTIFICATE OF TRANSLATION

I, __BILLY PIERRE__, certify that I am competent to translate from English
into Haitian Creole, and that I translated this declaration in Haitian Creole for Ansly
Damus to read before he signed it.

*Billy*      3/7/18      _____

# Exhibit A

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
801 WEST SUPERIOR AVENUE, SUITE 13-100
CLEVELAND, OHIO 44113

In The Matter Of:                      )        Date:   **JAN 1 0 2018**
                                       )
Ansly DAMUS,                           )
                                       )        **In Removal Proceedings**
                  Respondent.          )
                                       )
File Number: A209-762-773              )        *DETAINED* (GCD)
_____)

RE: Asylum, Withholding of Removal, and Withholding under CAT

**ON BEHALF OF THE RESPONDENT:**          **ON BEHALF OF THE DHS:**
Elizabeth B. Ford, Esq.                   Colleen Peppard, Assistant Chief Counsel
PO Box 457                                Office of the Chief Counsel
Chardon, Ohio 44024                       Immigration and Customs Enforcement
                                          925 Keynote Circle, Room 201
                                          Brooklyn Heights, Ohio 44131

## MEMORANDUM AND ORDER

### I. Procedural History

The Respondent is a native and citizen of Haiti. Exh. 1. On October 23, 2016, he applied for admission to the United States but did not then possess or present a valid entry document. *Id.* On December 6, 2016, the Department of Homeland Security ("DHS") initiated these proceedings with the filing of a Notice to Appear ("NTA"), charging the Respondent as inadmissible under the Immigration and Nationality Act ("INA" or "the Act") § 212(a)(7)(A)(i)(I). *Id.* The Respondent admitted the allegations and conceded the charge.

The Respondent subsequently filed an I-589, Application for Asylum and for Withholding of Removal. *See* Exh. 2; Exh. 5. On February 13, 2017, this Court heard testimony at an individual hearing on the Respondent's applications for asylum and withholding under the Act as well as withholding under the Convention Against Torture ("CAT").

On April 3, 2017, this Court issued a written decision, granting the Respondent's asylum application and his other applications moot. The DHS appealed that decision and on September 29, 2017, the Board of Immigration Appeals ("Board") remanded that decision for reconsideration. The Court heard testimony on remand on December 5, 2017, at an individual hearing.

**ORDER A209-762-773**              **Page 1 of 8**

## II. Issues on Remand

In a decision dated September 29, 2017, the Board remanded the case to this Court for further proceedings and consideration of the Respondent's eligibility for relief from removal. In its decision, the Board found that the Respondent had not suffered harm rising to the level of past persecution, and that his particular social group comprised of "well known professors in Haiti who openly teach young people" was not cognizable. The Board raised three issues on remand.

First, based upon evidence submitted by the DHS on appeal, the Board directed this Court to reconsider its findings on the Respondent's potential firm resettlement in Brazil, his credibility as it relates to firm resettlement, and any evidence of persecution in Brazil.

Second, the Board instructed this Court to provide additional analysis of whether the Respondent's imputed political opinion is a potential nexus for his asylum claim and to determine whether the Respondent established a well-founded fear of future persecution in Haiti on that basis. If so, the Board further directed this Court to consider whether Haitian authorities are unable or unwilling to protect the Respondent, or whether he can reasonably relocate in Haiti.

Finally, the Board also directed this Court to make a finding concerning the Respondent's eligibility for protection pursuant to the Convention Against Torture.

## III. Evidence Presented

This Court has considered all evidence submitted by the parties, both documentary and testimonial, whether expressly referred to in this decision or not. The evidence and the testimony submitted prior to and on appeal are incorporated into this decision whether expressly referred to in this decision or not.

### A.    Documentary Evidence

> **Exhibit 9**     DHS Brief, received by the Board on June 20, 2017.
>
> **Exhibit 10**    The Respondent's Evidence, Exhibits 1-13, received by the Court on November 1, 2017.
>
> **Exhibit 11**    DHS Evidence, Tabs A-I, received by the Court on November 28, 2017.

### B.    Testimonial Evidence

The Respondent testified at an individual hearing on February 13, 2017. This testimony was transcribed for purposes of appeal; therefore, the Court will not summarize the Respondent's testimony but will instead cite to the transcript created on appeal. The Respondent provided the following additional testimony on remand.

The Respondent arrived in Brazil in December 2014, where he remained for 18 months. When he came to the border, his passport was stamped and he was allowed entry to go to a refugee camp

known as "Acre." He had temporary documents, known as a "protocol and CPF," which were valid for one year. The Respondent renewed these documents one time. According to the Respondent, he did not have permanent residence, never applied for that status, and did not speak to a Brazilian official about permanent resident status. He never obtained a Brazilian passport. The Respondent was unaware that the Brazilian government gave permanent residence to 43,000 Haitians, or that his name, protocol, and passport numbers were on a list. The Respondent thinks that perhaps his name got on the list when he renewed his protocol.

While the Respondent was in Brazil, his family remained in Haiti. In Brazil, the Respondent lived in a rented, shared room and found work as an electrician and in construction. Nevertheless, he was discriminated against, as he and other Haitians were treated like animals or slaves by their Brazilian employers. The Respondent did not feel safe in Brazil because according to the news, many Haitians were killed daily. Although he did not know any of these people personally, he knew from personal experience that Haitians were treated very poorly by Brazilians, who felt that the Haitians were taking their jobs.

The Respondent left Brazil on July 27, 2016. He left because of the mistreatment he suffered in Brazil and because he had a friend who could help him get to the United States.

The Respondent left Haiti because of problems he had with members of "La Meezorequin," or the "Army of the Bones of Sharks." These people were well armed bandits who support an area deputy. The Respondent offended this area deputy by using his name in an example during a seminar the Respondent gave to youth on morals, ethics, and corruption. Members of this armed group attacked the Respondent in Haiti, causing him to flee.

This area deputy is still in power, as he has been re-elected. The Respondent knows this because friends have told him so. The men who attacked the Respondent have threatened his wife, who still lives in Haiti. They threatened her in an effort to get the Respondent to return to Haiti. These men are still angry at the Respondent because although the area deputy was re-elected, many of the youths in the area did not vote for him. La Meezorequin blame the Respondent's teachings for influencing the youth vote. The Respondent's wife has a hard time visiting her father, because of the threats made by La Meezorequin.

If the Respondent returned to Haiti, he believes that La Meezorequin would terrorize and kill him. He does not believe that he could safely relocate in Haiti because the group threatened to find him anywhere he went in Haiti. The police cannot protect him because La Meezorequin are better armed than the police. Furthermore, the area deputy is a part of the government; the government would not protect a civilian over one of its own members.

## IV. Legal Standards and Analysis

The burden of proof is on the Respondent to establish his eligibility for asylum and withholding of removal under the Act and CAT protection.

