## DECLARATION OF ANNE DAHER

I, Anne Daher, declare and state as follows:

1. I am licensed to practice law by the State of California and am currently a Staff Attorney at the Center for Gender & Refugee Studies ("CGRS") at the University of California Hastings College of the Law ("UC Hastings"). I have personal knowledge of all facts stated in this declaration, and if called to testify, I could and would testify competently thereto.

2. After graduating from UC Hastings in 2013, I practiced civil litigation for two years. Thereafter, from 2015 to 2017, I served as a Staff Attorney at the U.S. Court of Appeals for the Ninth Circuit, where I specialized in asylum law. I joined CGRS as a Staff Attorney in June 2017.

3. Since then, I have engaged in and researched various aspects of asylum law and procedure and co-authored the 5th edition of *Refugee Law & Policy*, a law school case book set for publication later this year. I have also coordinated an interdisciplinary legal/social science collaborative study analyzing hundreds of immigration court and Board of Immigration Appeals decisions. As part of this project I have coded data points from over a hundred agency decisions using Microsoft Excel and am comfortable using that software.

4. In October 2015, CGRS and the Immigrants' Rights Project of the American Civil Liberties Union ("ACLU") requested information under the Freedom of Information Act ("FOIA") from U.S. Immigration and Customs Enforcement ("ICE") regarding the detention of asylum seekers who arrive at the United States via a port-of-entry or interdiction at sea—classified as "arriving aliens," *see* 8 C.F.R. §1.2—and are found to have a credible fear of persecution, designated by ICE as FOIA Request No. 2016-ICFO-01574.

5. We requested, *inter alia*, monthly report data that DHS was required to generate pursuant to the 2009 ICE Directive 11002.1, Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture ("Parole Directive"). The Parole Directive mandated monthly reports by the ICE Field Office Directors detailing the number of parole adjudications conducted under the Parole Directive within their respective areas of responsibility, the results of those adjudications, and the asserted basis of each decision whether to grant or deny parole. *See* Parole Directive ¶ 8.11.

6. Through the FOIA request and related litigation before the Northern District of California, ICE has provided monthly report data in the form of Microsoft Excel spreadsheets to CGRS for January 2011 to September 2017. A copy of the DHS supplemental response letters for this data is attached as Exhibit A.

7. The following is based on analysis of data in the ICE monthly spreadsheets for the period of January 2011 through September 2017.

8. For figures below, I tabulated grant and denial rates by using a combination of the sort, sum, and count functions in Excel to identify the number of grants or denials, and then divided that figure by the number of total entries for which a decision was made for a given time frame or jurisdiction(s). I tabulated rates of reason categories asserted for denials (e.g., "identity," "flight risk," "danger to the community") similarly by using a combination of sort, sum, and count functions in Excel to identify the number of times a particular reason category was marked for a denial, divided by the total number of denials for a given timeframe or jurisdiction(s).

9. In the years after ICE issued the Parole Directive, ICE granted parole to the overwhelming majority of asylum seekers who requested release. Based on my calculations as described above, the combined parole grant rate for the Detroit Field Office (marked "DET" or "FDT" in the spreadsheets), El Paso Field Office ("ELP" or "FEP"), Los Angeles Field Office ("LOS" or "FLS"), Newark Field Office ("NEW" or

"FNE"), and Philadelphia Field Office ("PHI" or "FPA") for January 2011 through December 2013 was 92%,[1] with 2040 total parole grants and 177 total parole denials reported. Of the denials for the Detroit, El Paso, Los Angeles, Newark, and Philadelphia Field Offices for January 2011 through December 2013, flight risk was marked as an asserted basis in 66% percent of denials (116 out of 177 total denials).

10. These trends later changed drastically. Based on my calculations for February 2017 through September 2017 as described above, the combined parole grant rate for the Detroit, El Paso, Los Angeles, Newark, and Philadelphia Field Offices plummeted to less than 4%, with 29 total parole grants and 791 total parole denials reported. Of the total parole denials, ICE marked "flight risk" as an asserted basis for 91% of denials (721 out of 791 total denials).

11. Broken down by field office, during the period of February through September 2017:
   - the parole denial rate for the Detroit Field Office was 98% (63 denials and 1 grant);
   - the parole denial rate for the El Paso Field Office was 100% (349 denials and 0 grants);
   - the parole denial rate for the Los Angeles Field Office was 92% (326 denials and 28 grants);
   - the parole denial rate for the Newark Field Office was 100% (10 denials and 0 grants); and
   - the parole denial rate for the Philadelphia Field Office was 100% (43 denials and 0 grants).

