Exhibit C

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

**Ansly DAMUS, *et al.*,**

**Plaintiffs,**

**v.**                                                      Civil Action No. 1:18-cv-00578

**Kirstjen NIELSEN, Secretary, U.S.**

**Department of Homeland Security, in her**

**official capacity, *et al.*,**

**Defendants.**

## <u>DECLARATION OF ANDRE QUINONES</u>

I, Andre G. Quinones, declare under the penalty of perjury that the following statements are true and correct to the best of my knowledge, information, and belief:

1. I am employed as an Assistant Field Office Director (AFOD) with the U.S. Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Office of Enforcement and Removal Operations ("ERO") in Los Angeles, California. I have been employed by DHS since March 2003. I am currently assigned to the Orange County Detained Program. Depending on the context, the following facts are either based on my review of immigration records, including the subject's alien file and DHS electronic databases, or my personal knowledge and, if called as a witness, I could and would testify competently thereto.

2. Arriving aliens who apply for asylum are subject to detention until they establish credible fear of persecution or torture following an interview with an asylum officer. Once the credible fear is established, the detained alien may be paroled provided the alien meets the criteria as per ICE Directive 11002.1 Parole of Arriving Aliens Found to Have a Credible Fear of

1

Persecution or Torture.

3. Each case that is amenable to the parole process is reviewed for eligibility and consideration based on the facts of the individual alien's case. Consideration for parole is a three (3) tier recommendation process that is documented on the Record of Determination/Parole Determination Worksheet, with the final authority to grant parole at the AFOD level, which was granted to me by the Field Office Director pursuant to the Parole Directive. Once a detained alien meets the criteria as established in Directive 11002.1, also known as the Parole Directive, the alien is amenable to parole.

4. Prior to a parole determination, a deportation officer then completes a Record of Determination/Parole Determination Worksheet (ICE Form 71-013) pursuant to the Parole Directive. Deportation officers are in constant contact and communication with detainees, and detainees and their attorneys routinely provide documents to their officers in support of parole requests. As such, parole interviews are not conducted in every case if the interview would be superfluous. If I receive a parole recommendation and cannot determine the precise basis for the recommendation, my practice is to reach out to the recommending officer for clarification and occasionally direct the officer to conduct a parole interview to gather further information.

5. Factors that are weighed in making a determination include: did the alien establish their identity to include a review of the identity documents provided by the alien; if the alien is considered a flight risk; what ties the alien has in the United States; the alien's stability and relationship to a sponsor; and does the alien pose a danger to the community. Additional factors are considered to include if the alien established an urgent humanitarian reason or significant public benefit to warrant release. Additionally, our office considers other factors, such as the alien's past criminal history, suspected involvement in criminal activity, immigration history, including instances involving fraud, inconsistent statements made to immigration officials, and information about the alien's sponsor. In some cases, a reasonable bond and/or placing the alien in an alternative-to-detention program would be considered to assure that the alien will appear for all hearings. If denied parole, an alien may request redetermination and may establish changed circumstances or submit additional evidence pursuant to that redetermination. This

Ex. C

directive is still in effect in Los Angeles and I have been instructed to follow the Parole Directive until further notice.  I am not aware of any officer in this field office using deterrence of future immigration as a factor in a parole determination.

6.  On October 9, 2017, L.I.L.M., Axxx-xxx-675, applied for admission to the United States at the San Ysidro, California Port of Entry and requested asylum.

7.  On October 20, 2017, L.I.L.M. was transferred to the Theo Lacy Facility in Orange, California.  On November 15, 2017, L.I.L.M. was transferred to the James A. Musick Facility in Irvine, California, where he is currently detained.

8.  On or about October 31, 2017, an Asylum Officer found that L.I.L.M. had a credible fear of persecution.  L.I.L.M. was accordingly served with an ICE Form 71-012, Parole Advisal and Scheduling Notification, informing him of his parole interview scheduled for November 8, 2017 and of the factors used to determine whether to grant parole. *See* Exh. 1.  The Form 71-012 also provided notice that any paperwork L.I.L.M. would like considered (or request for additional time to gather paperwork) were required no later than November 7, 2017.

9.  In support of L.I.L.M.'s parole request, Freddy Ponce submitted an affidavit of support, California birth certificate, California driver's license, and a piece of mail addressed to Ponce at his San Jose, California address.  In his affidavit, Ponce claimed to be L.I.L.M.'s cousin.  However, L.I.L.M. previously answered questions regarding Ponce in his Record of Sworn Statement as follows:

> Q: Who do you know in San Jose?
>
> A: Andres. He's a family member. He told me to contact Freddy in San Jose. He's in charge of us.
>
> Q: What's Andres' last name and how is he related to you?
>
> A: I don't know his last name.
>
> Q: He isn't family is he? Did you pay Andres to put you in contact with Freddy?
>
> A: He's a friend. I've known him for three weeks. No I didn't pay him.
>
> . . . .
>
> Q: Will you give me Freddy's phone number? And address?

Ex. C

1        A: I'll give you Andres's phone number.

2  *See* Exh. 3.  L.I.L.M. also admitted in his Record of Sworn Statement that he lived and

3  performed seasonal agricultural work in Canada.

4        10.  A deportation officer interviewed L.I.L.M. and completed Record of

5  Determination/Parole Determination Worksheet.  This worksheet indicates that the officer

6  recommended denying parole.  The Deportation Officer noted that L.I.L.M. did not provide any

7  documentation to establish his identity, and is a potential flight risk.  As an additional flight risk

8  factor weighing against parole, the Deportation Officer noted the discrepancy between Ponce's

9  claim to be L.I.L.M.'s cousin with L.I.L.M.'s statements regarding his relationship with Ponce in

10  the Record of Sworn Statement.  The Deportation Officer also noted L.I.L.M.'s previous

11  residence and work in Canada as an additional factor weighing against parole.  Accordingly, the

12  officer determined that L.I.L.M. had not established that he was not a flight risk and

13  recommended denial of parole.

14        11.  The reviewing Supervisory Detention and Deportation Officer also recommended

15  denying parole because Ponce's documents were not sufficient to support parole, and because

16  L.I.L.M. previously lived and worked in Canada.  Therefore, the reviewing officer concurred in

17  the assessment that L.I.L.M. posed a flight risk and further recommended denial of parole.

18        12.  On November 15, 2017, I concurred with the reasoning and recommendations of the

19  Deportation Officer and Supervisory Detention and Deportation Officer, and concluded to deny

20  L.I.L.M. parole due to his flight risk.  I accordingly signed a letter addressed to L.I.L.M.

21  notifying him of ICE's decision to deny him parole due to his flight risk and failure to

22  sufficiently establish his identity.  *See* Exh. 4.   This letter notified L.I.L.M. of his ability to seek

23  redetermination of this decision with new evidence or changed circumstances.

