## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANSLY DAMUS, *et al.*, on behalf of themselves and others similarly situated, | ) ) ) |
| *Plaintiffs,* | ) ) |
| *v.* | )   Civil Action No. 1:18-cv-00578 (JEB) ) |
| KIRSTJEN NIELSEN, Secretary of the Department of Homeland Security, in her official capacity, *et al.*, | ) ) ) ) |
| *Defendants.* | ) ) ) |

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Judy Rabinovitz
Michael K.T. Tan
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION, IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2618

Stephen B. Kang
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION, IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
(415) 343-0783

Dennis B. Auerbach (D.C. Bar No. 418982)
Philip J. Levitz (D.C. Bar No. 1018430)
Julia H. Brower (D.C. Bar No. 1048925)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth St., N.W.
Washington, D.C. 20001–4956
(202) 662-6000

*Additional counsel listed at end of memorandum*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 3

I.  The Statistical and Other Evidence Establishes That ICE Has a *De Facto* Policy
    of Denying Parole in Virtually All Cases at the Five Field Offices, in Violation of
    the Parole Directive and the INA. ............................................................................... 3

    A.  ICE Is Not Conducting Individualized Parole Reviews ......................................... 3

    B.  Defendants' Declarations Should Be Accorded Little If Any Weight .................. 5

    C.  Defendants' Declarations Merely Confirm That ICE Is Not Conducting
        Bona Fide Case-by-Case Parole Reviews ............................................................. 7

    D.  Defendants Are Also Violating the Procedural Requirements of the Parole
        Directive ............................................................................................................... 11

    E.  Plaintiffs' Evidence Rebuts Any Presumption of Regularity ............................. 14

    F.  Defendants' Conduct Can Only Plausibly Be Explained by a Deterrence
        Motive, but It Is Unlawful Regardless of Motive ................................................ 14

II. ICE's Policy of Denying Parole in Almost All Cases Instead of Conducting True
    Case-by-Case Reviews Violates the Due Process Clause. ................................... 16

III. Plaintiffs Are Suffering Irreparable Harm from Their Arbitrary Detentions, and
    the Government Has No Interest in Detaining Individuals Who Are Neither Flight
    Risks Nor Dangers to the Community. ...................................................................... 17

IV. This Court Has Jurisdiction to Enjoin ICE's Arbitrary Detention of Plaintiffs and
    Other Asylum Seekers. ............................................................................................... 18

V.  Defendants' Additional Arguments for Dismissal Are Meritless. ........................ 21

CONCLUSION ..................................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdi v. Duke,*
   280 F. Supp. 3d 373 (W.D.N.Y. 2017)............................................................................20, 21

*United States ex rel. Accardi v. Shaughnessy,*
   347 U.S. 260 (1954)........................................................................................................21

*Adamson v. City & Cty. San Francisco,*
   2018 WL 1456761 (N.D. Cal. Mar. 23, 2018)..................................................................14

*Albino v. United States,*
   78 F. Supp. 3d 148 (D.D.C. 2015).....................................................................................14

*Alli v. Decker,*
   650 F.3d 1007 (3d Cir. 2011)............................................................................................21

*Bellarno Int'l Ltd. v. Food & Drug Admin.,*
   678 F. Supp. 410 (E.D.N.Y. 1988) .....................................................................................4

*Catholic Social Servs., Inc. v. INS,*
   232 F.3d 1139 (9th Cir. 2000) (en banc) ...........................................................................19

*Citizens to Preserve Overton Park, Inc. v. Volpe,*
   401 U.S. 402 (1971)..........................................................................................................14

*Gonzales v. Dep't of Homeland Sec.,*
   508 F.3d 1227 (9th Cir. 2007) ..........................................................................................19

*Huang v. I.N.S.,*
   436 F.3d 89 (2d Cir. 2006).................................................................................................11

*Huynh v. Harasz,*
   2016 WL 2757219 (N.D. Cal. May 12, 2016) .....................................................................4

*Imagenetix, Inc. v. GNC Holdings, Inc.,*
   2013 WL 12100701 (S.D. Cal. Mar. 29, 2013) ...................................................................7

*Jean v. Nelson,*
   472 U.S. 846 (1985)..........................................................................................................19

*Jennings v. Rodriguez,*
   138 S. Ct. 830 (2018)............................................................................................20, 21, 22

*Kleindienst v. Mandel*,
    408 U.S. 753 (1972)...........................................................................................................16

*Landon v. Plasencia*,
    459 U.S. 21 (1982)............................................................................................................16

*Latif v. Obama*,
    677 F.3d 1175 (D.C. Cir. 2012) .......................................................................................14

*Lefrancois v. Mabus*,
    910 F. Supp. 2d 12 (D.D.C. 2012) ...................................................................................14

*Mamouzian v. Ashcroft*,
    390 F.3d 1129 (9th Cir. 2004) .........................................................................................11

*McLouth Steel Prod. Corp. v. Thomas*,
    838 F.2d 1317 (D.C. Cir. 1988) .........................................................................................4

*R.I.L-R. v. Johnson*,
    80 F.3d 164 (D.D.C. 2015) ...................................................................................15, 20, 23

*Ramirez v. ICE*,
    2018 WL 1882861 (D.D.C. Apr. 18, 2018) ..............................................................6, 7, 14

*Ramos v. Ashcroft*,
    2004 WL 161520 (N.D. Ill. Jan. 16, 2004) .....................................................................19

*Reid v. Donelan*,
    297 F.R.D. 185 (D. Mass. 2014) ......................................................................................21

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) .........................................................................................21

*Rosales-Garcia v. Holland*,
    322 F.3d 386 (6th Cir. 2003) (en banc) ...........................................................................16

*Sea Shepherd Conservation Soc'y v. Internal Revenue Serv.*,
    89 F. Supp. 3d 81, 90-91 (D.D.C. 2015)............................................................................7

*Shaughnessy v. United States ex rel. Mezei*,
    345 U.S. 206 (1953)....................................................................................................16, 17

*Sun-Mate Corp. v. Koolatron Corp.*,
    2010 WL 11552980 (C.D. Cal. Nov. 16, 2010)..................................................................7

*Sussman v. U.S. Marshals Serv.*,
    494 F.3d 1106 (D.C. Cir. 2007) .......................................................................................14

*Venetian Casino Resort, L.L.C. v. EEOC*,
  530 F.3d 925 (D.C. Cir. 2008) ................................................................23

*Zadvydas v. Davis*,
  533 U.S. 678 (2001) ..............................................................................16

**Statutes**

5 U.S.C. § 702 ................................................................................................22

5 U.S.C. § 706(2) ...........................................................................................22

8 U.S.C. § 1182(d)(5) ...........................................................................3, 19, 21

8 U.S.C. § 1225(b)(1)(B)(ii) ..........................................................................17

8 U.S.C. § 1252(f)(1) ..............................................................................*passim*

**Other Authorities**

8 C.F.R. § 208.30(f) .......................................................................................17

Fed. R. Civ. P. 12(b)(6) ..................................................................................21

Fed. R. Evid. 801(d)(2) ....................................................................................5

## INTRODUCTION

Defendants acknowledge that the Parole Directive, the Immigration and Nationality Act ("INA"), and INA regulations preclude a blanket policy of denying parole to asylum seekers and instead require U.S. Immigration and Customs Enforcement ("ICE") to make case-by-case parole decisions based on individualized factors like flight risk and danger to the community. Despite Defendants' protestations, the hard statistical evidence establishes that *no* bona fide individualized parole reviews are being conducted at ICE's Detroit, El Paso, Los Angeles, Newark, and Philadelphia Field Offices (the "ICE Field Offices"). Those offices rather have implemented a *de facto* policy of parole denial.

