UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Ansly DAMUS, *et al.*, on behalf of themselves and others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>Kirstjen NIELSEN, Secretary of the Department of Homeland Security, in her official capacity, *et al.*,<br><br>*Defendants*. | Civil Action No. 1:18-cv-0578 |

### **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

**I.   Plaintiffs' Have Failed to Show how They Have Stated a Claim for a Bond Hearing before an Immigration Judge**

Plaintiffs misconstrue Defendants' arguments regarding the application of the Fifth Amendment to their detention pending the adjudication of their asylum claims. As arriving aliens who have not been admitted to the United States, Plaintiffs have no claim of right to demand entry and are instead limited to those procedures established by statute and regulation. *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953); *cf. Arnett v. Kennedy*, 416 U.S. 134, 153–54 (1974) (determining that where a statute provides a plaintiff the substantive right of which he has been deprived, his challenge of that deprivation is limited by the procedural rights afforded him under the statute). Unlike aliens who have already been admitted to the United States, who may have additional due process protections "conforming to traditional standards of fairness encompassed in due process of law," arriving aliens seeking to enter the United States are not entitled to the same protections. *Mezei*, 345 U.S. at 212. This deference to Congress stems from the

1

longstanding premise that aliens have no right to enter the United States and may instead enter "only upon such terms as the United States shall prescribe." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950). Because the Immigration and Nationality Act and its regulations do not provide arriving aliens a bond hearing before an immigration judge, Plaintiffs have failed to state a claim for that relief under the Fifth Amendment.

II.   **The Procedural Requirements Outlined in the Parole Directive Do Not Give Rise to a Private Cause of Action.**

Plaintiffs have also failed to show how the procedural requirements outlined in the Parole Directive create a private cause of action under the Administrative Procedure Act ("APA") or otherwise.[1] Plaintiffs cite *Abdi v. Duke*, 280 F. Supp. 3d 373 (W.D.N.Y. 2017)—which is a decision granting a preliminary injunction, not a final decision on the merits—for the proposition that the Parole Directive confers a private cause of action on individuals to enforce the procedural requirements contained therein. But *Abdi*, which mistakenly relies on *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), fails to distinguish between regulations, which carry the force of law, and internal guidance, which may bind agency officers and employees to the extent intended by the agency, without necessarily creating a private cause of action. *See Chiron Corp. & PerSeptive Biosystems v. Nat'l Transp. Safety Bd.*, 198 F.3d 935, 944 (D.C. Cir. 1999); *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) (holding that a "a procedural right *in vacuo*" is insufficient to create Article III standing).

The Parole Directive's statement that it places requirements on ICE and its officers without creating a private cause of action should be viewed by the Court as determinative evidence of

---

[1] Contrary to Plaintiffs' claim, the Parole Directive does not require denial letters themselves to be in the parole applicant's native language. *See* Dkt. No. 24 at 13; Parole Directive ¶¶ 6.1, 6.5, 8.1.

the extent to which DHS intended to be bound by the Directive. *See Chiron Corp.*, 198 F.3d at 944. Were the Court to find a private cause of action where the agency never intended to create one, other agencies would be deterred in the future from issuing internal policies and procedures that benefit private individuals out of concern that doing so would make the agencies vulnerable to new litigation.

### III. Plaintiffs' New Allegations that Their Parole Denials Were Pretextual Also Fail to State a Justiciable Claim.

In the face of evidence demonstrating that there is no "blanket deterrence policy" at any of the five Field Offices and that the named Plaintiffs each received an individualized parole determination, Plaintiffs now seek to broaden their claims to challenge what they allege are "pretextual" parole denials. Dkt. No. 24 at 8–11. Plaintiffs allege that the officers who denied their parole applications falsely determined that the Plaintiffs failed to prove that they were not flight risks. *Id.* This argument should fail for at least two reasons.

First, Plaintiffs falsely allege that the lack of "substantial ties" to the community or the recentness of entry cannot be factors in determining flight risk because asylum seekers detained at the border "are, *by definition*, 'recent entrants,'" and because virtually all arriving asylum seekers lack "substantial ties" to the United States. Dkt. No. 24 at 2, 8. Yet the Parole Directive explicitly lists "community and family ties" and "length of residence in the United States" as "factors appropriate for consideration in determining whether an alien has made the required showing" that he or she is not a flight risk. Parole Directive ¶ 8.3(2)(b). Thus, the ICE officers' consideration of those factors actually supports *Defendants'* conclusion that the agency is following the Parole Directive.

