# EXHIBIT 3

Case 1:18-cv-00578-JEB   Document 41-4   Filed 09/07/18   Page 1 of 5

## DECLARATION OF ELIZABETH HERCULES-PAEZ, ESQ.

I, Elizabeth Hercules-Paez, Esq. make this declaration from my personal knowledge and, if called to testify to these facts, could and would do so competently.

1. I am a Staff Attorney for the Immigrants' Rights Project ("IRP") of Public Counsel, the largest *pro bono* law firm in the nation. My work is focused on supporting IRP's deportation defense efforts for immigrant detainees, primarily those detained in Orange County, by: (1) coordinating a Legal Orientation Program ("LOP") for detainees, (2) providing direct representation to immigrant detainees in parole requests, bond and removal proceedings, and (3) facilitating pro bono representation of immigrant detainees in parole requests, bond and removal proceedings. I have been employed by Public Counsel from August 2017 through the present.

2. I coordinate Public Counsel's LOP for immigration detainees held at the James A. Musick Facility in Irvine, California. The facility is under the jurisdiction of the Los Angeles Field Office of U.S. Immigration and Customs Enforcement ("ICE").

3. The LOP offers legal orientation to detainees at Musick once a month, where we provide legal orientations to detainees who lack representation. Typically, 30 to 40 detainees attend each LOP session, and about a third to a half of the participants are asylum seekers who have passed a credible fear screening. The large majority of the asylum seekers are individuals from Central America or Mexico who are fleeing gang-based or gender-based violence in their home countries.

4. I have conducted two LOP sessions at Musick in the period since the district court entered its preliminary injunction order in *Damus v. Nielsen*, No. 1:18-cv-00578-JEB (D.D.C.), on July 19, 2018 and August 16, 2018.

1

5. Nearly all the *Damus* class members I have encountered through the LOP have been denied parole. Of those whose paperwork I have reviewed, ICE denied parole based in whole or in part on flight risk, and not based on dangerousness to the community. As was true prior to the preliminary injunction order in *Damus*, ICE denied parole in cases where the person submitted documents establishing their identity; identified a sponsor—typically a family member or friend with legal status in the United States—and explained that he or she has no criminal history in the U.S. or abroad.

6. Based on my work with detainees at the Musick Facility, I do not believe that ICE is complying with the procedural requirements of the Parole Directive. For example, ICE provides detainees with parole advisals setting a date for their parole interviews and the deadline for submitting evidence in support of their parole application. However, ICE does not provide a written or oral translation of that advisal in the detainee's native language, even though nearly all of the detainees are not proficient in English and in some cases are not literate. Detainees generally do not understand the parole advisal until it is explained to them by fellow detainees who are familiar with the parole process or by our staff at an LOP consultation —at which point the detainee typically will have missed the deadline to submit evidence in support of his or her parole application. Moreover, detainees do not understand that they can seek an extension of the deadline in order to collect evidence in support of their applications.

7. Although the parole advisals schedule parole interviews, several detainees never received in-person parole interviews with a deportation officer.

8. Finally, ICE has continued to use the same denial form it used prior to the preliminary injunction order in *Damus*. That form consists of a check-list of reasons for denying parole. The forms do not include any explanation for ICE's decision to deny parole beyond checking the

boxes stating that the individual is a flight risk, and that bond or other conditions of parole would not ensure the person's appearance at his or her removal hearings.

9. As with the parole advisals, ICE provides the denial form only in English, and does not provide a written translation of the form to detainees who are not proficient in English. Nor does ICE generally explain to detainees that they have the right to seek reconsideration. As a result, many asylum seekers do not understand the denial form or their right to seek reconsideration until they are able to meet with our staff at an LOP consultation.

I declare under penalty of perjury of the laws of the District of Columbia and the United States that the foregoing is true and correct.

Executed this 30th day of August, 2018 in Los Angeles, California.

_____
Elizabeth Hercules-Paez, Esq.