## A.   Firm Resettlement

### 1.   Legal Standard

An applicant is ineligible for asylum if he has been firmly resettled in another country prior to arriving in the United States. 8 C.F.R. § 208.13(c)(2)(i)(B). An individual is considered to be firmly resettled if he received an offer of permanent resident status or citizenship or some other type of permanent status. 8 CFR § 208.15. The Board has set forth a four step analysis for making firm resettlement determinations following the language of 8 C.F.R. § 1208.15 and focusing on the existence of an offer. *Matter of A-G-G-, 25 I&N Dec. 486, 501 (BIA 2011).* In the first step, DHS bears the burden of presenting prima facie evidence of an offer of firm resettlement. DHS may meet this burden by presenting direct or indirect evidence. *Id.* The second step, the alien can rebut DHS's prima facie evidence by showing by a preponderance of the evidence that such an offer has not been made or that he would not qualify for it. *Id.* at 503. The third step the immigration judge will consider the totality of the evidence to determine if the alien has rebutted DHS's evidence. *Id.* at 503. In the final step, if the immigration judge finds that the alien has firmly resettled, the burden shifts to the alien to establish by a preponderance of the evidence that an exception applies. If the applicant fails to establish an exception, he is not eligible for asylum as the mandatory bar applies.

### 2.   Analysis

The DHS relies on a redacted list of names and passport numbers, appended to Exhibit 9. *See* Exh. 9. This document allegedly reflects that the Respondent, identified by name, passport number, and record number, was "awarded" permanent residence in Brazil. The document further states "humanitarian reasons" relating to the January 2010 earthquake in Haiti as a reason for providing some sort of status to Haitians in Brazil. Although the translation indicates that Brazil "award[ed] permanent residence" to individuals on the list, the document also reflects that these individuals must first register and comply with no less than five requirements before they may be considered for permanent residence, and must do so within proscribed periods of time. Other evidence in the record indicates that these Haitians were not awarded permanent residence, but rather, the possibility of permanent residence. *See* Exh. 11, Tab F ("Haitian immigrants living in Brazil are granted the right to request permanent residence."). Further, this document again emphasizes that the potential beneficiaries of this law were those who entered Brazil as of 2010, and the Respondent entered in 2014. Potential recipients of permanent residence had a certain period of time to present their petitions. *See id.*

The Respondent testified that he rented a room that he shared with another. He testified that he was treated very poorly by his Brazilian employers, who viewed him as an "animal" or a "slave." *See also* Exh. 10, Tab 9. It is not clear how stable the Respondent's work was, especially in light of Brazil's high unemployment rate. *See* Exh. 10, Tab 13. Finally, the Respondent testified that many Haitians were killed regularly during his time in Brazil, and that such was reported on the news.

The Court finds that the Respondent was credible in his testimony relating to his status in Brazil. The Court detected no effort on the part of the Respondent to obfuscate or mislead. Rather, the

Court finds that the Respondent provided coherent and consistent explanations, based on his understanding of his immigration status in Brazil, to the DHS's questions. The Respondent's answers were not inconsistent with the evidence in the record, which as explained above, did not clearly contradict the Respondent's understanding and explanation of his situation in Brazil.

The Court finds that the DHS has not met its burden of establishing that the Respondent was prima facie eligible for permanent residence in Brazil. It is not clear that he was actually offered permanent residence in Brazil, given the multiple references to a humanitarian purpose tied to the 2010 earthquake, which did not precipitate the Respondent's flight to Brazil. It is not clear whether this list reflects an actual offer of permanent residence, or as other documents indicate, the mere possibility of permanent residence, if other conditions are met within a certain period of time. Finally, given the totality of the circumstances in which the Respondent lived while in Brazil, it is not clear that the country was genuinely offering him status within that country.

The Court therefore finds that the firm resettlement bar is **NOT APPLICABLE** in this case.

## B.   Asylum under INA § 208

### 1.   Legal Standard

To be eligible for a grant of asylum, the applicant must demonstrate that he was or will be targeted on account of one of the five protected grounds: race, religion, nationality, membership in a particular social group, or political opinion. INA § 101(a)(42)(A); 8 C.F.R. § 1208.13(b). Persecution for "imputed" grounds, where one is erroneously thought to hold particular political opinions or mistakenly believed to hold a certain political opinion, can satisfy the "refugee" definition. *Matter of S-P-*, 21 I&N Dec. 486, 489 (BIA 1996).

An applicant for asylum who claims persecution on account of political opinion must demonstrate that he acted based on a political opinion, or his actions were perceived as being based on a political opinion, and that he was persecuted on account of that opinion. *Marku v. Ashcroft*, 380 F.3d 982, 986-87 (6th Cir.2004). The applicant does not need "provide direct proof of his persecutors' motives" but must show "*some* evidence of it, direct or circumstantial." *INS v. Elias-Zacarias*, 502 U.S. 478, 483 (1992).

An applicant may either show that he has suffered past persecution, or that he has a well-founded fear of future persecution by establishing that he subjectively fears persecution and that his fear is objectively reasonable. INA § 101(a)(42)(A); *INS v. Cardoza-Fonseca*, 480 U.S. 421, 430-31 (1987). There must be a "reasonable possibility," but not a certainty, that the applicant will suffer persecution. *Cardoza-Fonseca*, 480 U.S. at 430; 8 C.F.R. §1208.13(b)(2). "Reasonable," as interpreted by the U.S. Supreme Court, means a one in ten chance of suffering persecution. *See Cardoza-Fonseca*, 480 U.S. at 430-31; *see also* 8 C.F.R. § 1208.13(b)(2).

### 2.   Analysis

The Respondent testified that he has been harmed in the past by members of the area deputy's armed group, La Meezorequin. His wife has suffered threats such that her movement in Haiti is

restricted; specifically, she hesitates to travel to see family because of the threats made against her by this group. The Respondent fears that, if he returned to Haiti, La Meezorequin would terrorize and kill him. The Respondent testified that the area deputy and La Meezorequin are angry at him for his use of the area deputy's name in a seminar to young people about morals, ethics, and corruption. In the last election, many of the youth did not vote for the area deputy, who was ultimately re-elected. The area deputy and La Meezorequin blame the Respondent for influencing the youth vote against the area deputy.

It is clear from the Respondent's testimony that the area deputy and La Meezorequin perceived the Respondent's teaching as an expression of his political opinion, and furthermore, that the Respondent's teaching was influential in the community, affecting voters' political opinions. La Meezorequin did not begin harassing, threatening, and harming the Respondent *until* he began using the area deputy as an example in his seminars. In fact, La Meezorequin explicitly told the Respondent that their motive was because he as "telling the youth not to vote for" the area deputy. *See* Transcript, p. 33 (Feb. 13, 2017). The Court therefore finds that the Respondent has met his burden of establishing that his attackers were motivated by the Respondent's imputed political opinion.

The Respondent testified that La Meezorequin has continued to harass the his wife in an effort to draw the Respondent back to Haiti, thus allowing La Meezorequin to terrorize and ultimately kill the Respondent. Evidence in the record corroborates the Respondent's fears that La Meezorequin will escalate from harassing and harming the Respondent to threats of death, and that groups like La Meezorequin have the capacity to carry out such threats. *See* Exh. 10, Tab 10. The Court therefore finds that the Respondent has met his burden of establishing that, if he returned to Haiti, La Meezorequin would continue to harm him, and that their actions would escalate in severity, as they blame the Respondent's seminars for influencing the youth vote against the area deputy.

The persecutor in this case is a government actor, the area deputy. The Court therefore finds that the persecution the Respondent's reasonably fears would be committed by the government. *See Matter of Acosta*, 19 I&N Dec. 211, 222 (BIA 1985) *overruled on other grounds by Matter of Mogharrabi*, 19 I&N Dec. 439 (BIA 1987).