---

[1] For simplicity, all percentages have been rounded to the nearest whole number.

I declare under penalty of perjury under the laws of the state of California and the United States that the foregoing is true and correct and that this declaration was executed on March 19, 2018.

_Anne Daher_
ANNE DAHER

# EXHIBIT A



*Freedom of Information Act Office*

U.S. Department of Homeland Security
500 12th St SW, Stop 5009
Washington, DC 20536

U.S. Immigration
and Customs
Enforcement

January 25, 2018

Mishan R. Wroe
456 Montgomery Street, 16th Floor
San Francisco, California 94104

RE:  ICE FOIA Case Number 2017-ICLI-00002; *American Civil Liberties Union, et al. v. U.S. Immigration and Customs Enforcement* (Case No. 3:16-cv-06066)

Dear Ms. Wroe:

In accordance with our previous correspondence, enclosed please find 17 Excel spreadsheets that have been re-processed to correct the inadvertent disclosure of privileged materials that occurred in our previous releases to you under the Freedom of Information Act in this case.

We appreciate your cooperation in this matter. If you have you any questions, please contact Assistant U.S. Attorney Julie B. Davis at (415) 436-7066.

Sincerely,

Catrina M. Pavlik-Keenan
FOIA Officer

Enclosure(s): 17 Excel spreadsheets

*Freedom of Information Act Office*

U.S. Department of Homeland Security
500 12th St SW, Stop 5009
Washington, DC 20536



U.S. Immigration
and Customs
Enforcement

February 9, 2018

Eunice Lee
UC Hastings College of the Law
Center for Gender & Refugee Studies
200 McAllister St.
San Francisco, CA 94102

RE: **ICE FOIA Case Number 2017-ICLI-00002;** *American Civil Liberties Union, et al. v. U.S. Immigration and Customs Enforcement* **(Case No. 3:16-cv-06066)**

Dear Ms. Lee:

This letter is a supplemental response by U.S. Immigration and Customs Enforcement (ICE) to the Freedom of Information Act (FOIA) requests submitted by you, dated October 5, 2015. In the FOIA requests, you are seeking records pertaining to parole decisions for arriving aliens found to have a credible fear of persecution. The two requests filed on October 5, 2015 are now the subject of the above-referenced litigation and are being processed under the FOIA, 5 U.S.C. §552.

ICE has processed for release 1 Excel spreadsheet located by a search of ICE's Enforcement and Removal Operations (ERO). Portions of these documents have been withheld pursuant to Exemptions 6 and 7(C) of the FOIA.

ICE has applied FOIA Exemptions 6 and 7(C) to protect from disclosure the names, e-mail addresses, and phone numbers of ICE and DHS employees contained within the documents, as well as the names, and other personally identifiable information of other individuals contained within the records.

**FOIA Exemption 6** exempts from disclosure personnel or medical files and similar files the release of which would cause a clearly unwarranted invasion of personal privacy. This requires a balancing of the public's right to disclosure against the individual's right to privacy. The privacy interests of the individuals in the records you have requested outweigh any minimal public interest in disclosure of the information. Any private interest you may have in that information does not factor into the aforementioned balancing test.

**FOIA Exemption 7(C)** protects records or information compiled for law enforcement purposes that could reasonably be expected to constitute an unwarranted invasion of personal privacy. This exemption takes particular note of the strong interests of individuals, whether they are

suspects, witnesses, or investigators, in not being unwarrantably associated with alleged criminal activity. That interest extends to persons who are not only the subjects of the investigation, but those who may have their privacy invaded by having their identities and information about them revealed in connection with an investigation. Based upon the traditional recognition of strong privacy interest in law enforcement records, categorical withholding of information that identifies third parties in law enforcement records is ordinarily appropriate. As such, I have determined that the privacy interest in the identities of individuals in the records you have requested clearly outweigh any minimal public interest in disclosure of the information. Please note that any private interest you may have in that information does not factor into this determination.

If you have you any questions about this matter, please contact Assistant U.S. Attorney Julie B. Davis at (415) 436-7066.

Sincerely,

Catrina M. Pavlik-Keenan
FOIA Officer

Enclosure(s): 1 Excel spreadsheet