24        13.  On December 12, 2017, E.E.C.S., Axxx-xxx-492, applied for admission to the

25  United States at the Otay Mesa, California Port of Entry.  E.E.C.S. presented a counterfeit

26  Mexican passport and non-immigrant visa under the name "Luis Jaimes Alcantar."  E.E.C.S. was

27  accordingly placed in expedited removal proceedings and claimed to fear return to El Salvador.

28

Ex. C

On or about January 16, 2018 an Asylum Officer found E.E.C.S. possessed a credible fear of persecution.

14.  E.E.C.S. was previously removed from the United States on November 9, 2017, after an Immigration Judge concurred with the finding of an Asylum Officer that E.E.C.S. did not then possess a credible fear of persecution.  *See* Exh. 5.

15.  On or about February 1, 2018, E.E.C.S.'s attorney submitted a request for parole and supporting documents, including E.E.C.S.'s Salvadoran passport, letters of support, and financial documents from E.E.C.S.'s family members in the United States.  However, two of these letters did not mention E.E.C.S. and instead were written in support of unrelated detainees.

16.  E.E.C.S. was served with an ICE Form 71-012, Parole Advisal and Scheduling Notification, on February 8, 2018.  *See* Exh. 6.  My review of the Record of Determination/Parole Determination Worksheet which was completed in this case indicates that the Deportation Officer who reviewed the documents submitted by E.E.C.S.'s attorney recommended denying parole based on flight risk citing three primary reasons: 1) E.E.C.S.'s prior removal approximately one month prior to his attempted entry, 2) E.E.C.S.'s use of counterfeit documents to attempt to gain admission to the United States, and 3) the use of affidavits of support pertaining to other individuals.  The Deportation Officer concluded an interview was not necessary to make his parole recommendation given that E.E.C.S.'s attorney submitted sufficient documents to make an initial recommendation.

17.  The reviewing Supervisory Detention and Deportation Officer also recommended denying parole based on flight risk.

18.  On February 8, 2018, I concurred with the Deportation Officer and Supervisory Detention and Deportation Officer's reasoning and recommendation, and concluded to deny parole based on the evidence indicating E.E.C.S. was a flight risk.  I accordingly generated a letter addressed to E.E.C.S. notifying him of ICE's decision to deny him parole due to his flight risk.  *See* Exh. 7.  E.E.C.S. was served with this letter on or about February 8, 2018.  This letter notified E.E.C.S. of his ability to seek redetermination of this decision with new evidence or changed circumstances.

1

2

3    Executed on April 19, 2017 at Orange, California.

4

5    ANDRE G. QUINONES

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ex. C

# Exhibit C-1

## U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT
## Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture

| | |
|---|---|
| **DISTRIBUTION:** | ICE |
| **DIRECTIVE NO.:** | 11002.1 |
| **ISSUE DATE:** | December 8, 2009 |
| **EFFECTIVE DATE:** | January 4, 2010 |
| **SUPERSEDES:** | See section 3. |
| **FEA NUMBER:** | 601-05 |

1. **PURPOSE.** The purpose of this ICE policy directive is to ensure transparent, consistent, and considered ICE parole determinations for arriving aliens seeking asylum in the United States. This directive provides guidance to Detention and Removal Operations (DRO) Field Office personnel for exercising their discretion to consider the parole of arriving aliens processed under the expedited removal provisions of section 235 of the Immigration and Nationality Act (INA) who have been found to have a "credible fear" of persecution or torture by U.S. Citizenship and Immigration Services (USCIS) or an immigration judge of the Executive Office for Immigration Review. This directive establishes a quality assurance process that includes record-keeping requirements to ensure accountability and compliance with the procedures set forth herein.

1.1. This directive does not apply to aliens in DRO custody under INA § 236. This directive applies only to arriving aliens who have been found by USCIS or an immigration judge to have a credible fear of persecution or torture.

2. **AUTHORITIES/REFERENCES.**

2.1. INA §§ 208, 212(d)(5), 235(b), and 241(b)(3); 8 U.S.C. §§ 1158, 1182(d)(5), 1225(b), and 1231(b)(3); 8 C.F.R. §§ 1.1(q), 208.30(e)-(f), 212.5 and 235.3.

2.2. Department of Homeland Security Delegation Number 7030.2, "Delegation of Authority to the Assistant Secretary for the Bureau of Immigration and Custom Enforcement" (Nov. 13, 2004).

2.3. ICE Delegations of Authority to the Directors, Detention and Removal and Investigations and to Field Office Directors, Special Agents in Charge and Certain Other Officers of the Bureau of Immigration and Customs Enforcement, No. 0001 (June 6, 2003).

3. **SUPERSEDED POLICIES AND GUIDANCE.** The following ICE directive is hereby superseded:

3.1. ICE Policy Directive No. 7-1.0, "Parole of Arriving Aliens Found to Have a 'Credible Fear' of Persecution or Torture" (Nov. 6, 2007).

4.    **BACKGROUND.**

4.1.    Arriving aliens processed under the expedited removal provisions of INA §235(b) may pursue asylum and related forms of protection from removal if they successfully demonstrate to USCIS or an immigration judge a credible fear of persecution or torture.

4.2.    Arriving aliens who establish a credible fear of persecution or torture are to be detained for further consideration of the application for asylum. INA § 235(b)(1)(B)(ii). Such aliens, however, may be paroled on a case-by-case basis for "urgent humanitarian reasons" or "significant public benefit," provided the aliens present neither a security risk nor a risk of absconding. 8 C.F.R. § 212.5(b); *see also* 8 C.F.R. § 235.3(c) (providing that aliens referred for INA § 240 removal proceedings, including those who have a credible fear of persecution or torture, may be paroled under § 212.5(b) standards).

4.3.    The applicable regulations describe five categories of aliens who may meet the parole standards based on a case-by-case determination, provided they do not present a flight risk or security risk: (1) aliens who have serious medical conditions, where continued detention would not be appropriate; (2) women who have been medically certified as pregnant; (3) certain juveniles; (4) aliens who will be witnesses in proceedings being, or to be, conducted by judicial, administrative, or legislative bodies in the United States; and (5) aliens whose continued detention is not in the public interest. *See* 8 C.F.R. § 212.5(b). *But compare* 8 C.F.R. § 235.3(b)(4)(ii) (stating that arriving aliens who have not been determined to have a credible fear will not be paroled unless parole is necessary in light of a "medical emergency or is necessary for a legitimate law enforcement objective").

4.4.    While the first four of these categories are largely self-explanatory, the term "public interest" is open to considerable interpretation. This directive explains how the term is to be interpreted by DRO when it decides whether to parole arriving aliens determined to have a credible fear. The directive also mandates uniform record-keeping and review requirements for such decisions. Parole remains an inherently discretionary determination entrusted to the agency; this directive serves to guide the exercise of that discretion.