Most starkly, during the eight months from February to September 2017, ICE's El Paso Field Office denied *349 out of 349* parole applications, ICE's Philadelphia Field Office denied *43 out of 43* parole applications, and ICE's Newark Field Office denied *10 out of 10* parole applications. The other two Field Offices granted parole in just a tiny fraction of cases. This overwhelming statistical evidence, which Defendants make no effort to refute or explain, establishes that parole is being denied in almost every case. The statistical evidence further shows that ICE's current practice constitutes a marked departure from just a few years ago, when more than 90% of asylum seekers were *granted* parole, even though there has been no significant change in the types of asylum seekers traveling to the United States. In short, the evidence demonstrates that similarly situated individuals who routinely were *granted* parole in prior years are being *denied* parole under the current regime—belying Defendants' assertion that nothing has changed and that ICE is following the Parole Directive, just as it always did.

Defendants' declarations are conclusory hearsay that rely on records purportedly "reviewed" by the declarants that have been withheld both from Plaintiffs and from the Court,

despite Plaintiffs' repeated requests.  Moreover, Defendants have refused to make their declarants available for short depositions, making it impossible for Plaintiffs to test the declarants' bald assertions.

Even if considered, Defendants' declarations do not undermine Plaintiffs' claims. Indeed, the declarations *confirm* that the ICE Field Offices are no longer conducting individualized parole reviews; instead the Field Offices are denying parole on blanket grounds applicable to all or almost all asylum seekers.  For example, one of Defendants' declarants states that Plaintiff H.A.Y.'s parole request was denied merely because H.A.Y. was a "recent entrant" into the United States.  But asylum seekers detained at the U.S. border are, *by definition*, "recent entrants."  Being a "recent entrant" is not an individualized characteristic.  Defendants' declarants also say that certain Plaintiffs were denied parole because they lack "substantial ties" to the United States—another characteristic of virtually all arriving asylum seekers.  And one of Defendants' declarants says that a named Plaintiff was denied parole because he did not provide sufficient evidence of his relationship with his sponsor in the United States—even when that sponsor was *his mother*, who submitted a sworn affidavit attesting that the Plaintiff is her son. Denying parole on such spurious grounds underscores that ICE is not conducting meaningful individualized parole reviews.

While Defendants dispute that ICE's current practice of denying parole in virtually all cases at the five Field Offices is motivated by deterrence, the current Administration has repeatedly emphasized its deterrence goals.  There can be no other plausible explanation for ICE's dramatic shift from *granting* parole in more than 90% of cases to *denying* parole in nearly every case.  Moreover, regardless of ICE's motive, its demonstrable failure to provide individualized parole reviews violates the Parole Directive, the INA, and the Due Process

Clause, and should be enjoined.  Plaintiffs are thus likely to succeed on the merits of their claims.

Defendants do not seriously dispute that the other requirements for entry of a preliminary

injunction are satisfied.

Contrary to Defendants' assertion, the Court has jurisdiction to enjoin ICE's arbitrary

detentions.  The statute on which Defendants rely—8 U.S.C. § 1252(f)(1)—provides only that a

district court lacks jurisdiction to enjoin the operation of specific enumerated sections of the

INA.  The parole statute at issue here (8 U.S.C. § 1182(d)(5)) is not among them.  Moreover,

Plaintiffs do not seek to "enjoin the operation" of the parole statute.  Rather, they seek to compel

Defendants to *comply* with that statute, and with the regulations and Parole Directive issued

pursuant to it, by providing *bona fide* case-by-case parole reviews.

Accordingly, Plaintiffs' motion for preliminary injunction should be granted and

Defendants' motion to dismiss should be denied.

## ARGUMENT

I.    **The Statistical and Other Evidence Establishes That ICE Has a *De Facto* Policy of Denying Parole in Virtually All Cases at the Five Field Offices, in Violation of the Parole Directive and the INA.**

A.    *ICE Is Not Conducting Individualized Parole Reviews.*

Defendants' assertion that ICE conducts individualized parole reviews and does not have

a *de facto* policy of denying parole in almost every case defies reality.  The statistics referenced

above and in Plaintiffs' opening brief are not disputed and speak for themselves.  *See generally*

Pl. Op. Br. 8, 20 (ECF No. 17-1); Pl. Ex. 8, Daher Decl. (ECF No. 17-10).  Defendants do not

suggest that asylum seekers detained in 2017 suddenly became more apt to flee or more apt to

commit crimes than those detained earlier, and they make no other effort to explain the numbers.

Statistical evidence that parole grant rates dropped from more than 90% in 2011-13 to zero or

near zero in the same ICE Field Offices in 2017, is alone sufficient to establish that the Field

Offices are not conducting the case-by-case parole reviews based on flight risk and danger to the community that the Parole Directive, the INA, and the INA regulations demand. *See, e.g.*, *McLouth Steel Prod. Corp. v. Thomas*, 838 F.2d 1317, 1321 (D.C. Cir. 1988) (evidence that agency departed from general rule only four times out of 100 cases was sufficient to show general policy and absence of *bona fide* individualized review); *Huynh v. Harasz*, 2016 WL 2757219, at *18-19 (N.D. Cal. May 12, 2016) (denial of 215 out of 215 applications was evidence that agency had *de facto* denial policy and did not conduct *bona fide* individualized application reviews); *Bellarno Int'l Ltd. v. Food & Drug Admin.*, 678 F. Supp. 410, 415 (E.D.N.Y. 1988) ("two . . . instances of deviation" out of 386 decisions "can hardly form the basis for a finding of agency discretion").

Defendants' contention that Plaintiffs' statistics were "cherry-picked" from just five ICE Field Offices ignores that it is those five Field Offices, and only those five, whose practices are at issue in this case. Moreover, the statistics include *every* parole request recorded by ICE at the five Field Offices during the first eight months of the Trump Administration (*i.e.*, February through September 2017). *See* Pl. Ex. 8, Daher Decl. ¶¶ 5-11 (ECF No. 17-10). They constitute a robust set of more than 800 cases and include all of the data available for the Trump era at the time this case was filed. *See id.* Defendants do not contend that anything has materially changed since September 2017.

And Plaintiffs do not rely on statistics alone. Those statistics corroborate, and are corroborated by, the testimonial evidence. That includes the declaration of Joan Del Valle, an immigration lawyer who reports being told by multiple ICE officials that "there is no more parole," Pl. Ex. 10, Del Valle Decl. ¶ 8 (ECF No. 17-12), and the declaration of Jessica Miles, an immigration lawyer who reports being told by an immigration officer that ICE is "not granting

4

parole."  Pl. Ex. 4, Miles Decl. ¶ 6 (ECF No. 17-6); *see also* Pl. Ex. 10, Del Valle Decl. ¶ 8 (ECF

No. 17-12) (Del Valle told by ICE officer that she "should not even bother to submit a parole

request because ICE had to deny all parole requests").[1]  It also includes undisputed testimony

that similarly situated individuals who were *granted* parole in prior years are now being *denied*

parole.  *See* Pl. Op. Br. 8 (citing 9 declarations to such effect from legal services practitioners);

*accord* Pl. Ex. 23, Behr Decl. ¶¶ 11-12; Pl. Ex. 24, Suppl. Bellis Decl. ¶¶ 3-4; Pl. Ex. 25, Suppl.