3

Second, Plaintiffs' new allegations are essentially challenging the ICE officers' discretionary weighing of the evidence, which the Court lacks jurisdiction to review.[2] *See, e.g.*, Dkt. No. 24 at 2, 8; 8 U.S.C. § 1252(a)(2)(B)(ii) ("Notwithstanding any other provision of law (statutory or non-statutory) . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review [ ] any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security."); Parole Directive ¶ 4.4 ("Parole remains an inherently discretionary determination entrusted to the agency."). Plaintiffs are essentially arguing that their parole applications were erroneously denied because: (1) Mr. Damus's evidence of community ties should have been sufficient because his different proposed sponsors' statements were "corroborated" and "undisputed"; (2) one sworn affidavit and one letter should have been sufficient to show that Mr. Callol's proposed sponsor was his mother and because other evidence should have been sufficient to show that she would have supported him in Miami; and (3) one sworn affidavit should have been sufficient to establish that Mr. Carillo's proposed sponsor was his niece. Dkt. No. 24 at 8-10. This is just another way of asking the Court to reweigh the evidence determined by the ICE officer to be insufficient to prove that the Plaintiffs were not flight risks. There is no judicial review over such discretionary determinations. 8 U.S.C. § 1252(a)(2)(B)(ii); Parole Directive ¶ 4.4. Therefore, Plaintiffs' new allegations of pretextual denials based on a false assessment of flight risk should also be dismissed.[3]

---

[2] These new allegations would not form a basis for relating this case to *R.I.LR. v. Johnson*, 80 F.3d 164, 188–89 (D.D.C. 2015).

[3] Although Defendants have not yet presented statistical evidence in opposition to Plaintiffs' motion for a preliminary injunction in the limited time available since Plaintiffs filed the motion,

4

Plaintiffs cite *Venetian Casino Resort, L.L.C. v. E.E.O.C.*, 530 F.3d 925, 931 (D.C. Cir. 2008), for the proposition that an unofficial but "de facto" rescission of an agency policy is reviewable under the APA. Dkt. No. 24 at 23. But unlike in *Venetian Casino*, where there was no dispute about whether the EEOC had a policy of revealing confidential information, Plaintiffs' allegations here do not allow the Court to plausibly infer the existence of a final agency action that would be reviewable under APA section 706(2). 5 U.S.C. § 706(2). DHS has officially stated that the 2009 Parole Directive is still in effect and that arriving aliens found to have a credible fear are among the aliens detained under section 1225 who should be released, provided—consistent with the Parole Directive—that the alien can establish his or her identity and that he or she presents neither a security risk nor a flight risk. Dkt. No. 22, Ex. B. Unlike DHS's official policy statements or directives, the abstract, unidentifiable "de facto rescission" that Plaintiffs allege is not a final action agency that can be reviewed under section 706(2). *See Bark v. United States Forest Serv.*, 37 F. Supp. 3d 41, 50 (D.D.C. 2014) ("Plaintiffs point to no written rules, orders, or even guidance documents of the Forest Service that set forth the supposed policies challenged here. Instead, Plaintiffs appear to have attached a 'policy' label to their own amorphous description of the Forest Service's practices. But a final agency action requires more.").

Further, Plaintiffs conflate their request for the Court to review an abstract, unidentifiable "de facto rescission" under APA section 706(2) with their request to compel Defendants to follow the Parole Directive under APA section 706(1). But because the procedural requirements in the Parole Directive do not give rise to a private cause of action, the only relief the Court could provide under section 706(1) to a detained arriving alien is an order for ICE to adjudicate his or

---

Defendants have challenged Plaintiffs' statistics on their face by pointing to Plaintiffs' small sample sizes and to large holes in their data set.

her parole request and to determine as a discretionary matter whether he or she should be paroled for "urgent humanitarian reasons" or for "significant public benefit" provided he or she presents "neither a security risk nor a risk of absconding." *See* 8 C.F.R. § 212.5. ICE has already adjudicated Plaintiffs' parole requests, and the agency determined in its discretion that each Plaintiff poses a flight risk. There is no further relief for the Court to provide under the APA.

Dated:  May 9, 2018                     Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
District Court Section

SARAH B. FABIAN
Senior Litigation Counsel
Office of Immigration Litigation
District Court Section

ALEXANDER J. HALASKA
Trial Attorney
Office of Immigration Litigation
District Court Section

*/s/ Genevieve M. Kelly*

GENEVIEVE M. KELLY
Trial Attorney, Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 532-4705
Va. Bar No. 86183
genevieve.m.kelly@usdoj.gov

*Attorneys for the Defendants*