Where the persecutor is the government, persecution is government sponsored, or the applicant has established past persecution, it is presumed that internal relocation is unreasonable unless DHS establishes by a preponderance of the evidence that relocation is reasonable. 8 C.F.R. § 1208.13(b)(3). Such is the case here, where the Court has found that the Respondent's persecution is government sponsored. Furthermore, Haiti is a small country. *See* Exh. 11, Tab A. It is approximately 100 miles from the northern border to the southern border; at its narrowest, it is only approximately 25 miles from the eastern to western border. *See id.* This Court finds that internal relocation is not available or reasonable within this small country.

The Court therefore finds that the Respondent has met his burden of proof by a preponderance of the evidence that he has a well-founded fear, that is both subjective and objectively reasonable, of persecution on account of his imputed political opinion if he returns to Haiti. Accordingly, the Respondent's application for asylum is **GRANTED.**

## C.    Withholding of Removal Under INA § 241(b)(3)

As the Respondent's application for asylum is granted, the Court finds that the Respondent's application for withholding of removal under INA § 241(b)(3) is **MOOT.**

In the event that the Board finds that the Respondent was firmly resettled in Brazil, the Court would in the alternate, grant withholding of removal under the Act based on the finding that the Respondent has established a well-founded fear of future persecution on account of a protected ground. The Court finds that the Respondent has met the higher burden of proof required for withholding under the Act, in that he has established that it is more likely than not that the area deputy and his army, La Meezorequin, would persecute him on account of his imputed political opinion should he return to Haiti. *See Cardoza-Fonseca*, 480 U.S. at 423.

## D.    Withholding of Removal under the Convention Against Torture INA § 241(b)(3)

Because the Court grants the Respondent's application for asylum under INA § 208, the Court finds that the Respondent's application for withholding of removal under the CAT is **MOOT.** Nevertheless for the sake of a thorough decision, the Court will briefly address the Respondent's CAT claim.

### 1.    Legal Standard

Under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), as implemented by 8 C.F.R. §§ 1208.16-18, an applicant is eligible for withholding of removal if the applicant establishes that it is "more likely than not that [the applicant] would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person. 8 C.F.R. § 1208.18(a)(1). To determine whether it is "more likely than not" that an applicant will be tortured in the proposed country of removal, the Court should take into account the following: (1) evidence of past torture; (2) evidence of whether the applicant can safely relocate to another part of the country of removal; (3) evidence of gross, flagrant, or mass violations of human rights within the country of removal; and (4) any other relevant country conditions. See 8 C.F.R. § 1208.16(c)(3).

The torture must be inflicted "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). Acquiescence of a public official requires that the official have awareness of or remain "willfully blind" to the activity constituting torture, prior to its commission, and thereafter breach his or her legal responsibility to intervene to prevent such activity. 8 C.F.R. § 1208.18(a)(7).

### 2.    Analysis

The Court finds that the Respondent has not established that it more likely than not that he would be tortured if he returned to Haiti. Torture is an extreme form of cruel and inhumane treatment, intentional inflicted for a proscribed purpose. The Court finds that the persecutory harm that the

Respondent reasonably fears in Haiti falls short of the extreme cruelness required under the CAT. If deemed necessary, the Court would deny the Respondent's application for withholding of removal under the CAT.

## ORDERS

Accordingly, it is hereby ordered that:

1. The Respondent's application for Asylum under INA § 208 is **GRANTED.**

2. The Respondent's application for Withholding of Removal under INA § 241(b)(3) is **MOOT**.

3. The Respondent's application for Withholding of Removal under the Convention Against Torture is **MOOT**.

So Ordered.

Date: **JAN 1 0 2018**

_____

**Alison M. Brown**
Immigration Judge

---

**Appeal Rights:** This decision is final unless an appeal is filed on Form EOIR-26, Notice of Appeal, with the Board of Immigration Appeals within thirty (30) calendar days of the date of the mailing of this written decision. Enclosed with this decision are copies of the forms and instructions for properly preparing your appeal. Your notice of appeal, attached documents, and filing fee or a fee waiver request must be mailed to:

> Board of Immigration Appeals
> Office of the Clerk
> 5107 Leesburg Pike, Suite 2000
> Falls Church, VA 22041

Appeal forms are also available in electronic format at http://www.justice.gov/eoir/formslist.htm. The fees are listed at http://www.justice.gov/eoir/appealtypes.htm.

# Exhibit B

# ELIZABETH B. FORD

## ATTORNEY AT LAW

P.O. BOX 457, CHARDON, OH 44024

E:ELIZABETH@EBFORDLAW.COM   T: (440) 487 5697

January 4, 2017

Officer Bryan Desrochers
Office of Immigration and Customs Enforcement-ERO
1240 E.9th St. #535
Cleveland, OH 44119

*Dropped off in person*

COPY

> **Re:   Parole Request and Supporting Documents**
> **Alien: Ansly DAMUS/A209-762-773**

Dear Officer Desrochers:

My client, Mr. Ansly Damus/A209 762 773, respectfully requests parole based on his passing of his credible fear interview on December 6, 2016. Mr. Damus has already attended one Master Calendar Hearing before the Cleveland Immigration Court, and is scheduled for a second Master Calendar Hearing on January 9, 2017 at 9:00 AM. Attached please find the following documents:

1. Copy of Birth Certificate of Mr. Damus;
2. Copy of his Haitian Passport,
3. Copy of his marriage certificate;
4. Copy of his Matricula ID document;
5. Original and copies of his school certificates and diplomas;
6. Notarized Letter of support from Albarete Pavilus, long time friend of Mr. Damus;
7. Color copy of the front/back of Mr. Pavilus's legal permanent resident card;
8. Copies of current statements of Mr. Pavilus, showing his address.

Mr. Damus was born on ████████ in Haiti. Mr. Damus is a citizen of Haiti. While in Haiti, Mr. Damus graduated with multiple degrees and worked as a teacher. Upon arrival to the USA, the asylum office conducted a Credible Fear Interview and found that he had a credible fear of returning to Haiti. Mr. Damus is seeking parole from Immigration and Customs Enforcement-ERO to reunite with his friends in Irvington, New Jersey.

**Identity Documents**

Mr. Damus has provided a copy of his birth certificate, marriage certificate, Haitian Matricula as well as a copy of his valid, unexpired Haitian passport. He has also provided original and copies of his school diplomas and school certification to prove his identity. Lastly, Mr. Albarete Pavilus, long-time friend of Mr. Damus, stated in his support letter that he has known him for more than thirty years, and that they grew up together in Haiti and their families were friends.

Therefore, based on the evidence provided, Mr. Damus's identity should be established.

## Mr. Damus is NOT a flight risk

If offered parole by Immigration and Customs Enforcement, Mr. Damus will reside with Albarete Pavilus in Irvington, New Jersey. Albarete is a legal permanent resident of the USA. He will reside at ███████████████ in Irvington, New Jersey 07111. Mr. Pavilus has provided statements assuring that he will be financially responsible for his son and provide him with a home and meals during the pendency of his immigration case.

## Mr. Damus is NOT a danger to the community

Mr. Damus does not have a criminal record in the USA or in Haiti. He is an upstanding member of his community and well-educated. Furthermore, Mr. Damus was a victim in Haiti.

In conclusion, Mr. Damus respectfully requests that Immigration and Customs Enforcement grant parole so he can reunite with his family that he has been separated from. He is not a flight risk and he does not have a criminal record. Mr. Damus will attend all required immigration court dates as well as any reporting requirements instituted by Immigration and Customs Enforcement.