5.    **DEFINITIONS:**

5.1.    **Arriving Alien.** For purposes of this directive, "arriving alien" has the same definition as provided for in 8 C.F.R. § 1.1(q) and 1001.1(q).

5.2.    **Credible Fear.** For purposes of this directive, with respect to an alien processed under the INA § 235(b) "expedited removal" provisions, "credible fear" means a finding by USCIS or an immigration judge that, taking into account the credibility of the statements made by the alien in support of the alien's claim and such other facts

---

2

as are known to the interviewing USCIS officer or immigration judge, there is a significant possibility that alien could establish eligibility for asylum under INA § 208, withholding of removal under INA § 241(b)(3), or protection from removal under the Convention Against Torture.

5.3.   **Parole.** For purposes of this directive, "parole" is an administrative measure used by ICE to temporarily authorize the release from immigration detention of an inadmissible arriving alien found to have a credible fear of persecution or torture, without lawfully admitting the alien. Parole does not constitute a lawful admission or a determination of admissibility, *see* INA §§ 212(d)(5)(A), 101(a)(13)(B), and reasonable conditions may be imposed on the parole, *see* 8 C.F.R. § 212.5(d). By statute, parole may be used, in the discretion of ICE and under such conditions as ICE may prescribe, only for urgent humanitarian reasons or for significant public benefit. As interpreted by regulation, "urgent humanitarian reasons" and "significant public benefit" include the five categories set forth in 8 C.F.R. § 212.5(b) and listed in paragraph 4.3 of this directive, including the general category of "aliens whose continued detention is not in the public interest."

6.   **POLICY.**

6.1.   As soon as practicable following a credible fear determination by USCIS for an arriving alien detained by DRO, DRO shall provide the alien with the attached *Parole Advisal and Scheduling Notification*. This form informs the alien that he or she will be interviewed for potential parole from DRO custody and notifies the alien of the date of the scheduled interview and the deadline for submitting any documentary material supporting his or her eligibility for parole. The contents of the notification shall be explained to such aliens in a language they understand. In determining whether detained arriving aliens found to have a credible fear should be paroled from custody, DRO shall proceed in accordance with the terms of this directive.

6.2.   Each alien's eligibility for parole should be considered and analyzed on its own merits and based on the facts of the individual alien's case. However, when an arriving alien found to have a credible fear establishes to the satisfaction of DRO his or her identity and that he or she presents neither a flight risk nor danger to the community, DRO should, absent additional factors (as described in paragraph 8.3 of this directive), parole the alien on the basis that his or her continued detention is not in the public interest. DRO Field Offices shall uniformly document their parole decision-making processes using the attached *Record of Determination/Parole Determination Worksheet*.

6.3.   Consistent with the terms of this directive, DRO shall maintain national and local statistics on parole determinations and have a quality assurance process in place to monitor parole decision-making, as provided for in sections 7 and 8 of this directive.

6.4.  In conducting parole determinations for arriving aliens in custody after they are found to have a credible fear of persecution or torture, DRO shall follow the procedures set forth in section 8 of this directive.

6.5.  DRO shall provide every alien subject to this directive with written notification of the parole decision, including a brief explanation of the reasons for any decision to deny parole.  When DRO denies parole under this directive, it should also advise the alien that he or she may request redetermination of this decision based upon changed circumstances or additional evidence relevant to the alien's identity, security risk, or risk of absconding.  DRO shall ensure reasonable access to translation or interpreter services if notification is provided to the alien in a language other than his or her native language and the alien cannot communicate effectively in that language.

6.6.  Written notifications of parole decisions shall be provided to aliens subject to this directive and, if represented, their representative within seven days of the date an alien is initially interviewed for parole or the date the alien requests a parole redetermination, absent reasonable justification for delay in providing such notification.

6.7.  A decision to grant or deny parole shall be prepared by a DRO officer assigned such duties within his or her respective DRO Field Office.  The decision shall pass through at least one level of supervisory review, and concurrence must be finally approved by the Field Office Director (FOD), Deputy FOD (DFOD), or Assistant FOD (AFOD), where authorized by the FOD.

7.  **RESPONSIBILITIES.**

7.1.  The **DRO Director** is responsible for the overall management of the parole decision-making process for arriving aliens in DRO custody following determinations that they have a credible fear of persecution or torture.

7.2.  The **DRO Assistant Director for Operations** is responsible for:

   1) Ensuring considered, consistent DRO parole decision-making and recordkeeping nationwide in cases of arriving aliens found to have a credible fear;

   2) Overseeing monthly tracking of parole statistics by all DRO Field Offices for such cases; and

   3) Overseeing an effective national quality assurance program that monitors the Field Offices to ensure compliance with this directive.

7.3.  **DRO Field Office Directors** are responsible for:

   1) Implementing this policy and quality assurance processes;

4

2) Maintaining a log of parole adjudications for credible fear cases within their respective geographic areas of responsibility, including copies of the *Record of Determination/Parole Determination Worksheet*;

3) Providing monthly statistical reports on parole decisions for arriving aliens found to have a credible fear;

4) Making the final decision to grant or deny parole for arriving aliens found to have a credible fear within their respective areas of responsibility or, alternatively, delegating such responsibility to their DFODs or AFODs (in which case, FODs nevertheless retain overall responsibility for their office's compliance with this directive regardless of delegating signatory responsibility to DFODs or AFODs); and

5) Ensuring that DRO field personnel within their respective areas of responsibility who will be assigned to make parole determinations are familiar with this directive and corresponding legal authorities.

7.4. **DRO Deputy Field Office Directors** are responsible for reviewing, and forwarding for their respective FODs' approval, parole decisions prepared by their subordinates in the cases of arriving aliens found to have a credible fear of persecution or torture. Alternatively, DFODs delegated responsibility under paragraph 7.3 of this directive are responsible for discharging final decision-making authority over parole determinations in such cases within their respective areas of responsibility.

7.5. **Assistant Field Office Directors** are responsible for reviewing, and forwarding for their respective DFODs' or FODs' approval, parole decisions prepared by their subordinates in the cases of arriving aliens found to have a credible fear of persecution or torture.  Alternatively, AFODs delegated responsibility under paragraph 7.3 of this directive are responsible for discharging final decision-making authority over parole determinations in such cases within their respective areas of responsibility.

7.6. As applicable, **DRO field personnel** so assigned by their local chains-of-command are responsible for providing detained arriving aliens found to have a credible fear with the attached *Parole Advisal and Scheduling Notification* and for fully and accurately completing the attached *Record of Determination/Parole Determination Worksheet* in accordance with this directive and corresponding legal authorities.