Stambaugh Decl. ¶ 11.  Indeed, immigration attorney Elizabeth Ford attests that her roughly two

dozen arriving asylum seeker clients in 2017 "presented *much stronger cases* for release on

parole than [her] previous clients" who were granted parole, but that ICE nonetheless denied the

parole requests of each and every one of them.  Pl. Ex. 3, Ford Decl. ¶¶ 5-8 (ECF No. 17-5)

(emphasis added); *see also* Pl. Ex. 26, Suppl. Spector Decl. ¶ 17 ("Prior to 2017, my parole

applicant clients who had similar, *or even significantly weaker*, sponsor relationships were

routinely granted parole." (emphasis added)).

> B.    *Defendants' Declarations Should Be Accorded Little If Any Weight.*

Defendants' reliance on their declarations to deny the existence of a *de facto* policy and

to assert that ICE is conducting individualized parole reviews is baseless.  As an initial matter,

the declarations should be given little if any weight.  Four of the five declarants do not even

purport to have been involved in making parole decisions for Plaintiffs, and base their testimony

instead on a "review" of what ICE "records" supposedly show.  *See* Def. Ex. F, Ritchey Decl.

¶¶ 7-8 (ECF No. 23-6) ("My review of the Parole Decision Worksheet completed in [Castro's

and Callol's] case[s] indicates . . . ."); Def. Ex. G, Perez Decl. ¶ 9 (ECF No. 23-7) ("I have

---

[1] The statements by the ICE officials are non-hearsay admissions of a party opponent.  *See* Fed.
R. Evid. 801(d)(2).

reviewed the parole review records of N.J.J.R." and  "[m]y review of those records shows . . ."); Def. Ex. D, Witte Decl. ¶ 6 (ECF No. 23-4) ("I have access to and have reviewed the records relating to parole requests submitted by aliens L.H.A. . . . . A.M.M. . . . . and H.A.Y."); Def. Ex. E, Adducci Decl. ¶ 8 (ECF No. 23-5) ("I . . . have reviewed the parole review records relating to [Damus]. My review of the records shows . . .").  That is, of course, rank hearsay.

Additionally, Defendants' declarants do not attach the "records" on which their hearsay testimony is purportedly based.  In particular, each Defendant declaration refers to "Parole Determination Worksheets," which purportedly reflect how Plaintiffs' parole requests were evaluated.  *See, e.g.*, Def. Ex. F, Ritchey Decl. ¶¶ 4, 7-8 (ECF No. 23-6) ("My review of the Parole Decision Worksheet completed in [Castro's and Callol's] case[s] indicates . . . ."); *see also* Def. Ex. C, Quinones Decl. ¶¶ 3, 10, 16 (ECF No. 23-3); Def. Ex. D, Witte Decl. ¶ 4 (ECF No. 23-4); Def. Ex. E, Adducci Decl. ¶¶ 6, 13 (ECF No. 23-5); Def. Ex. G, Perez Decl. ¶¶ 6, 20 (ECF No. 23-7).  Yet none of those Parole Determination Worksheets is actually attached to the declarations.  Indeed, not only have the declarants failed to attach the Worksheets; they also refused to provide them (and other records purportedly reviewed) to Plaintiffs, despite repeated requests.  *See* Pl. Ex. 27, Levitz Decl. ¶ 3 & Ex. 1.  Defendants likewise refused to produce their declarants for brief depositions so that Plaintiffs could test their bald, hearsay assertions.  *See id*.

The Court should, at a minimum, substantially discount the declarations in these circumstances.  *Ramirez v. ICE*, 2018 WL 1882861 (D.D.C. Apr. 18, 2018), a recent case preliminarily enjoining another ICE policy, is on point.  The *Ramirez* court did not credit declarations from ICE officials purporting to show individualized review of the plaintiffs' cases, where those officials were "not . . . decisionmaker[s] who played any role in the determination," and instead explained the decisions based on "a purported review" of documents that were not

provided to the Court.  *Id.* at *14-16 & n.7.  The same result should obtain here.  *See also Sea Shepherd Conservation Soc'y v. Internal Revenue Serv.*, 89 F. Supp. 3d 81, 90-91 (D.D.C. 2015) (rejecting government declarants' "[c]onclusory assertions" that they had complied with the law); *Imagenetix, Inc. v. GNC Holdings, Inc.*, 2013 WL 12100701, at *3 (S.D. Cal. Mar. 29, 2013) (discounting preliminary injunction declarations that "do not attach or cite to any evidence supporting [their] conclusory statements"); *Sun-Mate Corp. v. Koolatron Corp.*, 2010 WL 11552980, at *7 (C.D. Cal. Nov. 16, 2010) (discounting "conclusory self-serving" preliminary injunction declarations and noting that failure to provide supporting evidence to which the party would have "easy access" "suggests to the Court that [supporting] evidence does not exist").[2]

   C.   *Defendants' Declarations Merely Confirm That ICE Is Not Conducting Bona Fide Case-by-Case Parole Reviews.*

      Even if considered, Defendants' declarations do not support Defendants' assertion that ICE is conducting individualized parole reviews.  In fact, they show just the opposite.  For instance, the El Paso Field Office's only justification for denying Plaintiff H.A.Y.'s parole request was that "H.A.Y. was a recent entrant and thus presented a flight risk."  Def. Ex. D, Witte Decl. ¶ 23 (ECF No. 23-4).  But *every* arriving asylum seeker is, by definition, a "recent

---

[2] While the Los Angeles Field Office declarant at least appears to have been involved in the parole reviews in question, his declaration still fails to attach the Parole Determination Worksheets purportedly documenting ICE's parole reviews, and Defendants refused to provide those Worksheets or to make the declarant available for deposition, notwithstanding Plaintiffs' requests.  Levitz Decl. ¶ 3 & Ex. 1.  Accordingly, like the other Defendant declarations, the Los Angeles Field Office declaration should be afforded little if any weight.  That is especially so because the declarant's assertions are directly contradicted by Plaintiffs' witnesses.  For example, attorney Madelaine Behr directly contradicts the Los Angeles office's assertion  that she submitted affidavits of support for named Plaintiff E.E.C.S. that concerned other individuals. In fact, Ms. Behr did no such thing.  *See* Def. Ex. C, Quinones Decl. ¶ 15 (ECF No. 23-3); Pl. Ex. 23, Behr Decl. ¶ 10.  And, unlike Defendants, Ms. Behr backs that testimony by reference to documentary evidence submitted to the Court.  *See* Pl. Ex. 23, Behr Decl. ¶ 10 (citing Pl. Ex. 17, E.E.C.S. Decl., Ex. B (ECF No. 17-19)).

entrant."  Denying parole on that basis demonstrates the absence of any genuine individualized review.

Defendants' declarations further state that asylum seekers have been denied parole based on lack of "substantial ties" to the United States.  *See id.* ¶ 19 ("A.M.M. presented a flight risk because he had not established sufficient ties to the United States."); Def. Ex. E, Adducci Decl. ¶ 13 (ECF No. 23-5) (same for Damus); Def. Ex. F, Ritchey Decl. ¶ 7 (ECF No. 23-6) (same for Montes Castro); *id.* ¶ 8 (same for Asensio Callol).  But lack of "substantial ties" to the United States, too, is characteristic of virtually every asylum seeker who has been detained at the border and imprisoned.  Refusing parole on that ground again demonstrates that ICE is not conducting *bona fide* case-by-case parole reviews.