Thank you for your consideration.

Elizabeth B. Ford, Esq. (0087791)
EOIR ID: EI 543819\
Elizabeth B. Ford, Attorney at Law
PO BOX 457
Chardon, OH 44024
T: 440-487-5697
F: 440-214-9169
Elizabeth@ebfordlaw.com

2

(Décl. PERE)

Nº b 8852   M

# ACTE DE NAISSANCE

LIBERTÉ   ÉGALITÉ   FRATERNITÉ

**RÉPUBLIQUE D'HAÏTI**

1.00 Gde.   1.00 Gde.

PAPIER TIMBRÉ

Une Gourde

Naissance de Ansly Damus

L'an mil neuf cent soixante _____ An _____ de l'Indépendance et le _____ Je a trois heures du soir

_____ devant Nous *Luc Louis Blot*

Officier de l'État Civil de *La Grande Rivière du Nord*

soussigné

A comparu le sieur *Gabriel Damus, ébéniste*

demeurant et domicilié à *La Grande Rivière du Nord*

_____ lequel nous a présenté un enfant _____ masculin _____ son fils

légitime, né à *Grande Rivière du Nord* le 16 Juillet

mil neuf cent soixante *seize* à *huit* heures du *soir*

de la dame *Lucina Joseph Couturière*

demeurant et domiciliée à *La Grande Rivière du Nord*

auquel enfant il a donné les prénoms de *Ansly Damus*

Dont acte fait en notre Bureau, Rue *Brilliant* en présence de M.me

*Francien Raphael* et de M.me *Justin Pier*

tous deux majeurs, demeurant et domiciliés à *La Grande Rivière*

*du Nord* _____ témoins choisis et amenés par le comparant

Après lecture faite par nous du présent acte, l'avons signé *avec le comparant*

*et les témoins*

Récépissé de l'Administration Générale des Contributions, au Nº *97197* Série *W W*

Presses Nat. d'Haïti (51850)

*[left margin handwritten notes:]* Présenté au Seigneur au Temple Baptiste de la Grande Rivière du Nord le dimanche Dix-Sept (17) Avril 1977 par le Pasteur Amyl Champagne





**REPUBLIQUE D'HAITI**
**DIRECTION GENERALE DES IMPOTS**

**MATRICULE FISCAL DU CONTRIBUABLE**

NIF :

Nom : DAVID

Prénom : ANSLY

Profession / Secteur d'Activité : ...

Code SAE : _____

Adresses : 1 (Domicile) GRANDE RIV DU NORD

2 (Affaires) _____

Fonction Occupée : _____

CIN : _____

Signature
(Contribuable)

**REPUBLIQUE D'HAITI**
**DIRECTION GENERALE DES IMPOTS**

**MATRICULE FISCAL DU CONTRIBUABLE**

NIF :

Lieu d'émission : _____

No Quittance : _____

Coût Gdes 50.00 (Déc... du 28 sept. 05)

Date : _____

Nom Agent : _____

Prénom Agent : _____

Signature
(DGI)

Q2016/3740

# RÉPUBLIQUE D'HAITI

## ARCHIVES NATIONALES

Extrait des registres des Actes de Mariage déposés au bureau des Archives Nationales de la République.

**Commune : GRANDE RIVIÈRE DU NORD - Bureau : NORD**

**Acte n° : 37 - Année : 2009 - Registre : 002 - Page : 19-1**

### ACTE DE MARIAGE DE Ansly DAMUS et Adeline CHERENFANT mariés, le 1 août 2009

L'An deux mille neuf, An 206e de l'Indépendance et le Mardi du mois Août à dix heures du matin.

Nous, Alfred LOUIS, Officier de l'Etat Civil de Grande Rivière du Nord, soussigné;

Vu les pièces à nous transmises par Le Révérend Maxis MICHEL, Pasteur conformément à l'article 6 de la loi du 16 Décembre 1929, modifiée par la loi du 26 Janvier 1945.

Constatons, enregistrons et certifions qu'après les publications dûment faites, aucune opposition n'ayant été signifiée au susdit Ministre religieux,

Monsieur Ansly DAMUS, Electro-Technicien âgé de trente trois ans Né à Grande Rivière du Nord domicilié à Grande Rivière du Nord, Commune de Grande Rivière du Nord fils légitime de Gabriel DAMUS domicilié à Grande Rivière du Nord et de La Dame Lucina JOSEPH domiciliée à Grande Rivière du Nord stipulant pour lui et en son nom personnel d'une part;

Et Mademoiselle Adeline CHERENFANT, Economiste âgée de trente et un ans Née à Castagne domiciliée à Castagne, fille naturelle de Wilson CHERENFANT domicilié à Castagne-Solon et de Amelaïde ALTIDOR domiciliée à Castagne stipulant pour elle et en son nom personnel d'autre part;

Se sont présentés le premier Août deux mille neuf à trois heures du soir à L'Eglise Baptiste Haïtienne pour contracter mariage.

A la question s'ils consentaient à se prendre pour époux, ils ont répondu chacun séparément et affirmativement, en présence du susdit Ministre religieux et de 1o) Emsonn ST JEAN âgé de trente trois ans domicilié à Pétion-Ville;

2o) Mme CHERENFANT Marie âgé de quarante deux ans domicilié(e) à....

Ils ont été ainsi unis par le mariage.

L'acte dressé par le susdit Ministre religieux a été signé par lui ....

En foi de quoi avons dressé et signé le présent acte, conformément à la loi.

Récépissé de la Direction Générale des Impôts No

L'Officier:
A.L.

Fait à Port-au-Prince, le 12 février 2016
POUR COPIE CONFORME

JEAN WILFRID BERTRAND
DIRECTEUR GENERAL



PAR CES MOTIFS, sur les réquisitions du Ministère Public,

Ordonne la rectification de l'acte de mariage des époux Ansly DAMUS, l'épouse née Adeline CHERENFANT dressé le mardi dix-huit Août deux mille neuf par l'Officier de l'Etat Civil de la Grande-Rivière du Nord. Dit qu'il sera écrit au corps de l'acte: 1o) Et Mademoiselle Adeline CHERENFANT au lieu de: Et Adeline CHER-ENFANT; 2o) fille naturelle de Wilson CHERENFANT au lieu de...Wilson CHER-ENFANT; Et en marge acte de mariage de Ansly DAMUS et de Adeline CHERENFANT mariés le 1er Août 2009. Ordonne l'inscription du présent jugement dans les registres de l'Officier de l'Etat Civil et sa mention en marge du dit acte; Fait défense à tous dépositaires des dits registres d'en délivrer copie ou extrait sans les rectifications ordonnées.

AINSI JUGE ET PRONONCE par nous Bernard SAINT-VIL, Doyen en audience Civile et Publique de ce jour trois Novembre deux mille quinze. En présence de Me. Claude MICHEL, Substitut du Commissaire du Gouvernement de ce ressort avec l'assistance du Greffier Jean Serge DUVERT.

Fait à Port-au-Prince, le 12 février 2016.