8. **PROCEDURES.**

8.1. As soon as practicable following a finding that an arriving alien has a credible fear, the DRO Field Office with custody of the alien shall provide the attached *Parole Advisal and Scheduling Notification* to the alien and explain the contents of the notification to the alien in a language he or she understands, through an interpreter if

5

necessary. The Field Office will complete the relevant portions of the notification, indicating the time when the alien will receive an initial interview on his or her eligibility for parole and the date by which any documentary evidence the alien wishes considered should be provided, as well as instructions for how any such information should be provided.

8.2     Unless an additional reasonable period of time is necessary (e.g., due to operational exigencies or an alien's illness or request for additional time to obtain documentation), no later than seven days following a finding that an arriving alien has a credible fear, a DRO officer familiar with the requirements of this directive and corresponding legal authorities must conduct an interview with the alien to assess his or her eligibility for parole. Within that same period, the officer must complete the *Record of Determination/Parole Determination Worksheet* and submit it for supervisory review. If the officer concludes that parole should be denied, the officer should draft a letter to this effect for the FOD's, DFOD's, or AFOD's signature to be provided to the alien or the alien's representative and forward this letter for supervisory review along with the completed *Record of Determination/Parole Determination Worksheet*. The letter must include a brief explanation of the reasons for denying parole and notify the alien that he or she may request redetermination of parole based upon changed circumstances or additional evidence relevant to the alien's identity, security risk, or risk of absconding.

8.3.    An alien should be paroled under this directive if DRO determines, in accordance with paragraphs (1) through (4) below, that the alien's identity is sufficiently established, the alien poses neither a flight risk nor a danger to the community, and no additional factors weigh against release of the alien.

        1) Identity.

            a) Although many individuals who arrive in the United States fleeing persecution or torture may understandably lack valid identity documentation, asylum-related fraud is of genuine concern to ICE, and DRO must be satisfied that an alien is who he or she claims to be before releasing the alien from custody.

            b) When considering parole requests by an arriving alien found to have a credible fear, Field Office personnel must review all relevant documentation offered by the alien, as well as any other information available about the alien, to determine whether the alien can reasonably establish his or her identity.

            c) If an alien lacks valid government-issued documents that support his or her assertion of identity, Field Office personnel should ask whether the alien can obtain government-issued documentation of identity.

6

d) If the alien cannot reasonably provide valid government-issued evidence of identity (including because the alien reasonably does not wish to alert that government to his or her whereabouts), the alien can provide for consideration sworn affidavits from third parties. However, third-party affiants must include copies of valid, government issued photo-identification documents and fully establish their own identities and addresses.

e) If government-issued documentation of identity or third-party affidavits from reliable affiants are either not available or insufficient to establish the alien's identity on their own, Field Office personnel should explore whether the alien is otherwise able to establish his or her identity through credible statements such that there are no substantial reasons to doubt the alien's identity.

2) Flight Risk.

a) In order to be considered for release, an alien determined to have a credible fear of persecution or torture must present sufficient evidence demonstrating his or her likelihood of appearing when required.

b) Factors appropriate for consideration in determining whether an alien has made the required showing include, but are not limited to, community and family ties, employment history, manner of entry and length of residence in the United States, stability of residence in the United States, record of appearance for prior court hearings and compliance with past reporting requirements, prior immigration and criminal history, ability to post bond, property ownership, and possible relief or protection from removal available to the alien.

c) Field Office personnel shall consider whether setting a reasonable bond and/or entering the alien in an alternative-to-detention program would provide reasonable assurances that the alien will appear at all hearings and depart from the United States when required to do so.

d) Officers should exercise their discretion to determine what reasonable assurances, individually or in combination, are warranted on a case-by-case basis to mitigate flight risk. In any event, the alien must be able to provide an address where he or she will be residing and must timely advise DRO of any change of address.

   3) <u>Danger to the Community</u>.

     a) In order for an alien to be considered for parole, Field Office personnel must make a determination whether an alien found to have a credible fear poses a danger to the community or to U.S. national security.

     b) Information germane to the determination includes, but is not limited to, evidence of past criminal activity in the United States or abroad, of activity contrary to U.S. national security interests, of other activity giving rise to concerns of public safety or danger to the community (including due to serious mental illness), disciplinary infractions or incident reports, and any criminal or detention history that shows that the alien has harmed or would likely harm himself or herself or others.

     c) Any evidence of rehabilitation also should be weighed.

   4) <u>Additional Factors</u>.

     a) Because parole remains an inherently discretionary decision, in some cases there may be exceptional, overriding factors that should be considered in addition to the three factors discussed above. Such factors may include, but are not limited to, serious adverse foreign policy consequences that may result if the alien is released or overriding law enforcement interests.

     b) Field Office personnel may consider such additional factors during the parole decision-making process.

8.4.   Assigned DRO officers should, where appropriate, request that parole applicants provide any supplementary information that would aid the officers in reaching a decision. The *Record of Determination/Parole Determination Worksheet* should be annotated to document the request for supplementary information and any response from the detainee.

8.5.   After preparing and signing the *Record of Determination/Parole Determination Worksheet*, and in the case of a denial of parole, drafting a written response to the alien, the assigned DRO officer shall forward these materials and the parole request documentation to his or her first-line supervisor for review and concurrence.

8.6.   Upon his or her concurrence, the first-line supervisor shall sign the *Record of Determination/Parole Determination Worksheet* where indicated and forward it, along with any related documentation, to the FOD (or, where applicable, the DFOD or AFOD) for final approval.

8.7.   The FOD (or, where applicable, the DFOD or AFOD) shall review the parole documentation, consult with the preparing officer and supervisor as necessary, and

Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture

either grant or deny parole by signing the *Record of Determination/Parole Determination Worksheet* where indicated and, in the case of a denial, signing the written response to the alien.

8.8.   Following a final decision by the FOD to deny parole (or, where applicable, the DFOD or AFOD), the Field Office shall provide the written response to the alien or, if represented, to the alien's legal representative, indicating that parole was denied. If parole is granted, the Field Office shall provide the alien with a date-stamped I-94 Form bearing the following notation: **"Paroled under 8 C.F.R. § 212.5(b). Employment authorization not to be provided on this basis."**

8.9.   If an alien makes a written request for redetermination of an earlier decision denying parole, the Field Office may, in its discretion, reinterview the alien or consider the request based solely on documentary material already provided or otherwise of record.

8.10.   The supporting documents and a copy of the parole decision sent to the alien (if applicable), the completed *Record of Determination/Parole Determination Worksheet*, and any other documents related to the parole adjudication should be placed in the alien's A-file in a record of proceeding format. In addition, a copy of the *Record of Determination/Parole Determination Worksheet* shall be stored and maintained under the authority of the FOD for use in preparing monthly reports.