Notably, *none* of Defendants' declarations attempts to explain the overwhelming statistical evidence regarding the dramatic reversal in parole practice at the five Field Offices or to address the extensive testimony presented by Plaintiffs that similarly situated individuals who were granted parole in prior years are now having their parole applications denied.  *See supra* Part I.A.  This unrebutted evidence further shows that the Field Offices are not conducting true case-by-case parole reviews but are instead denying parole on pretextual grounds.[3]

That flight risk is being used as a pretext is clear in the case of Plaintiff Ansly Damus, an ethics teacher who was persecuted in Haiti and sought asylum.  ICE purportedly denied Mr.

---

[3] While Defendants refer to "exceptional overriding factors" like "serious adverse foreign policy consequences" that could result from an asylum seeker's release as a potential basis for denying parole, PI Opp. 5, none of their declarants suggest that such "exceptional overriding factors" exist here.  Absent such exceptional circumstances, arriving asylum seekers who establish their identities and show that they are neither flight risks nor dangers to the community "should" be granted parole under the Parole Directive.  Parole Directive §§ 6.2, 8.3.  As the undisputed evidence shows, the vast majority of arriving asylum seekers *were* granted parole in prior years pursuant to the Directive, whereas similarly situated individuals are now being imprisoned based on purported "flight risk."

Damus's two parole requests based on a "lack of substantial ties to the community rendering him a flight risk."  Def. Ex. E, Adducci Decl. ¶¶ 13-14 (ECF No. 23-5).  He has been unlawfully imprisoned for more than 14 months as a result.  Pl. Ex. 7, Damus Decl. ¶ 9 (ECF No. 17-9). But Mr. Damus established ties to the United States in the only manner reasonably possible for an arriving asylum seeker: by presenting evidence of a U.S. sponsor.  Mr. Damus stated that he would live with a long-time friend in the United States—a lawful permanent U.S. resident who agreed to be financially responsible for Mr. Damus during the pendency of his asylum case.  *Id.* ¶ 13 & Ex. B.  The sponsor corroborated Mr. Damus's statements, which Defendants in no way dispute.  *See id.*; *see generally* Def. Ex. E, Adducci Decl. (ECF No. 23-5).  Mr. Damus submitted similar undisputed evidence from additional sponsors for his second parole request—a U.S. citizen couple—along with letters of support from local community leaders.  *See* Pl. Ex. 7, Damus Decl. ¶ 16 & Ex. C (ECF No. 17-9).

As Mr. Damus's attorney attests, before 2017, ICE routinely granted parole to individuals with "comparable, *and indeed substantially lesser*, ties to the community in the United States" than Mr. Damus's.  Pl. Ex. 28, Suppl. Ford Dec. ¶ 4 (emphasis added).  It is hardly surprising, then, that when Mr. Damus's attorney learned that the second parole request she submitted for Mr. Damus was denied, ICE did not attribute the denial to purportedly insufficient community ties; it merely noted that Mr. Damus remained "in active [removal] proceedings"—which is, of course, true for every arriving asylum seeker.  *Id.* ¶ 3.

ICE's use of flight risk as a pretext is also clear from ICE's denial of the parole requests of Plaintiff Abelardo Asensio Callol, a refugee from persecution by Cuba's communist regime. Mr. Callol was purportedly deemed a flight risk and denied parole because he had not shown an "ongoing relationship" with his sponsor.  Def. Ex. F, Ritchey Decl. ¶ 8 (ECF No. 23-6).  But Mr.

Callol's was sponsored by *his own mother*.  *See* Pl. Ex. 13, Callol Decl. ¶¶ 14-15 (ECF No. 17-15); Pl. Ex. 25, Suppl. Stambaugh Decl. ¶¶ 7-9 & Ex. A.  And, if there was any doubt, Mr. Callol's application attached, among other things, a sworn affidavit from his mother attesting that "Abelardo Asensio Callol is my son," and an accompanying letter from his stepfather stating that Mr. Callol is his "stepson," "with whom I have an affectionate family relationship."  Pl. Ex. 25, Suppl. Stambaugh Decl. ¶ 9 & Ex. A.

ICE also asserted that Mr. Callol had not shown "sufficient ties to the United States or stable residence."  Def. Ex. F, Ritchey Decl. ¶ 8 (ECF No. 23-6).  But Mr. Callol's mother and stepfather, both U.S. lawful permanent residents, provided exhaustive evidence that Mr. Callol would live with them in Miami and that they would financially support him during his asylum case.  Pl. Ex. 13, Callol Decl. ¶¶ 14-15 & Ex. A (ECF No. 17-15); Pl. Ex. 25, Suppl. Stambaugh Decl. ¶¶ 7-9 & Ex. A.  It is unclear how an arriving asylum seeker detained at the border could show greater ties in the United States or a more stable available residence.

Defendants' denial of Plaintiff N.J.J.R.'s parole request was similarly pretextual.  N.J.J.R. came to the United States fleeing violence from armed groups that seek to eliminate opposition to Venezuela's oppressive regime.  Pl. Ex. 12, N.J.J.R. Decl. ¶ 3 (ECF No. 17-14).  He was purportedly denied parole because he "failed to provide proof of the familial relationship with his alleged niece, Yohana Carillo," and "as a result . . . failed to establish that he is not a flight risk." Def. Ex. G, Perez Decl. ¶ 20 (ECF No. 23-7).  But N.J.J.R.'s parole application attached a sworn affidavit from Ms. Carillo, a lawful permanent U.S. resident, attesting that she is N.J.J.R.'s niece and would support her uncle financially.  Pl. Ex. 12, N.J.J.R. Decl. ¶ 11 & Ex. A (ECF No. 17-14); Pl. Ex. 29, Guinan Decl. ¶ 8.  She also provided a letter from her employer; her permanent

resident card; her driver's license; her pay stubs; and a proof of address.  *See id.*  As with Mr.

Callol, it is difficult to imagine what more proof could have been provided.[4]

In sum, Defendants' own evidence establishes that ICE is not conducting genuine

individualized parole reviews at the five Field Offices but is instead using purported "flight risk"

as a pretext to deny parole to almost everyone.

> D.   *Defendants Are Also Violating the Procedural Requirements of the Parole*
>      *Directive.*

Defendants' declarations make clear not only that the ICE Field Offices no longer

undertake individualized review of parole requests; they also corroborate Plaintiffs' evidence

that ICE is systematically failing to follow procedural requirements of the Parole Directive at the

five Field Offices.  *See* Pl. Op. Br. 10-11 (citing 18 declarations as support).