POUR COPIE CONFORME

JEAN WILFRID BERTRAND
DIRECTEUR GENERAL

Albarete E. Pavilus

▮▮▮▮▮▮▮

Irvington, NJ 07111

To Whom It May Concern:

This letter is in support **ANSLY DAMUS/A209 762 773** who is a long-time schoolmate and friend of mine. His birth date is ▮▮▮▮▮ Ansly is a citizen of Haiti. To the best of my knowledge, Ansly does not have any criminal problems in Haiti or the USA.

My name is Albarete E. Pavilus. I have been legal permanent resident of the USA since 2013. I currently live at ▮▮▮▮▮▮▮ in Irvington, New Jersey 07111. My phone number is ▮▮▮▮▮ My birth date is ▮▮▮▮▮ and I was born in Haiti. I currently live in New Jersey with my family. I have been worried about Ansly and his immigration case and want to do anything and everything I can to support and help him.

**I also affirm that I have known Ansly and his family for more than thirty years. Ansly and I grew up together in the same village in Haiti, and we attended high school and church services in Haiti together. Our parents were friends, and Ansly and I became friends when we were young and have remained friends all of these years. I have known Ansly since we were young, and I can absolutely confirm his identity as Ansly Damus, without any doubt or reservation.**

I affirm that my long-time friend, Ansly Damus, will stay at my home located at ▮▮▮▮ in Irvington, New Jersey 07111 if he is released from jail in Ohio. I further affirm that I will be financially responsible for Ansly during the course of his immigration case. He will live at my home with my family and I will provide him with all meals and anything else he may need in order to continue with his immigration case.

Thank you, and please do not hesitate to contact me if you need any more information.

Albarete E. Pavilus

*Albarete Pavilus*

Sworn to and subscribed
before me this
30th day of / 2 , 20 / 6

EDDY JEAN JACQUES
NOTARY PUBLIC OF NEW JERSEY
I.D. # 2337475
My Commission Expires 11/23/2020







# MINISTÈRE DE L'ÉDUCATION NATIONALE
## ET DE LA FORMATION PROFESSIONNELLE

### DIRECTION GÉNÉRALE

Port-au-Prince le 19 Novembre 2015

### RELEVÉ DE NOTES

La Direction Générale du Ministère de l'Éducation Nationale et de la Formation Professionnelle certifie que Monsieur Ansly DAMUS né le 17 Juillet 1976 à (au, aux) GRANDE - RIVIERE DU NORD enregistré au N°. 125361, a participé aux examens de fin d'études classiques, PREMIERE PARTIE Rhéto D et a obtenu les notes suivantes pour la session de :

### Juillet 2000

| MATIÈRES | NOTES | | |
|---|---|---|---|
| Littérature | 40 | / | 200 |
| Anglais | 76 | / | 200 |
| Géologie/Physiologie | 141 | / | 300 |
| Chimie | 246 | / | 300 |
| Physique | 126 | / | 200 |
| Total | 629 | / | 1200 |

Le présent lui est délivré pour servir et valoir ce que de droit.

de Certifi... MENFP d'équivalence

Chef de Service
de Certification et d'équivalence

BUREAU NATIONAL DES
EXAMENS D'ETAT

Bureau National des Examens d'État

CERTIFIE CONFORME AU REGISTRE
DU **MENFP.**

P-AU-P . LE : **2 6 NOV. 2015**

..........................................

LE CHEF DU SERVICE DE CERTIFICATION
RECEPISSE N°



Vu : Pour identification de la signature du Chef
de Service de la Certification et d'Equivalence



Louis Alix TOUSSAINT, a
Assistant-Directeur
Direction des Affaires Juridiques MENFP

Réc : 4510313005-5
Date : 27-11-2015

DIRECTION GENERALE DE
L'EDUCATION NATIONALE
**0 3 DEC 201**
Date:
Code No:



Apposée
Registré au n° 61.063-A
Ministère des Affaires Etrangères
Port-au-prince, le
Chargé de Mission





# MINISTÈRE DE L'ÉDUCATION NATIONALE
# ET DE LA FORMATION PROFESSIONNELLE

### RÉPUBLIQUE D'HAITI

## DIRECTION GÉNÉRALE

Port-au-Prince le 19 Novembre 2015

## RELEVÉ DE NOTES

La Direction Générale du Ministère de l'Éducation Nationale et de la Formation Professionnelle certifie que Monsieur Ansly DAMUS né le 17 Juillet 1976 à (au, aux) Grande-Riviere Du Nord enregistré au N°. 0100049678, a participé aux examens de fin d'études classiques, DEUXIEME PARTIE Philo D et a obtenu les notes suivantes pour la session de :

## Août 2003

| MATIÈRES | | NOTES | |
|---|---|---|---|
| Philosophie | 58 | / | 200 |
| Sciences Sociales | 58 | / | 200 |
| Anglais | 96 | / | 200 |
| Biologie | 160 | / | 200 |
| Chimie | 150 | / | 300 |
| Mathématiques | 80 | / | 200 |
| Physique | 258 | / | 300 |
| **Total** | 860 | / | 1600 |

Le présent lui est délivré pour servir et valoir ce que de droit.

CERTIFICATION
DIRECTION GENERALE

Chef de Service
de Certification et équivalence
MENFP
EQUIVALENCE

BUREAU NATIONAL DES
EXAMENS D'ETAT

Directeur
Bureau National des Examens d'État
République d'Haiti
MENFP

CERTIFIE CONFORME AU REGISTRE
DU MENFP.
P-AU-P . LE : **2 6 NOV. 2015**

...........................................

LE CHEF DU SERVICE DE CERTIFICATION
RECEPISSE N°

Vu : Pour identification de la signature du Chef
de Service de la Certification et d'Equivalence

**Louis Alix TOUSSAINT**, ar.
Assistant-Directeur
Direction des Affaires Juridiques MENFP

Réc : 4510313005-5
Date : 27-11-2015

DIRECTION GENERALE DE
L'EDUCATION NATIONALE
**3 DEC 2015**
Date:
Code No:

Apposée
Réc Enregistré au n°
Ministère des Affaires Etrangères
Port au-prince, le
Chargé de Mission





RÉPUBLIQUE D'HAÏTI

MINISTÈRE DE L'ÉDUCATION NATIONALE ET DE LA FORMATION PROFESSIONNELLE

DIPLÔME D'ÉTUDES SECONDAIRES

Ansly DAMUS

né(e) le   17 Juillet 1976   à   Grande Rivière du Nord

a obtenu à la session de   Août 2003   le diplôme d'études secondaires

Deuxième   partie, section   Philo D

Numéro d'enregistrement :   03-03-49676

Fait à Port-au-Prince,
le 24 Mars 2015

Par délégation du Ministre

Le Directeur Général

Le Directeur
de l'Enseignement Secondaire

L'UNION FAIT LA FORCE

Le Directeur du Bureau
National des Examens d'État

2003



Vu : Pour identification de la signature du Chef
de Service de la Certification et d'Équivalence

Louis Alix TOUSSAINT, av.
Assistant-Directeur
Direction des Affaires Juridiques MENFP

Réc. : 4510031300S-5
Date : 27-11-2015

DIRECTION GÉNÉRALE DE
L'ÉDUCATION NATIONALE

CERTIFIE CONFORME AU REGISTRE
DU MENFP.
P-AU-P . LE : 2 6 NOV. 2015
..................................
LE CHEF DU SERVICE DE CERTIFICATION
REGERISSE N°



RÉPUBLIQUE D'HAÏTI

MINISTÈRE DE L'ÉDUCATION NATIONALE ET DE LA FORMATION PROFESSIONNELLE

DIPLÔME D'ÉTUDES SECONDAIRES

2000

**Ansly DAMUS**

né(e) le   17 Juillet 1976   à   GRAND RIVIÈRE DU NORD
a obtenu à la session de Juillet   2000   le diplôme d'études secondaires

Première   partie, section   Rhéto D

Numéro d'enregistrement ...........