8.11.   On a monthly basis, FODs shall submit reports to the Assistant Director for Operations, or his or her designee, detailing the number of parole adjudications conducted under this directive within their respective areas of responsibility, the results of those adjudications, and the underlying basis of each Field Office decision whether to grant or deny parole. The Assistant Director for Operations, or his or her designee, in conjunction with appropriate DRO Headquarters components, will analyze this reporting and collect individual case information to review in more detail, as warranted. In particular, this analysis will rely on random sampling of all reported cases for in-depth review and will include particular emphasis on cases where parole was not granted because of the presence of additional factors, per paragraph 8.3(4) of this directive. Any significant or recurring deficiencies identified during this monthly analysis should be explained to the affected Field Office, which will take appropriate corrective action.

8.12.   At least once every six months, the Assistant Director for Operations, or his or her designee, shall prepare a thorough and objective quality assurance report, examining the rate at which paroled aliens abscond and the Field Offices' parole decision-making, including any noteworthy trends or corrective measures undertaken based upon the monthly quality assurance analysis required by paragraph 8.11 of this directive.

9

9.    **ATTACHMENTS.**

- *Parole Advisal and Scheduling Notification.*
- *Record of Determination/Parole Determination Worksheet.*

10.   **NO PRIVATE RIGHTS CREATED.**  This directive is an internal policy statement of ICE.  It is not intended to, shall not be construed to, may not be relied upon to, and does not create, any rights, privileges, or benefits, substantive or procedural, enforceable by any party against the United States, its departments, agencies, or other entities, its officers or employees, or any other person.

**Approved:**

John Morton
Assistant Secretary
U.S. Immigration and Customs Enforcement

10

Exhibit C-2

DEPARTMENT OF HOMELAND SECURITY
U.S. Immigration and Customs Enforcement

**PAROLE ADVISAL AND SCHEDULING NOTIFICATION**

| Alien's Claimed Name(s) (including AKAs) F[PII] M[PII] L[PII] | | |
|---|---|---|
| | A#(s) [PII] | |
| Detention Facility Name and Location  Theo Lacy Facility, Orange, California | | |
| Field Office  Los Angeles Field Office | | |

## <u>NOTICE TO THE ALIEN</u>

Because you have been determined to have a "credible fear" of persecution or torture, U.S. Immigration and Customs Enforcement (ICE) will consider whether to parole you from custody pending the resolution of your immigration proceedings. As an Asylum Officer may have already explained to you, ICE may grant you parole if you can establish to ICE's satisfaction: (1) your identity; (2) that you are likely to appear for all scheduled hearings and enforcement appointments (including for removal from the United States if you are ordered removed); and (3) that you do not present a security risk to the United States or a danger to the community.

### 1) Documents that *May* Prove Identity
- **Passport**
  - o Your *original*, valid passport OR
  - o Copy of your passport AND one or more of the other identity documents listed here
- **National ID Card**
  - o Your *original*, valid national ID card OR
  - o Copy of your national ID card AND one or more of the other identity documents listed here
- **Birth Certificate**
  - o Your *original* birth certificate AND one or more of the other identity documents listed here
  - o Copy of your birth certificate AND one or more of the other identity documents listed here
- **Affidavit (Letter) from a Person Who Can Confirm Your Identity**
  - o *Must* include your full name, your date of birth, your nine-digit A-number, and your country of origin
  - o *Must* be signed by a lawful permanent resident (green card holder) or citizen of the United States of America and include a copy of the person's passport or green card
  - o *Must* include the person's full name and her/his address and phone number(s)
  - o *Must* state how and for how long he or she has known you

### 2) Documents that *May* Prove that You are Not a Flight Risk
- **Affidavit (Letter) from a Person or Community Organization Who Will Support You**
  - o *Must* include your full name, your date of birth, your nine-digit A-number, and your country of origin
  - o *Must* include the person's/organization's full name and her/his address and phone number(s)
  - o *Must* be signed by a lawful permanent resident (green card holder) or citizen of the United States of America and include a copy of the person's passport or green card
  - o *Must* state that you will reside at the address listed and that the person/organization is willing to support you – for example, provide you housing and food – while you are in immigration proceedings
  - o *Must* include a copy of a utility or telephone bill, with the person's/organization's name and current address matching the address of residence included in the affidavit
  - o *Can* include details of any other ties that you have to where you will live (family, friends, etc.)
- **In addition to the Affidavit of Sponsorship, you may also submit**
  - o Letters from others in the community where you will live, showing their support. Note: *must* include the writer's name, address, contact information, and immigration status.
  - o Documentation of any legal, medical or social services you will receive upon release

ICE Form 71-012 (7/12)                                                                                     Page 1 of 2

3021353   D49                        Ex. C-2

**3) Documents that *May* Prove that Your are Not a Danger to the Community**
- Evidence of acquittal or dismissal of any criminal charges
- **Certificates** for rehabilitation classes or evidence of other positive accomplishments (completion of a degree or training, long-term employment, volunteer activities, activities with your place of worship)
- **Affidavit attesting to your rehabilitation**
  - o *Must* include your full name, your date of birth, your nine-digit A-number, and your country of origin
  - o *Must* be signed by a lawful permanent resident (green card holder) or citizen of the United States of America and include a copy of her/his passport or green card
  - o *Must* include the person's full name and her/his address and phone number(s)
  - o *Must* state how and for how long he or she has known you
  - o *Must* explain why she/he believes that you have been rehabilitated

If you would like ICE to consider any documents as part of its assessment whether to parole you from detention, you must provide those documents as soon as possible to allow ICE sufficient time to review the documents thoroughly before your interview. You may also request additional time to obtain documents for ICE's consideration, but should make that request as soon as possible.

ICE has scheduled you for an interview to assess whether you meet these qualifications. That interview will take place at the time and place indicated below.

Your parole interview has been scheduled with an ICE officer at the following date and time:

<u>11/08/2017</u>           @           <u>1400</u>
(Month, Day, Year)                    (Time – Indicate "a.m." or "p.m.")

Please provide any paperwork you would like considered (or any request for additional time to gather paperwork)
no later than

<u>11/07/2017</u>    , to:
(Month, Day, Year)

PII/LES                              501 The City Drive South, Orange, California 92868
Officer Name                         Address/City/State/Zip

PII/LES                              PII/LES
Office Telephone Number              Fax

*(ICE Detention and Removal Operations Field Office Personnel: Indicate Manner in Which Alien Should Provide Documentation)*

Following your interview, you will be notified in writing of ICE's decision, usually within 7 days. If your request is denied, you will receive a written explanation of the denial.