---

[4] ICE's purported bases for denying the other Plaintiffs' parole applications are likewise pretextual. *Compare, e.g.*, Def. Ex. D, Witte Decl. ¶ 19 (ECF No. 20-4) (A.M.M. purportedly denied parole because "he had not established sufficient ties to the United States"), *with* Pl. Ex. 26, Suppl. Spector Decl. ¶¶ 12-17 (describing extensive evidence of A.M.M.'s relationship with three children in U.S., including U.S. citizen daughter), *and* Pl. Ex. 16, A.M.M. Decl. ¶¶ 23-26, 28 & Ex. B (ECF No. 17-18) (similar); Def. Ex. C, Quinones Decl. ¶ 10-11 (ECF No. 20-3) (L.I.L.M. purportedly denied parole because he did not document his identity, there was a "discrepancy" in how he described his relationship with his sponsor, and he previously worked in Canada), *with* Pl. Ex. 30, Suppl. L.I.L.M. Decl. ¶¶ 3-5, 8 (describing extensive identity documentation, explaining purported "discrepancy," and noting that previous work in Canada was on lawful temporary visa); Def. Ex. C, Quinones Decl. ¶ 13-16 (ECF No. 20-3) (E.E.C.S. purportedly denied parole because he was previously removed, used counterfeit documents in reentering the U.S., and submitted affidavits supporting parole "pertaining to other individuals"), *with* Pl. Ex. 31, Suppl. E.E.C.S. Decl. ¶¶ 3-6 (explaining prior removal and use of counterfeit passport because of fear of being removed to El Salvador again), *Mamouzian v. Ashcroft*, 390 F.3d 1129, 1138 (9th Cir. 2004) ("When a petitioner who fears deportation to his country of origin uses false documentation . . . in order to gain entry to a safe haven, that deception does not detract from but supports his claim of fear of persecution."), *Huang v. I.N.S.*, 436 F.3d 89, 100 (2d Cir. 2006) (similar), *and* Pl. Ex. 23, Behr Decl. ¶¶ 9-10 (E.E.C.S.'s attorney did *not* submit affidavits pertaining to other individuals); Def. Ex. D, Witte Decl. ¶ 15 (ECF No. 20-4) (L.H.A. purportedly denied parole because he failed to provide sufficient documentation to demonstrate changed circumstances from prior denials), *with* Pl. Ex. 26, Suppl. Spector Decl. ¶¶ 4, 7-8 (describing ample documentation and explaining that L.H.A.'s prior denials were from applications prepared by *a fraudulent attorney*), *and* Pl. Ex. 19, L.H.A. Decl. ¶ 14-15 & Ex. B (ECF No. 17-21) (similar).

11

*First*, Defendants' declarations confirm that none of the Field Offices consistently comply with the Parole Directive requirements related to the parole interview.  The Los Angeles Field Office admits that "parole interviews are not conducted in every case"—notwithstanding the Parole Directive's requirement that ICE "must" conduct a parole interview, normally "no later than seven days" following a credible fear finding.  Parole Directive ¶ 8.2 (ECF No. 23-1); Def. Ex. C, Quinones Decl. ¶ 4 (ECF No. 23-3).  The Detroit and Newark Field Offices admit to not scheduling parole interviews for Mr. Damus and N.J.J.R. within seven days of a positive credible fear finding, and the Philadelphia and El Paso Field Offices do not contest the declarations of immigration attorneys attesting that those Field Offices, too, frequently do not conduct parole interviews within seven days.  *See* Def. Ex. E, Adducci Decl. ¶ 11 (ECF No. 23-5); Def. Ex G, Ritchey Decl. ¶¶ 16-19 (ECF No. 23-7); Pl. Ex. 1, Stambaugh Decl. ¶ 7 (ECF No. 17-3); Pl. Ex. 2, Spector Decl. ¶ 6 (ECF No. 17-4).  Moreover, while the Philadelphia Field Office disputes Mr. Callol's and Mr. Castro's attestations that they were not given parole interviews, the only documentation on which the Field Office relies are parole advisals listing an interview date "TBD."  Def. Ex. F, Ritchey Decl. ¶¶ 7-8 & Ex. 2, 4 (ECF No. 23-6).

*Second*, Defendants' declarations do not contravene Plaintiffs' showing that the ICE Field Offices systemically ignore the Parole Directive requirements relating to parole denials. The Los Angeles, Newark, Philadelphia, and El Paso Field Offices do not dispute declarations of immigration attorneys attesting that these offices frequently do not provide parole denials within seven days of the parole interview, as required by the Directive.  Parole Directive ¶ 8.2; *see* Pl. Ex. 9, Bellis Decl. ¶ 15 (ECF No. 17-11); Pl. Ex. 10, Del Valle Decl. ¶ 11 (ECF No. 17-12); Pl. Ex. 6, Major Decl. ¶ 8 (ECF No. 17-8); Pl. Ex. 1, Stambaugh Decl. ¶ 7 (ECF No. 17-3); Pl. Ex. 25, Suppl. Stambaugh Decl. ¶ 6; Pl. Ex. 2, Spector Decl. ¶ 7 (ECF No. 17-4).  Although Mr.

Quinones from the Los Angeles Field Office asserts that he signed a parole denial letter to L.I.L.M., Def. Ex. C, Quinones Decl. ¶ 12 (ECF No. 23-3), L.I.L.M. and his attorney, Madelaine Behr, attest that they never received one, Pl. Ex. 30, Suppl. L.I.L.M. Decl. ¶ 7; Pl. Ex. 23, Behr Decl. ¶ 4.  Similarly, although Ms. Adducci from the Detroit Field Office asserts that Mr. Damus was served with a denial letter, both Mr. Damus and his attorney attest that Mr. Damus never received one.  Pl. Ex. 7, Damus Decl. ¶ 15 (ECF No. 17-9); Pl. Ex. 28, Suppl. Ford Decl. ¶¶ 2-3.

*Finally*, many of the Field Offices fail to respond to the declarations of immigration attorneys and Plaintiffs that those Field Offices frequently do not notify arriving asylum seekers of their right to seek parole, or notify them that their parole requests were denied, in a language the parole applicant understands, as required by the Parole Directive.  *See* Parole Directive ¶¶ 6.1, 6.5, 8.1 (ECF No. 23-1); Pl. Ex. 9, Bellis Decl. ¶¶ 13, 16 (ECF No. 17-11) (Los Angeles Field Office parole denials in English); Pl. Ex. 10, Del Valle Decl. ¶¶ 9, 12 (ECF No. 17-12) (same); Pl. Ex. 20, L.I.L.M. Decl. ¶ 9 (ECF No. 17-22) (parole denial in English); Pl. Ex. 17, E.E.C.S. Decl. ¶ 10 (ECF No. 17-19) (parole denial in English); Pl. Ex. 3, Ford Decl. ¶ 14 (ECF No. 17-5) (Detroit Field Office parole denials in English); Pl. Ex. 5, Knowles Decl. ¶ 11 (ECF No. 17-7) (same); Pl. Ex. 6, Major Decl. ¶ 9 (ECF No. 17-8) (Newark Field Office parole denials in English); Pl. Ex. 14, N.J.J.R. ¶ 13 (ECF No. 17-14) (parole denial in English); Pl. Ex. 1, Stambaugh Decl. ¶ 8 (ECF No. 17-3) (Philadelphia Field Office parole denials in English); Pl. Ex. 14, Castro Decl. ¶ 14 (ECF No. 17-16) (parole denial in English); *see also* Pl. Ex. 23, Behr Decl. ¶ 13 (Los Angeles parole denials in English).

These procedural violations of the Parole Directive further demonstrate that Plaintiffs are likely to succeed on the merits of their claims.

E.       *Plaintiffs' Evidence Rebuts Any Presumption of Regularity.*

While Defendants contend that ICE's conduct is protected by a "presumption of regularity," Plaintiffs have amply rebutted any such presumption.  *See, e.g.*, *Ramirez*, 2018 WL 1882861, at *14-16 (legal-service lawyer declarations that ICE did not conduct individualized review of alternatives to detention for former unaccompanied alien children sufficiently rebutted presumption of regularity); *Adamson v. City & Cty. San Francisco*, 2018 WL 1456761, at *3 (N.D. Cal. Mar. 23, 2018) (statistical evidence can rebut presumption of regularity); *Lefrancois v. Mabus*, 910 F. Supp. 2d 12, 20 (D.D.C. 2012) (agency's failure to follow a number of its procedural requirements can support inference of irregularity); *Albino v. United States*, 78 F. Supp. 3d 148, 166-67 (D.D.C. 2015) (same); *see also Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971) (basic presumption of regularity "[does] not shield [agency] action from a thorough, probing, in-depth review" under the APA).