L'UNION FAIT LA FORCE

Par délégation du Ministre
Le Directeur Général

Fait à Port-au-Prince,
le .......... /2015

Le Directeur du Bureau
National des Examens d'État

Le Directeur
de l'Enseignement Secondaire





# CERTIFICAT

*Nous attestons sous l'honneur que*

## M. Ansly Damus

*a participé au Séminaire de formation de 30 heures en Autocad du 5 février au 9 février 2005.*

*En foi de quoi, le présent certificat lui est délivré à telles fins que de droit.*

*Port-au-Prince le 9 février 2005*

Gardith BRIGHTON, Ing
Responsable de la formation



Centre de Formation Professionnelle d'Haïti

Attestation d'études

Nous, soussignés, attestons que *M. Ansly Damus*
a suivi 260 Heures de cours sur le sujet suivant :

CIRCUITS LOGIQUES

Fait à Port-au-Prince, en ce   15ème   jour de juin 2004

DIRECTEUR-DES ÉTUDES

DIRECTEUR DE L'ÉDUCATION PERMANENTE

Activate your Bank of America® debit card now and see what it can do for you.

 **Bank of America**





ALBARETE E PAVILUS
IRVINGTON NJ 07111-2404

This card is linked to primary

## Easy to use
Your enclosed card comes with chip technology, which provides an extra layer of security when used at terminals or ATMs that are chip-enabled terminal.

For everyday purchases, use your card as you do today — just swipe it. When a merchant prompts you to use the chip-enabled terminal, insert your card into the card reader.[1] For use at ATMs, simply insert your card and follow the on-screen instructions. When your transaction is complete, remember to take your card.

## Your security is our priority
The new chip on your card gives you an extra layer of security at terminals or ATMs that are chip-enabled because the data stored on the card is more difficult to counterfeit or copy. Plus, whether you use your debit card to shop online, by phone or in a store, every purchase is covered by our $0 Liability Guarantee[3] which credits your account for fraudulent transactions. Visit **bankofamerica.com/security**.

## Accepted everywhere
Whether shopping in town or traveling abroad, your new card enables you to continue to confidently making purchases or use at an ATM wherever you go. While chip technology has been used around the world for nearly a decade, we want you to be ready as it comes to the U.S.

## Manage your money 24/7
Track purchases, transfer money,[3] pay bills and much more with Online and Mobile Banking.[4] Visit **bankofamerica.com/onlinebanking**.

(Please see reverse for more important information about your card.)



How to use your debit card at a chip-enabled terminal

### Step 1
**Insert** and leave your card in a chip-enabled terminal.

### Step 2
**Enter** your Personal Identification Number (PIN) or sign as you normally would to verify the transaction.

### Step 3
**Remove** your card from the terminal once your transaction is complete.

*See the enclosed guide to learn more about how chip technology works.*

## Active su tarjeta de débito ahora*.
1. Llame al **888.624.2323** (Cobro revertido internacional 1.925.675.6195), utilícela en cualquier **cajero automático (ATM) de Bank of America** realice una compra usando su Número de Identificación Personal (PIN), entre en la Banca en Línea en **bankofamerica.com/activatedebitcard.**
2. Firme el reverso de su tarjeta inmediatamente.
3. Comience a usar su tarjeta para compras y en los ATMs.

* Su tarjeta no está activada. Recuerde que deberá activar la tarjeta antes de usarla. Si no desea utilizar esta tarjeta, por favor corte la cinta magnética al dorso en pedazos antes de tirarla.

## Activate your debit card now.*
1. Call **888.624.2323** (Int'l collect 1.925.675.6195), use it at an Bank of America ATM or make a purchase using your PIN, or si in to Online Banking at **bankofamerica.com/activatedebitcard**
2. Sign the back of your card immediately.
3. Start using your card for purchases and at ATMs.

* Your card is not activated. Before you can use your card, you need to activate it. I you do not wish to use this card, please dispose of it carefully by cutting it up throu the stripe on the back of the card.
Spanish instructions available beneath the affixed card.
(Vea las instrucciones en español debajo de la tarjeta.)

ARKDTCS8 - 0713

Exhibit C

# Elizabeth B. Ford, Attorney at Law LLC

P.O. Box 457
Chardon, OH 44024
T: 440 487 5697
F: 440 214 9169
Elizabeth@ebfordlaw.com

## FAX COVER

**Date:** February 19, 2018

**To:** Cleveland ICE-ERO/216 749 9264

**From:** Elizabeth B. Ford/440 214 9169

**Message:** Parole request for Ansly DAMUS/209- 762-773

**Pages:** 13

Should you any questions or comments, please direct them to Elizabeth Ford, Esq.

Thank you for your assistance.

# ELIZABETH B. FORD

## ATTORNEY AT LAW

P.O. BOX 457, CHARDON, OH 44024

E:ELIZABETH@EBFORDLAW.COM  T: (440) 487 5697

February 19, 2018

Office of Immigration and Customs Enforcement-ERO
925 Keynote Circle
Brooklyn Hts, Ohio 44131

*Sent via fax: 216-749-9264*

> Re:   **Parole Request and Supporting Documents**
>        **Alien: Ansly DAMUS/A209-762-773**

     My client, Mr. Ansly Damus/A209 762 773, respectfully requests parole based on the Cleveland Immigration Judge's grants of asylum on 10 January 2018 and 04 April 2017. The DHS OCC has appealed the most recent grant, and the case is currently pending at the Board of Immigration Appeals. Mr. Damus has been detained at the Geauga County Sheriff's Office in Chardon, Ohio since his arrival in the USA in approximately October of 2016. During his detention, Mr. Damus has been a model inmate, with no disciplinary issues. Further, Mr. Damus has always been prepared for all his immigration court hearings and has taken all his appearances before the IJ seriously. At this point, with his detention nearing a year and a half, and two grants of asylum by the Cleveland IJ, Mr. Damus is again seeking a grant of parole based on the changed circumstances in his case.

As ICE will remember, the following documents were initially attached with Mr. Damus's first parole request in January of 2017:

1. Copy of Birth Certificate of Mr. Damus;
2. Copy of his Haitian Passport,
3. Copy of his marriage certificate;
4. Copy of his Matricula ID document;
5. Original and copies of his school certificates and diplomas;
6. Notarized Letter of support from Albarete Pavilus, long time friend of Mr. Damus;
7. Color copy of the front/back of Mr. Pavilus's legal permanent resident card;
8. Copies of current statements of Mr. Pavilus, showing his address.

These documents should suffice to prove Mr. Damus's identity. In support of this new parole request, the following is submitted:

1. Copy of the IJ's grant of asylum from January 10, 2018;
2. Copy of the IJ's grant of asylum from April 4, 2017;
3. Letter from Melody Hart and Gary Benjamin, of Cleveland Heights, Ohio, stating that they will take Mr. Damus into their home, offering him any support her requires including but not limited to: food, clothing and housing;
4. Copies of Melody and Gary's US passports;
5. Copy of a bill showing Melody and Gary's address as: 2976 Monmouth Rd., Cleveland Heights, OH 44118;
6. Letter from Rev. Paul Gaston of Trinity Cathedral in Cleveland Heights, stating that Trinity will assist Melody and Gary in whatever is necessary for Mr. Damus;
7. Letter from Rev. Gerard Mirbel, of the Miracle Revival Ministry in Painesville, Ohio in support of Mr. Damus's parole request.