## PROOF OF SERVICE

Asylum Seeker's Signature: _PII_ _PII_ _PII_ _____

Date: _____

ICE Officer's Name: __PII/LES_____

Language Used: _____   Interpreter Number (if applicable): _____

# Exhibit C-3

# Record of Sworn Statement in Proceedings
## under Section 235(b)(1) of the Act

U.S. Department of Homeland Security

SIGMA Event: 16192652
File No: A█PII█
Event Number :SYS1810000382

Office: SAN YSIDRO, CA, POE

Statement by: L██PII██ M████ L██PII██ I████

In the case of: I██PII██ I. L██PII██ M████

Date of Birth: 07/19/1986                          Gender: (circle one) **Male** Female

At: SAN YSIDRO, CA (SYS)                          Date: October 9, 2017

Before: ██PII/LES██                    CBP OFFICER    ██PII/LES██
                          (Name and Title)

In the SPANISH          language. Interpreter CBPO J. CHAVEZ          Employed by CBP

I am an officer of the United States Department of Homeland Security. I am authorized to administer the immigration laws and to take sworn statements. I want to take your sworn statement regarding your application for admission to the United States. Before I take your statement, I also want to explain your rights, and the purpose and consequences of this interview.

You do not appear to be admissible or to have the required legal papers authorizing your admission to the United States. This may result in your being denied admission and immediately returned to your home country without a hearing. If a decision is made to refuse your admission into the United States, you may be immediately removed from this country, and if so, you may be barred from reentry for a period of 5 years or longer.

This may be your only opportunity to present information to me and the Department of Homeland Security to make a decision. It is very important that you tell me the truth. If you lie or give misinformation, you may be subject to criminal or civil penalties, or barred from receiving immigration benefits or relief now or in the future.

Except as I will explain to you, you are not entitled to a hearing or review.

U.S. law provides protection to certain persons who face persecution, harm or torture upon return to their home country. If you fear or have a concern about being removed from the United States or about being sent home, you should tell me so during this interview because you may not have another chance. You will have the opportunity to speak privately and confidentially to another officer about your fear or concern. That officer will determine if you should remain in the United States and not be removed because of that fear.

Until a decision is reached in your case, you will remain in the custody of the Department of Homeland Security.

Any statement you make may be used against you in this or any subsequent administrative proceeding.

Q. Do you understand what I've said to you?
A. Yes.

Q. Do you have any questions?
A. No.

Q. Are you willing to answer my questions at this time?
A. Yes

Q. Do you swear or affirm that all statements you are about to make are true and complete?
A. Yes.

Q: Are you under the influence of alcohol, drugs, medication or are you ill in a manner that would prevent you from answering my questions?
A: No.

Q: What is your true and correct name?
...(CONTINUED ON I-831)

Page 1 of **5**                                                         I-867A (08/01/07)

X ████

Ex. C-3



U.S. Department of Homeland Security    Continuation Page for Form  I-867A

| Alien's Name | File Number A PII | Date |
|---|---|---|
| L PII  M PII  L PII  I PII | SIGMA Event: 16192652<br>Event No: SYS1810000382 | October 9, 2017 |

A: ▓▓▓▓▓▓▓▓▓▓▓.

Q:  What is your date of birth?
A:  ▓▓▓▓▓▓.

Q:  Have you ever used any other name or date of birth?
A:  No.

Q:  What city, state and country were you born in?
A:  Tancitaro, Michoacan, Mexico.

Q:  What country are you a citizen of?
A:  Mexico.

Q:  What country is your mother a citizen of?
A:  Mexico.

Q:  What country is your father a citizen of?
A:  Mexico.

Q: Do your parents have legal status in the United States?
A: No.

Q: Where are your parents right now?
A:  My father is deceased, and my mother is in Michoacan.

Q: Are you married?
A: Yes.
Q: Do you have kids?
A: I have two children aged 5 and 7.

Q: Have you previously lived in or visited the United States? For how long?
A: No. I've lived in Canada.

Q: Why were you in Canada?
A: I did contract seasonal work.

Q: What kind of work do you do?
A: I work in the fields doing agricultural work.

Q: What is your purpose for entering the United States?
A:  I want protection from the people who threatened me.

Q: How specifically did they threaten you?
A: I was in Canada when I was told my 2 brothers had disappeared. I went back home to Michoacan and I was told to leave within 24 hours or the same thing would happen to me.

Q: what do you want from the United States?
A: I want refuge and a better life for my children.

Q: Why didn't you go back to Canada for protection?
A: I asked my boss for help before I left and he said I had to ask the government.
...(CONTINUED ON NEXT PAGE)

| Signature PII/LES | Title |
|---|---|
| ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | CBP OFFICER |

2 of 5 Pages

Form I-831 Continuation Page (Rev. 08/01/07)

Ex. C-3



U.S. Department of Homeland Security          Continuation Page for Form __I-867A__

| Alien's Name | File Number # PII | Date |
|---|---|---|
| L PII , L PII I PII | SIGMA Event: 16192652<br>Event No: SYS1810000382 | October 9, 2017 |

Q: On what day did you attempt to enter the United States?
A: Today. (October 09, 2017)

Q: How did you attempt to enter the United States?
A: I walked in.

Q: Did you present any document to the officer at the primary booth?
A: No.

Q: Are you traveling alone?
A: No. I'm with my wife and children.

Q: Where was your destination in the United States?
A: San Jose, CA.

Q: Who do you know in San Jose?
A: Andres. He's a family member. He told me to contact Freddy in San Jose. He's in charge of us.

Q: What's Andres' last name and how is he related to you?
A: I don't know his last name.

Q: He isn't family is he? Did you pay Andres to put you in contact with Freddy?
A: He's a friend. I've known him for three weeks. No I didn't pay him.

Q: Did Andres coach you on what to say to U.S. immigration officers?
A: No.

Q: Will you give me Freddy's phone number? And address?
A: I'll give you Andres's phone number. (Subject gave phone number 831-402-5798)

Q: Do you have any fear or concern of being returned to your home country? Why?
A: Yes. I was threatened by the people who took my brothers.

Q: Will you be harmed if you are returned to your home country or country of last residence?
A:  Yes.

Q: Have you or anyone in your family been directly threatened with harm?
A: Yes.

Q:  Have you ever been arrested in the United States or any other country?
A:  No.

Q:  Do you have any applications or petitions pending with USCIS?
A:  No.

Q:  Have you ever been removed or deported from the United States before?
A:  No.

Q:  Do you or have you ever had legal entry documents to enter or reside in the United States?
...(CONTINUED ON NEXT PAGE)

| Signature | Title |
|---|---|
| PII/LES | CBP OFFICER |

                                                    3  of  5  Pages

Form I-831 Continuation Page (Rev. 08/01/07)

Ex. C-3

U.S. Department of Homeland Security          Continuation Page for Form __I-867A__

| Alien's Name L PII PII , L PII , I PII | File Number PII<br>SIGMA Event: 16192652<br>Event No: SYS1810000382 | Date<br>October 9, 2017 |
|---|---|---|

A:  No.