The cases cited by Defendants regarding the presumption of regularity are wholly inapposite.  The plaintiffs in those cases made only bald assertions that the challenged agency action was irregular.  *See Latif v. Obama*, 677 F.3d 1175, 1180 (D.C. Cir. 2012); *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1110, 1117 (D.C. Cir. 2007).  Here, by contrast, Plaintiffs have presented extensive statistical and testimonial evidence showing that the five ICE Field Offices are not conducting *bona fide* case-by-case parole reviews and are violating multiple procedural requirements of the Parole Directive.  That is more than sufficient to rebut any presumption of regularity.  *See, e.g.*, *Ramirez*, 2018 WL 1882861, at *14-16.

F.       *Defendants' Conduct Can Only Plausibly Be Explained by a Deterrence Motive, but It Is Unlawful Regardless of Motive.*

As noted, the statistical and testimonial evidence establishes that there has been a radical about-face in parole practice at the five ICE Field Offices, and that similarly situated asylum

14

seekers who were granted parole in prior years are now being denied parole.  The Trump

Administration has not been shy about announcing its deterrence goals, *see* Pl. Op. Br. 11-13,

and there is simply no reasonable explanation other than deterrence for the seismic shift from

prior practice at the five Field Offices.

Although Defendants' declarants make the conclusory statement that they are not aware

of deterrence being used as a "factor" in deciding any *particular* parole request, Def. Ex. C,

Quinones Decl. ¶ 5 (ECF No. 23-3); Def. Ex. D, Witte Decl. ¶ 3 (ECF No. 23-4); Def. Ex. E,

Adducci Decl. ¶ 6 (ECF No. 23-5); Def. Ex. F, Ritchey Decl. ¶ 5 (ECF No. 23-6); Def. Ex. G,

Perez Decl. ¶ 8 (ECF No. 23-7), that is not the issue.  Plaintiffs do not contend that ICE is

considering deterrence among other factors in its parole determinations at the five Field Offices.

Rather, ICE is systematically denying parole in order to deter others from seeking refuge in the

United States.  Compl. ¶ 46 (ECF No. 3).  As this Court held in *R.I.L-R.*, that is unlawful.  *R.I.L-

R. v. Johnson*, 80 F.3d 164, 188-89 (D.D.C. 2015).

In any event, Plaintiffs are entitled to a preliminary injunction, regardless of whether

Defendants have been motivated by deterrence.  As Defendants themselves concede, both the

Parole Directive and the INA mandate *bona fide* individualized parole reviews based on flight

risk and danger to the community.  *See* Def. Ex. C, Quinones Decl. ¶¶ 2-3 (ECF No. 23-3); Def.

Ex. D, Witte Decl. ¶¶ 3-4 (ECF No. 23-4); Def. Ex. G, Perez Decl. ¶¶ 3-4 (ECF No. 23-7).  ICE

is manifestly not providing such individualized reviews at the five ICE Field Offices and also is

violating many of the Parole Directive's procedural requirements.  *See supra* Parts I.A, I.D.  That

unlawful conduct should be enjoined, irrespective of motive.

II.   **ICE's Policy of Denying Parole in Almost All Cases Instead of Conducting True Case-by-Case Reviews Violates the Due Process Clause.**

The Due Process Clause also precludes ICE's *de facto* policy of imprisoning Plaintiffs and those similarly situated without conducting *bona fide* case-by-case parole reviews. *See* Pl. Op. Br. 39-41.  Indeed, Defendants do not dispute that non-individualized blanket parole determinations are inconsistent with Due Process.

While Defendants assert that Plaintiffs lack Due Process rights as "arriving" noncitizens, they have no answer to the multiple federal court decisions holding that noncitizens arriving at the border *do* have Due Process rights against arbitrary detention.  *See id.* at 36-37 (citing, *inter alia*, *Rosales-Garcia v. Holland*, 322 F.3d 386, 408-410 (6th Cir. 2003) (en banc), and *Ngo v. INS*, 192 F.3d 390, 396 (3d Cir. 1999)).  Defendants also do not explain how their position squares with *Zadvydas v. Davis*, 533 U.S. 678 (2001), where seven of nine Justices agreed that even noncitizens who are ordered removed and have no right to be in the United States have the right to freedom from unlawful confinement.  *See* Pl. Op. Br. 37 (discussing *Zadvydas*, 644 U.S. at 690, 721); *see also Rosales-Garcia*, 322 F.3d at 410 ("If excludable aliens were not protected by even the substantive component of constitutional due process . . . we do not see why the United States government could not torture or summarily execute them." (citation omitted)).

Instead, Defendants cite cases stating that certain "arriving" noncitizens may not have constitutional rights "regarding [their] application[s]" for admission.  *See Landon v. Plasencia*, 459 U.S. 21, 32 (1982); *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972) (addressing power "*over the admission* of aliens" (emphasis added) (internal quotation marks omitted)); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 216 (1953) ("*right to enter* . . . depends on the congressional will" (emphasis added)).  But it is the power to *detain*, not the power to *admit*, that is at issue here.

In any event, Plaintiffs stand in a fundamentally different position from the petitioner in *Mezei*, who was formally ordered excluded from the United States based on an individualized determination of national security risk. *See* 345 U.S. at 208-09. Here, an immigration officer found each Plaintiff to have a *bona fide* claim that she or he should be granted asylum, and each Plaintiff has been in the United States pursuing that claim in immigration court proceedings. *See* 8 U.S.C. § 1225(b)(1)(B)(ii); 8 C.F.R. § 208.30(f). Defendants have not claimed that any of the Plaintiffs present national security concerns and none of them were "denied entry." *Mezei*, 345 U.S. at 212. Just the opposite: they have all been screened into the United States for adjudication of their legitimate claims for relief from persecution.

Accordingly, Plaintiffs are likely to succeed on the merits of their claim that the Due Process Clause entitles them to individualized parole determinations.[5]

## III.    Plaintiffs Are Suffering Irreparable Harm from Their Arbitrary Detentions, and the Government Has No Interest in Detaining Individuals Who Are Neither Flight Risks Nor Dangers to the Community.

Defendants do not dispute that detention of asylum seekers imposes irreparable harm. *See* Pl. Op. Br. 41-42. Instead, Defendants repeat their baseless assertion that they are conducting *bona fide* case-by-case parole reviews. But that goes only to likelihood of success on the merits, not irreparable harm. Detention of asylum seekers *always* imposes irreparable harm, irrespective of the basis for detention, and all members of the Plaintiff class are by definition detained. *See id.*; Pl. Ex. 21 (ECF No. 17-23), Keller Decl. ¶¶ 12-23 (ECF No. 17-23).

---

[5] Although Plaintiffs are seeking preliminary injunctive relief only on their Due Process claim that the Government must provide an individualized parole review, Plaintiffs' complaint also includes a claim that Due Process requires a custody hearing before an immigration judge as a neutral decision-maker when detention becomes unreasonably prolonged. *See, e.g.*, Compl. ¶¶ 26-27, 79-80. Thus, the Court should not dismiss Defendants Sessions and McHenry, who oversee the immigration courts.