**Identity Documents**

Mr. Damus has provided a copy of his birth certificate, marriage certificate, Haitian Matricula as well as a copy of his valid, unexpired Haitian passport. He has also provided original and copies of his school diplomas and school certification to prove his identity. Further, the IJ ,in the numerous hearings that have occurred, did not find Mr. Damus's identity or credibility to be an issue.

Therefore, based on the evidence provided, Mr. Damus's identity should be established.

**Mr. Damus is NOT a flight risk**

If offered parole by Immigration and Customs Enforcement, Mr. Damus will reside with Melody Hart and Gary Benjamin in Cleveland Heights, Ohio. Melody and Gary (a married couple) are US citizens by birth. He will reside at ▆▆▆▆▆▆▆▆ Cleveland Heights, OH 44118. Melody and Gary have provided statements assuring that they will assist Mr. Damus in whatever he needs during his stay with them.

Again, because the IJ has granted Mr. Damus's asylum **twice**, Mr. Damus will remain in contact with the immigration court until the conclusion of his proceedings. Moreover, his case is currently pending with the Board of Immigration Appeals, and undersigned counsel is representing him at this level as well. Therefore, based on the evidence provided, Mr. Damus should not be found to be a flight risk.

**Mr. Damus is NOT a danger to the community**

Mr. Damus does not have a criminal record in the USA or in Haiti. He is an upstanding member of his community and well-educated. Furthermore, Mr. Damus was a victim in Haiti.

In conclusion, Mr. Damus respectfully requests that Immigration and Customs Enforcement grant parole so he can be released from his prolonged dentation. He is not a flight risk and he does not have a criminal record. Mr. Damus has already attended all court dates and been in complete compliance with everything required of him since he entered the USA in approximately October of 2016. He has been awarded asylum **twice** and should be released from jail during the pendency of his appeal.

Thank you for your consideration.

Elizabeth B. Ford, Esq. (0087791)
EOIR ID: EF543819
Elizabeth B. Ford, Attorney at Law
PO BOX 457
Chardon, OH 44024
T: 440-487-5697
F: 440-214-9169
Elizabeth@ebfordlaw.com

Melody Hart and Gary Benjamin
███████████████
Cleveland Heights, Oh  44118

February 15, 2018

To Whom It May Concern:

This letter is in support **ANSLY DAMUS/A209 762 773**. His birth date is ███████
████. Ansly is a citizen of Haiti. To the best of my knowledge, Ansly does not have any
criminal problems in Haiti or the USA.

We are citizens born in the USA. Gary was born in Rockford, Illinois on ███████
████ and Melody was born in Lewisburg, TN on █████████████ We live in
Cleveland Heights, Ohio at █████████████ Our phone numbers are our cell phones
– Melody's is ████████ and Gary's is ███████. We are empty nesters and have
a large home.  Gary has visited Haiti many years ago and has been interested in that
country ever since.

Both of us are licensed professionals – Gary an attorney and Melody a CPA. We work at
home, so we will be there with Ansly during the day and will accompany him to church
on Sundays and Wednesdays. We have not met Ansly but have been told he too is a
professional and a religious person who is attempting to make his way in his new
country, if he is allowed to receive asylum here.

We affirm that Ansly Damus will stay at our home located at █████████████ in
Cleveland Heights, Ohio 44118 if he is released from jail in Ohio.  We will provide food
and shelter and clothing for Ansly during the course of his stay with us.

Thank you, and please do not hesitate to contact me if you need any more information.

*Melody Hart*

Melody J. Hart

*Gary Benjamin*

Gary A. Benjamin





# Northeast Ohio Regional Sewer District

Northeast Ohio Regional Sewer District
neorsd.org
Billing Questions: 216-664-3130

| ACCOUNT: | |
|---|---|
| CUSTOMER NAME: | MELODY HART |
| SERVICE ADDRESS: | |
| | CLEVELAND HEIGHTS, OH 44118 |
| BILLING DATE: | 02/06/2018 |
| DUE DATE: | 03/01/2018 |

| Previous Balance | Payments (Credits) | Bill Corrections | Balance Forward | Current Charges | Total Amount Due |
|---|---|---|---|---|---|
| $103.70 | -$103.70 | $0.00 | $0.00 | $54.90 | $54.90 |

## USAGE INFORMATION

Monthly Usage (in 1,000 cubic foot increments)



| Meter Number | Previous Read | | | Current Read | | | Usage |
|---|---|---|---|---|---|---|---|
| | Date | Read | Type | Date | Read | Type | MCF |
| CH03508672 | 1/3/18 | 33.6 | Act | 2/2/18 | 34.1 | Est | 0.5 |

## ACCOUNT ACTIVITY

| Balance Forward | $0.00 |
|---|---|
| **Current Charges** | |
| Fixed Charge - 01-04-2018 to 02-02-2018 | $4.95 |
| Sewage Charge - 0.500 MCF at $89.60 per MCF | $44.80 |
| Stormwater Charge $5.15 per ERU for 1 month(s) | $5.15 |
| 1.00 ERU, 01-06-2018 to 02-05-2018 | |
| **TOTAL AMOUNT DUE** | **$54.90** |

## IMPORTANT MESSAGE

NEORSD-SHL 11/15

PLEASE FOLD ON PERFORATION BEFORE TEARING - RETURN BOTTOM PORTION WITH YOUR PAYMENT

Northeast Ohio Regional Sewer District
PO Box 94970
Cleveland, OH 44101

| Account | Due Date | Total Amount Due |
|---|---|---|
| | 03/01/2018 | $54.90 |

Amount Paid: $_____



158/4 1 AV 0.376 02/10/2018 P.1 T.57 100000


MELODY HART

CLEVELAND HTS, OH 44118-4036

Please make check payable to:
Northeast Ohio Regional Sewer District
PO Box 94550
Cleveland, OH 44101-4550





# TRINITY CATHEDRAL
AN INCLUSIVE COMMUNITY OF FAITH
The Cathedral of the Episcopal Diocese of Ohio

February 16, 2018

To whom it may concern:

This letter is meant to affirm that Gary Benjamin and Melody Hart are well-known and highly respected members of Trinity Cathedral (Episcopal), Cleveland, OH. Their deep commitment to equity and social justice is widely admired, and their leadership with regard to these principles has strengthened the ministry of the cathedral.

I want to affirm also my personal admiration for their dedication to the social gospel as expressed in their support for the disadvantaged, for immigrants, and for the oppressed. Such members give substance to the preaching of the church and express its most deeply held values in action.

Please let me know if I may expand on these observations.