Q: Do you know that you need a valid entry document to enter the United States?
A: Yes.


Q:  Do you understand you don't appear to be admissible to the United States and if your request for asylum is denied, you will be removed from the United States and barred from receiving immigration benefits or relief for life.  Do you understand?
A: Yes.

Q: Do you have any questions?
A: No.



| PII/LES<br><br><br> | Title<br><br>CBP OFFICER |
|---|---|

_____4____ of ____5___ Pages

Form I-831 Continuation Page (Rev. 08/01/07)

# Exhibit C-4

*Office of Enforcement and Removal Operations*

**U.S. Department of Homeland Security**
501 The City Drive South
Orange, CA 92868

NOV 1 5 2017



**U.S. Immigration
and Customs
Enforcement**

███████████████

c/o Theo Lacy Facility
501 The City Drive South
Orange, CA 92868

In Reference to: A ██████████████

Dear Mr. L███████

This letter is to inform you that U.S. Immigration and Customs Enforcement (ICE) has decided not to parole you from detention at this time. Under ICE policy, arriving aliens determined by an Immigration Judge to have a credible fear of persecution or torture are initially considered for parole. While the decision whether to grant parole is discretionary, ICE policy is generally to grant parole to aliens determined to have a credible fear if they establish their identity and that they pose neither a flight risk nor danger to the community.

As part of its determination whether to parole such aliens, ICE conducts an initial interview and reviews their immigration files and any supplemental documentation provided. If ICE receives a written request for redetermination of a prior decision not to grant parole, ICE may elect to re-interview the alien or make a new decision based on documentary information, including any new information provided.

Based on a review of all available information, ICE has determined that parole is not appropriate in your case at this time. This determination is based on the following reason(s):

☒ You have not established your identity to the satisfaction of ICE.

☒ You have not established to ICE's satisfaction that you will appear as required for immigration hearings, enforcement appointments, or other matters, if you are paroled from detention.

☐ You have not established to ICE's satisfaction you would not pose a danger to the community or U.S. security, if you are paroled from detention.

www.ice.gov

Ex. C-4

Parole request – Denial                                                Page 2
L‖PII‖ -M‖PII‖ L‖PII‖ ‖PII‖ A‖PII‖

☐ Additional exceptional, overriding factors (e.g., law enforcement interests or potential foreign
policy consequences) in your case militate against parole, as follows:

☐ ICE previously provided you with a written decision declining to grant parole, and you have
failed to provide additional documentation or to demonstrate any significant changed
circumstances which would alter ICE's previous determination.

You may request a redetermination of this decision in writing, based upon changed circumstances in
your case or additional documentation you would like ICE to consider.  Such changed circumstances
or documentation should relate to the reason(s) ICE is not paroling you from custody at this time.
For example, if you have not established your identity to ICE's satisfaction, you may wish to
consider providing government-issued documents such as passports, birth certificates, or identity
cards. Identity can also be established through written statements prepared by individuals whom you
know in the United States and whose identity we can verify.

If you request redetermination of this decision, please direct your written request to the address
above, include a copy of this letter and any other prior ICE written decision(s) not to grant you
parole, and clearly explain what changed circumstances or additional documents you would like
considered.  Requests for redetermination which are not clearly explained will be returned without
action.

Sincerely,

Andre Quinones
Assistant Field Office Director

Ex. C-4

Exhibit C-5

SCANNED INTO PLANET

                        IMMIGRATION COURT
                     27991 BUENA VISTA BLVD
                     LOS FRESNOS, TX  78566

In the Matter of:                    Case No:  A PII ████████

C PII S████ , E██ E PII ████
                                     IN: CREDIBLE FEAR REVIEW PROCEEDINGS
─────────────────────────
          Respondent


                 **ORDER OF THE IMMIGRATION JUDGE**

On Oct 19, 2017 at 08:30 A.M. a review of the DHS Credible Fear Determination
was held in the matter noted above.  Testimony [ ] was  [ ] was not
taken regarding the background of the Applicant and the Applicant's fear
of returning to his/her country of origin or last habitual residence.

After consideration of the evidence, the Court finds that the Applicant
[ ] has  [ ] has not established a significant possibility that he/she
would be persecuted on the basis of his/her race, religion, nationality,
membership in a particular social group, or because of his/her political
opinion.

The Court further finds that the Applicant [ ] has [ ] has not
established a significant possibility that he/she would be intentionally
subjected to serious physical or mental harm inflicted by, or at the
instigation of, or with the consent or acquiescence of, a government official
or other person acting in an official capacity.


ORDER:  It is hereby ordered that the decision of the immigration officer is:

     [ ]  Affirmed, and the case is returned to the DHS for removal of the
          alien.

     [ ]  Vacated.

     This is a final order.  There is no appeal available.

**DONE and ORDERED this 19th day of October, 2017.**


                                    ─────────────────────────
                                    JOHN G. CREWS
                                    Immigration Judge

─────────────────────────────────────────────────────────────────
                        CERTIFICATE OF SERVICE
THIS DOCUMENT WAS SERVED BY:  MAIL (M)      PERSONAL SERVICE (P)
TO:  [ ] ALIEN  [ ] ALIEN c/o Custodial Officer  [ ] ALIEN's ATT/REP  [ ] DHS
DATE: 10·19·17    BY:  COURT STAFF
     Attachments:  [ ] EOIR-33 [ ] EOIR-28  [ ] Legal Services List  [ ] Other
─────────────────────────────────────────────────────────────────
                                                              U2

Ex. C-5

Exhibit C-6

DEPARTMENT OF HOMELAND SECURITY
U.S. Immigration and Customs Enforcement

## PAROLE ADVISAL AND SCHEDULING NOTIFICATION

| | |
|---|---|
| Alien's Claimed Name(s) (including AKAs) C[PII]-S[PII], E[PII] E[PII] | |
| A#(s) [PII] | |
| Detention Facility Name and Location James A. Musick Facility, Irvine, California | |
| Field Office Los Angeles, California | |

### NOTICE TO THE ALIEN

Because you have been determined to have a "credible fear" of persecution or torture, U.S. Immigration and Customs Enforcement (ICE) will consider whether to parole you from custody pending the resolution of your immigration proceedings. As an Asylum Officer may have already explained to you, ICE may grant you parole if you can establish to ICE's satisfaction: (1) your identity; (2) that you are likely to appear for all scheduled hearings and enforcement appointments (including for removal from the United States if you are ordered removed); and (3) that you do not present a security risk to the United States or a danger to the community.