Defendants assert that Plaintiffs can seek parole redeterminations.  But Defendants do not dispute that parole redeterminations, like initial parole determinations, are virtually always denied (as they were for the named Plaintiffs), and redeterminations are subject to the same unlawful policy that has resulted in virtually all initial parole requests being denied.  *See, e.g.*, Def. Ex. D, Witte Decl. ¶¶ 11, 13, 15 (ECF No. 23-4); Def. Ex. E, Adducci Decl. ¶ 14 (ECF No. 23-5); Pl. Ex. 1, Stambaugh Decl. ¶¶ 11-12 (ECF No. 17-1); Pl. Ex. 4, Miles Decl. ¶¶ 9-10 (ECF No. 17-6); Pl. Ex. 5, Knowles Decl. ¶ 12 (ECF No. 17-7); *see also* Pl. Ex. 25, Suppl. Stambaugh Decl. ¶¶ 6, 10 (redetermination denial "included the original boilerplate parole denial letter" and "noting more").  Futile reconsideration attempts hardly vitiate the harm of ongoing detention.

Defendants' public-interest argument fares no better.  Though there is surely a public interest in enforcing the law, and that interest may extend to detention where necessary to avoid "'risk of [an] alien's either absconding or engaging in criminal activity,'" Def. PI Opp. 24 (quoting *Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018)), there is no public interest in detaining asylum seekers who are *not* a flight risk or a danger to the community.  Indeed, the Parole Directive itself states that detention of asylum seekers who are neither a flight risk nor dangerous "is *not* in the public interest."  Parole Directive ¶ 6.2 (emphasis added).  And only those asylum seekers who present no flight risk or danger would be eligible for release based on the injunction Plaintiffs seek.

## IV. This Court Has Jurisdiction to Enjoin ICE's Arbitrary Detention of Plaintiffs and Other Asylum Seekers.

Defendants invoke 8 U.S.C. § 1252(f)(1) to evade judicial review of ICE's illegal parole policy, arguing that the statute divests district courts of jurisdiction to enjoin it.  Their position lacks merit for several independent reasons.

*First*, section 1252(f)(1), by its terms, provides only that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of *part IV of this subchapter*."  *Id.* (emphasis added).  "Part IV of this subchapter" includes only 8 U.S.C. §§ 1221-1231.  This case, however, involves the parole statute: 8 U.S.C. § 1182(d)(5), which is not within "part IV" and thus is not one of the INA provisions section 1252(f)(1) covers.  Defendants' reliance on section 1252(f)(1) fails on this simple ground.  *See, e.g.*, *Catholic Social Servs., Inc. v. INS*, 232 F.3d 1139, 1150 (9th Cir. 2000) (en banc) (Section 1252(f)(1) inapplicable to INA provisions outside "part IV"); *Ramos v. Ashcroft*, 2004 WL 161520, at *6 (N.D. Ill. Jan. 16, 2004) (similar).

Defendants suggest that Plaintiffs' challenge really involves section 1225 of the INA and not the parole statute, but that is not the case.  It is section 1182(d)(5) that requires ICE to provide individualized parole reviews, and it is section 1182's mandate that Plaintiffs seek to enforce.  *See, e.g.*, *Jean v. Nelson*, 472 U.S. 846, 857 (1985) (predecessor version of parole statute with equivalent operative language to current version required immigration authorities to "make individualized determinations of parole").  Section 1252(f)(1)'s limitation on jurisdiction thus is inapplicable.  *Cf. Gonzales v. Dep't of Homeland Sec.*, 508 F.3d 1227, 1233 (9th Cir. 2007) ("Section 1252(f)(1) does not prohibit the current injunction because . . . it directly implicates the adjustment of status provision which falls under part V of subchapter II, notwithstanding that a reinstatement proceeding [pursuant to part IV] may be a collateral consequence of an unsuccessful adjustment application.").

*Second*, Plaintiffs do not seek to "enjoin or restrain the operation" of *any* provision of the INA.  Plaintiffs seek instead to mandate compliance with the parole statute and its implementing regulations, which require individualized parole reviews based on flight risk and danger to the

community.  As this Court explained in *R.I.L-R.*, "'[w]here . . . a petitioner seeks to enjoin conduct that *allegedly* is not even authorized by the statute, the court is not enjoining the operation of [the statute], and § 1252(f)(1) therefore is not implicated.'"  80 F. Supp. 3d at 184 (quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1120 (9th Cir. 2010) (emphasis added)).  As in *R.I.L-R.*, "a class-wide injunction in this case would not obstruct the 'operation of' [the statute] but merely enjoin conduct that allegedly violates that provision."  *Id.*; *accord Abdi v. Duke*, 280 F. Supp. 3d 373, 409 (W.D.N.Y. 2017) (section 1252(f)(1) inapplicable "[w]here . . . the moving party . . . seeks to enjoin violations of the statutory and regulatory framework").

*Third*, section 1252(f)(1) contains an express carve out: it does not restrict a district court's jurisdiction to enter an appropriate injunction against the "application of [the detention and removal provisions of the INA] to an individual alien against whom proceedings under such part have been initiated."  8 U.S.C. § 1252(f)(1).  Plaintiffs and the class they seek to represent are all individuals against whom removal proceedings have been initiated.  Compl. ¶ 10.  For this further reason, section 1252(f)(1) does not preclude the Court from entering injunctive relief.

*Fourth*, Defendants wrongly cite *Jennings* to assert that Section 1252(f)(1) "strips the Court of jurisdiction over *all* class claims seeking to enjoin" the operation of the INA §§ 1221-1231, including all constitutional claims. Def. PI Opp. 10 (citing *Jennings*, 138 S. Ct. at 851) (emphasis added).  *Jennings* does not so hold.  In fact, the *Jennings* court reached no conclusion at all regarding section 1252(f)(1).  It simply remanded to the Ninth Circuit to consider that provision.  *See Jennings*, 138 S. Ct. at 851 (directing the Ninth Circuit to "consider on remand whether it may issue classwide injunctive relief based on respondents' constitutional claims" against prolonged immigration detention without a bond hearing).  Moreover, the question raised by the *Jennings* court involved only whether section 1252(f)(1) permits the issuance of classwide

20

injunctive relief concerning plaintiffs' *constitutional* claim. *See d*. Nowhere did the court

suggest that section 1252(f)(1) might bear on claims to enjoin statutory or regulatory violations.[6]

*Finally*, even assuming arguendo that section 1252(f)(1) barred the entry of an injunction,

the statute by its terms does not limit the Court's authority to provide declaratory relief. *See Alli*

*v. Decker*, 650 F.3d 1007, 1013 (3d Cir. 2011) ("[I]t is apparent that the jurisdictional limitations

in [Section] 1252(f)(1) do not encompass declaratory relief."); *Rodriguez*, 591 F.3d at 1119

(same); *Reid v. Donelan*, 297 F.R.D. 185, 193 (D. Mass. 2014) (same). Accordingly, at a bare

minimum this case should be permitted to proceed as a declaratory-judgment action.

## V.     **Defendants' Additional Arguments for Dismissal Are Meritless.**

Because Plaintiffs have met their burden to support the entry of a preliminary injunction

regarding the existence of a *de facto* policy and the absence of individualized parole reviews,

they also, *a fortiori*, have met the lesser burden of defeating a motion to dismiss. Defendants'

other miscellaneous arguments for dismissal under Fed. R. Civ. P. 12(b)(6) also fail.