Faithfully,

(The Rev.) Paul L. Gaston
Acting Dean

Trinity Cathedral
2230 Euclid Avenue
Cleveland, Ohio 44115
Phone 216-771-3630
Fax 216-771-3657

THE MISSION OF TRINITY CATHEDRAL IS TO PROCLAIM IN WORD AND ACTION GOD'S JUSTICE, LOVE AND MERCY FOR ALL CREATION.

trinity@trinitycleveland.org   •   www.trinitycleveland.org   •   Facebook: www.facebook.com/trinitycleveland   •   Twitter: @trinitycleve

# Miracle Revival Ministry AG
## ASSOCIATION TO HELP THE LORD'S WORK

182 WEST JACKSON STREET PAINESVILLE, OHIO 44077
(440) 521-0587 **MiracleRevivalMinistry.org** (440) 527-1902

February 15, 2018

To Officials at ICE:

I am writing on behalf of Ansly Damus, a professor who taught at College de Grande Riviere du Nord, in Haiti. He is currently being detained in the Geauga County Jail as an immigrant detainee, and has been held there for over a year.

As an immigrant from Haiti myself, now a U.S. citizen, and pastor with Miracle Revival Ministry Assembly of God, in Painesville, OH. I would like to express our full support for Mr. Damus.

Also, as the former President of the Lake County NAACP and now serving as First Vice President, I would like to add that the organization is also in support of Mr. Ansly, and will assist with any of his needs if he is released from detention.

Given the fact that his asylum claim has been approved twice by a judge, we would like the opportunity to assist Mr. Ansly in any way we can.

We urge that you strongly consider his release, and we look forward to welcoming him into our community and providing whatever help he may need.

If you have any questions, please don't hesitate to contact me.

Rev. Gerard Mirbel

10

IMMIGRATION COURT
801 W. SUPERIOR AVE, STE13-100
CLEVELAND, OH  44113

In the Matter of

DAMUS, ANSLY
    Respondent

Case No.: A209-762-773

IN REMOVAL PROCEEDINGS

ORDER OF THE IMMIGRATION JUDGE

This is a summary of the oral written decision entered on 1/10/2018.
This memorandum is solely for the convenience of the parties.  If the
proceedings should be appealed or reopened, the oral decision will become
the official opinion in the case.

[ ]  The respondent was ordered removed from the United States to HAITI.
[ ]  Respondent's application for voluntary departure was denied and
     respondent was ordered removed to HAITI.
[ ]  Respondent's application for voluntary departure was granted until
     _____ upon posting a bond in the amount of $ _____
     with an alternate order of removal to HAITI.

Respondent's application for:
[X]  Asylum was ( X )granted  (  )denied(  )withdrawn.
[X]  Withholding of removal was (  )granted (  )denied  (  )withdrawn. NOT
[ ]  A Waiver under Section _____ was (  )granted (  )denied  (  )withdrawn.
[ ]  Cancellation of removal under section 240A(a) was (  )granted  (  )denied
     (  )withdrawn.

Respondent's application for:
[ ]  Cancellation under section 240A(b)(1) was (  ) granted  (  ) denied
     (  ) withdrawn.  If granted, it is ordered that the respondent be issued
     all appropriate documents necessary to give effect to this order.
[ ]  Cancellation under section 240A(b)(2) was (  )granted  (  )denied
     (  )withdrawn.  If granted it is ordered that the respondent be issued
     all appropriated documents necessary to give effect to this order.
[ ]  Adjustment of Status under Section _____ was  (  )granted  (  )denied
     (  )withdrawn.  If granted it is ordered that the respondent be issued
     all appropriated documents necessary to give effect to this order.
[X]  Respondent's application of (  X withholding of removal  (  ) deferral of
     removal under Article III of the Convention Against Torture was
     (  ) granted  (  ) denied  (  ) withdrawn. NOT
[ ]  Respondent's status was rescinded under section 246.
[ ]  Respondent is admitted to the United States as a _____ until _____.
[ ]  As a condition of admission, respondent is to post a $ _____ bond.
[ ]  Respondent knowingly filed a frivolous asylum application after proper
     notice.
[ ]  Respondent was advised of the limitation on discretionary relief for
     failure to appear as ordered in the Immigration Judge's oral decision.
[ ]  Proceedings were terminated.
[ ]  Other: _____
     Date:  Jan 10, 2018

ALISON M. BROWN
Immigration Judge

Appeal:  Waived/Reserved     Appeal Due By:
         R   DHS                  2/9/18

IMMIGRATION COURT
801 W. SUPERIOR AVE, STE13-100
CLEVELAND, OH 44113

In the Matter of

Case No.: A209-762-773

DAMUS, ANSLY
        Respondent

IN REMOVAL PROCEEDINGS

ORDER OF THE IMMIGRATION JUDGE

This is a summary of the oral decision entered on __4/3/17__.
This memorandum is solely for the convenience of the parties. If the
proceedings should be appealed or reopened, the oral decision will become
the official opinion in the case.

[ ]  The respondent was ordered removed from the United States to
     HAITI or in the alternative to .
[ ]  Respondent's application for voluntary departure was denied and
     respondent was ordered removed to HAITI or in the
     alternative to .
[ ]  Respondent's application for voluntary departure was granted until
     upon posting a bond in the amount of $_____
     with an alternate order of removal to HAITI.
Respondent's application for:
[X]  Asylum was (X)granted ( )denied( )withdrawn.
[X]  Withholding of removal was ( )granted ( )denied ( )withdrawn. MOOT
[ ]  A Waiver under Section ____ was ( )granted ( )denied ( )withdrawn.
[ ]  Cancellation of removal under section 240A(a) was ( )granted ( )denied
     ( )withdrawn.
Respondent's application for:
[ ]  Cancellation under section 240A(b)(1) was ( ) granted ( ) denied
     ( ) withdrawn. If granted, it is ordered that the respondent be issued
     all appropriate documents necessary to give effect to this order.
[ ]  Cancellation under section 240A(b)(2) was ( )granted ( )denied
     ( )withdrawn. If granted it is ordered that the respondent be issued
     all appropriated documents necessary to give effect to this order.
[ ]  Adjustment of Status under Section ____ was ( )granted ( )denied
     ( )withdrawn. If granted it is ordered that the respondent be issued
     all appropriated documents necessary to give effect to this order.
[X]  Respondent's application of (X) withholding of removal ( ) deferral of
     removal under Article III of the Convention Against Torture was
     ( ) granted ( ) denied ( ) withdrawn. MOOT
[ ]  Respondent's status was rescinded under section 246.
[ ]  Respondent is admitted to the United States as a ____ until ____.
[ ]  As a condition of admission, respondent is to post a $____ bond.
[ ]  Respondent knowingly filed a frivolous asylum application after proper
     notice.
[ ]  Respondent was advised of the limitation on discretionary relief for
     failure to appear as ordered in the Immigration Judge's oral decision.
[ ]  Proceedings were terminated.
[ ]  Other: _____.
Date: ~~Feb 17, 2017~~
      4/3/17

                                        ALISON M. BROWN
                                        Immigration Judge

Appeal: Waived/Reserved   Appeal Due By:
        DTB               5/3/17

12

ALIEN NUMBER: 209-762-773      NAME: DAMUS, ANSLY

CERTIFICATE OF SERVICE
THIS DOCUMENT WAS SERVED BY:  MAIL (M)     PERSONAL SERVICE (P)
TO: [ ] ALIEN   [ ] ALIEN c/o Custodial Officer [ ] ALIEN's ATT/REP [ ] DHS
DATE: ___4/3/17___     BY: COURT STAFF _____
     Attachments: [ ] EOIR-33  [ ] EOIR-28  [ ] Legal Services List  [ ] Other

Q6

13