### 1) Documents that *May* Prove Identity
- **Passport**
  - o Your *original*, valid passport *OR*
  - o Copy of your passport AND one or more of the other identity documents listed here
- **National ID Card**
  - o Your *original*, valid national ID card *OR*
  - o Copy of your national ID card AND one or more of the other identity documents listed here
- **Birth Certificate**
  - o Your *original* birth certificate AND one or more of the other identity documents listed here
  - o Copy of your birth certificate AND one or more of the other identity documents listed here
- **Affidavit (Letter) from a Person Who Can Confirm Your Identity**
  - o *Must* include your full name, your date of birth, your nine-digit A-number, and your country of origin
  - o *Must* be signed by a lawful permanent resident (green card holder) or citizen of the United States of America and include a copy of the person's passport or green card
  - o *Must* include the person's full name and her/his address and phone number(s)
  - o *Must* state how and for how long he or she has known you

### 2) Documents that *May* Prove that You are Not a Flight Risk
- **Affidavit (Letter) from a Person or Community Organization Who Will Support You**
  - o *Must* include your full name, your date of birth, your nine-digit A-number, and your country of origin
  - o *Must* include the person's/organization's full name and her/his address and phone number(s)
  - o *Must* be signed by a lawful permanent resident (green card holder) or citizen of the United States of America and include a copy of the person's passport or green card
  - o *Must* state that you will reside at the address listed and that the person/organization is willing to support you – for example, provide you housing and food – while you are in immigration proceedings
  - o *Must* include a copy of a utility or telephone bill, with the person's/organization's name and current address matching the address of residence included in the affidavit
  - o *Can* include details of any other ties that you have to where you will live (family, friends, etc.)
- **In addition to the Affidavit of Sponsorship, you may also submit**
  - o Letters from others in the community where you will live, showing their support. Note: *must* include the writer's name, address, contact information, and immigration status.
  - o Documentation of any legal, medical or social services you will receive upon release

Ex. C-6

**3) Documents that *May* Prove that Your are Not a Danger to the Community**
- **Evidence of acquittal or dismissal of any criminal charges**
- **Certificates** for rehabilitation classes or evidence of other positive accomplishments (completion of a degree or training, long-term employment, volunteer activities, activities with your place of worship)
- **Affidavit attesting to your rehabilitation**
  - *Must* include your full name, your date of birth, your nine-digit A-number, and your country of origin
  - *Must* be signed by a lawful permanent resident (green card holder) or citizen of the United States of America and include a copy of her/his passport or green card
  - *Must* include the person's full name and her/his address and phone number(s)
  - *Must* state how and for how long he or she has known you
  - *Must* explain why she/he believes that you have been rehabilitated

If you would like ICE to consider any documents as part of its assessment whether to parole you from detention, you must provide those documents as soon as possible to allow ICE sufficient time to review the documents thoroughly before your interview. You may also request additional time to obtain documents for ICE's consideration, but should make that request as soon as possible.

ICE has scheduled you for an interview to assess whether you meet these qualifications. That interview will take place at the time and place indicated below.

Your parole interview has been scheduled with an ICE officer at the following date and time:

<u>02/08/2018</u>   @   <u>11am</u>
(Month, Day, Year)      (Time – Indicate "a.m." or "p.m.")

Please provide any paperwork you would like considered (or any request for additional time to gather paperwork) no later than

<u>02/07/2018</u> , to:
(Month, Day, Year)

LES/PII ▮▮▮▮▮▮▮▮
Officer Name

PII/LES ▮▮▮▮▮▮▮▮
Office Telephone Number

13502 Musick Road, Irvine, CA 92618
Address/City/State/Zip

PII/LES ▮▮▮▮▮▮▮▮
Fax

*(ICE Detention and Removal Operations Field Office Personnel: Indicate Manner in Which Alien Should Provide Documentation)*

Following your interview, you will be notified in writing of ICE's decision, usually within 7 days. If your request is denied, you will receive a written explanation of the denial.

---

## PROOF OF SERVICE

Asylum Seeker's Signature: <u>NONE NEEDED , ATTY SUBMITTED DOCS.</u>

Date: <u>02/08/2018</u>

ICE Officer's Name: PII/LES ▮▮▮▮▮▮▮▮

Language Used: <u>English</u>    Interpreter Number (if applicable): _____

ICE Form 71-012 (7/12)                          Page 2 of 2

Exhibit C-7

*Office of Enforcement and Removal Operations*
*Los Angeles Field Office*

**U.S. Department of Homeland Security**
501 The City Drive South
Orange, CA  92868



U.S. Immigration
and Customs
Enforcement

FEB 0 8 2018

C

c/o James A. Musick Facility
13502 Musick Road
Irvine, CA 92618

In Reference to: A PII

Dear C PII -S PII

This letter is to inform you that U.S. Immigration and Customs Enforcement (ICE) has decided not to parole you from detention at this time.  Under ICE policy, arriving aliens determined by an Immigration Judge to have a credible fear of persecution or torture are initially considered for parole.  While the decision whether to grant parole is discretionary, ICE policy is generally to grant parole to aliens determined to have a credible fear if they establish their identity and that they pose neither a flight risk nor danger to the community.

As part of its determination whether to parole such aliens, ICE conducts an initial interview and reviews their immigration files and any supplemental documentation provided.  If ICE receives a written request for redetermination of a prior decision not to grant parole, ICE may elect to re-interview the alien or make a new decision based on documentary information, including any new information provided.

Based on a review of all available information, ICE has determined that parole is not appropriate in your case at this time.  This determination is based on the following reason(s):

☐ You have not established your identity to the satisfaction of ICE.

☑ You have not established to ICE's satisfaction that you will appear as required for immigration hearings, enforcement appointments, or other matters, if you are paroled from detention.

☐ You have not established to ICE's satisfaction you would not pose a danger to the community or U.S. security, if you are paroled from detention.

www.ice.gov

Ex. C-7

Parole request – Denial                                                                      Page 2
C:⬛-S⬛, E⬛ E⬛ A⬛

☐ Additional exceptional, overriding factors (e.g., law enforcement interests or potential foreign
   policy consequences) in your case militate against parole, as follows:

☐ ICE previously provided you with a written decision declining to grant parole, and you have
   failed to provide additional documentation or to demonstrate any significant changed
   circumstances which would alter ICE's previous determination.

You may request a redetermination of this decision in writing, based upon changed circumstances in
your case or additional documentation you would like ICE to consider. Such changed circumstances
or documentation should relate to the reason(s) ICE is not paroling you from custody at this time.
For example, if you have not established your identity to ICE's satisfaction, you may wish to
consider providing government-issued documents such as passports, birth certificates, or identity
cards. Identity can also be established through written statements prepared by individuals whom you
know in the United States and whose identity we can verify.

If you request redetermination of this decision, please direct your written request to the address
above, include a copy of this letter and any other prior ICE written decision(s) not to grant you
parole, and clearly explain what changed circumstances or additional documents you would like
considered. Requests for redetermination which are not clearly explained will be returned without
action.

                              Sincerely,



                              Andre Quinones
                              Assistant Field Office Director