1.     <u>Parole Directive Purportedly Not Binding</u>. Defendants cannot plausibly rely on

the Parole Directive's boilerplate disclaimer that the Directive "is not intended to . . . create[] any

rights, privileges, or benefits." Def. PI Opp. 11 (citing Parole Directive ¶ 10). The court in *Abdi*

rejected that precise argument. *See* Pl. Op. Br. 21 & n.19 (ECF No. 17-1). As the *Abdi* court

explained, agencies may not "avoid application of *Accardi* by simply disclaiming any binding

effect" in its directives, because "[t]o find otherwise would render the teachings of *Accardi* and

its progeny meaningless." 280 F. Supp. 3d at 389 (citing *United States ex rel. Accardi v.*

*Shaughnessy*, 347 U.S. 260, 268 (1954)). That is especially true here, given that the Government

---

[6] In any event, *Jennings* involved sections 1225 and 1226 of the INA. This case, by contrast, involves section 1182(d)(5): the parole statute. As explained above, section 1182(d)(5) is not among the INA provisions to which section 1252(f)(1) applies.

expressly represented to the Supreme Court in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), that

the Parole Directive constrained agency action.  *See* Pl. Op. Br. 19.  Moreover, even assuming

*arguendo* that the Parole Directive's boilerplate disclaimer could upend Plaintiffs' claim based

on violation of the Parole Directive, it obviously could *not* defeat Plaintiffs' separate claims

based on Defendants' violations of the INA, the INA regulations, and the Due Process Clause.

2.   <u>Purported Absence of Private Right of Action</u>.  Relatedly, the fact that the Parole

Directive does not itself create a private right of action, Def. PI Opp. 11, is irrelevant.  The

Administrative Procedure Act ("APA") empowers Plaintiffs to challenge agency action that is

arbitrary, capricious, and contrary to law.  *See* 5 U.S.C. §§ 702, 706(2).  Defendants' violations

of the Parole Directive are "contrary to law" and thus actionable under the APA (as are their

violations of the INA).

3.   <u>Burden of Proof</u>.  Contrary to Defendants' assertion, Plaintiffs do not allege that

ICE has the burden to demonstrate that Plaintiffs' continued detention is unnecessary when it

conducts parole reviews.  Def. PI Opp. 14 n.3.  Plaintiffs rather contend that the Parole Directive,

the INA, INA regulations, and the Due Process Clause mandate individualized review of parole

requests based on flight risk and danger to the community and preclude a broad policy of

denying parole in virtually every case.  Compl. ¶¶ 4-5.  Plaintiffs have properly alleged through

citation to statistical and other evidence that ICE is not conducting the requisite individualized

reviews at the ICE Field Offices.  *See id.* ¶¶ 37-45.  Those allegations are sufficient to withstand

dismissal, and they have also been backed by evidence sufficient to support Plaintiffs' burden for

obtaining a preliminary injunction.

4.   <u>Kelly Memorandum</u>.  The Kelly memorandum's statement that the Parole

Directive remains "in full force and effect," Def. PI Opp. 15, is beside the point.  Plaintiffs do

not allege that Defendants have officially rescinded the Parole Directive; rather, Plaintiffs allege an unlawful *de facto* rescission, as evidenced by the fact that the Field Offices are denying parole in virtually every case.  Compl. ¶¶ 41, 68.  Plaintiffs' non-conclusory allegations concerning this *de facto* rescission are more than sufficient to state a claim.  *See, e.g.*, *Venetian Casino Resort, L.L.C. v. EEOC*, 530 F.3d 925, 929 (D.C. Cir. 2008) (agency action reviewable when record "leaves no doubt" that new unwritten policy exists); *R.I.L-R.*, 80 F. Supp. 3d at 184 (similar).

## CONCLUSION

The overwhelming statistical and other evidence establishes that the ICE Field Offices are not conducting individualized parole reviews and have instead implemented a *de facto* policy of denying parole to almost everyone.  There is no dispute that such conduct is contrary to law. Accordingly, Plaintiffs' motion for a preliminary injunction should be granted and Defendants' motion to dismiss should be denied.

Dated: May 3, 2018                                      Respectfully submitted,

                                                       /s/ Philip J. Levitz

Judy Rabinovitz                                        Dennis B. Auerbach (D.C. Bar No. 418982)
Michael K.T. Tan                                       Philip J. Levitz (D.C. Bar No. 1018430)
AMERICAN CIVIL LIBERTIES UNION                         Julia H. Brower (D.C. Bar No. 1048925)
FOUNDATION, IMMIGRANTS' RIGHTS PROJECT                 COVINGTON & BURLING LLP
125 Broad Street, 18th Floor                           One CityCenter
New York, NY 10004                                     850 Tenth St., N.W.
(212) 549-2618                                         Washington, D.C. 20001–4956
                                                       (202) 662-6000
Stephen B. Kang
AMERICAN CIVIL LIBERTIES UNION                         Eunice Lee
FOUNDATION, IMMIGRANTS' RIGHTS PROJECT                 Blaine Bookey
39 Drumm Street                                        CENTER FOR GENDER & REFUGEE STUDIES
San Francisco, CA 94111                                200 McAllister St.
(415) 343-0783                                         San Francisco, CA 94102
                                                       (415) 565-4877
Hardy Vieux (D.C. Bar No. 474762)
Laura Gault[*]                                         Arthur B. Spitzer (D.C. Bar. No. 235960)
HUMAN RIGHTS FIRST                                     AMERICAN CIVIL LIBERTIES UNION OF THE
805 15th Street, N.W., Suite 900                       DISTRICT OF COLUMBIA
Washington, D.C. 20005                                 915 15th Street, NW, 2nd floor
(202) 547-5692                                         Washington, D.C. 20005-2302
                                                       (202) 457-0800
Josie Cardoso-Rojo
HUMAN RIGHTS FIRST                                     Farrin R. Anello
75 Broad Street, 31st floor                            Edward Barocas
New York, NY 10004                                     Jeanne LoCicero
(212) 845-5200                                         AMERICAN CIVIL LIBERTIES UNION OF NEW
                                                       JERSEY FOUNDATION
                                                       P.O. Box 32159
                                                       Newark, NJ 07102
                                                       (973) 642-2084

---

[*]Although LCvR 83.2(c) and (d) do not apply to Ms. Gault, she appears before the Court pursuant to LCvR 83.2(g), which states, "ATTORNEYS REPRESENTING INDIGENTS. Notwithstanding (c) and (d) above, an attorney who is a member in good standing of the District of Columbia Bar or who is a member in good standing of the bar of any United States Court or of the highest court of any State may appear, file papers and practice in any case handled without a fee on behalf of indigents upon filing a certificate that the attorney is providing representation without compensation."  Ms. Gault is not receiving compensation for her services.

Leon Howard
Kristin Greer Love
ACLU OF NEW MEXICO
1410 Coal Ave. SW
Albuquerque, NM 87104
(505) 266-5915, x1007

Witold J. Walczak
Golnaz Fakhimi
ACLU OF PENNSYLVANIA
247 Ft. Pitt Blvd., 2nd floor
Pittsburgh, PA 15222
(412) 681-7864

Freda J. Levenson
ACLU OF OHIO
4506 Chester Ave.
Cleveland, OH 44103
(216) 472-2220

Ahilan T. Arulanantham
Sameer Ahmed
ACLU FOUNDATION OF SOUTHERN
CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
(213) 977-5232

Edgar Saldivar
Andre Segura
ACLU FOUNDATION OF TEXAS, INC.
1500 McGowen, Suite 250
Houston, TX 77004
(713) 942-8146 x111

## CERTIFICATE OF SERVICE

I certify that, on May 3, 2018, I electronically transmitted the attached memorandum and the accompanying exhibits using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants for this case.


Date: May 3, 2018                              Signed:   /s/ Philip J. Levitz
                                                         Philip J. Levitz
                                                         COVINGTON & BURLING LLP
                                                         One CityCenter
                                                         850 Tenth St., N.W.
                                                         Washington, D.C.  20001–4956
                                                         (202) 662-6000