## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ANSLY DAMUS, *et al.*, on behalf of themselves and others similarly situated, | ) ) ) |
| *Plaintiffs,* | ) ) |
| *v.* | ) Civil Action No. 1:18-cv-00578 (JEB) ) |
| KIRSTJEN NIELSEN, Secretary of the Department of Homeland Security, in her official capacity, *et al.*, | ) ) ) ) |
| *Defendants.* | ) ) ) |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LIMITED DISCOVERY REGARDING COMPLIANCE WITH THE PRELIMINARY INJUNCTION, OR, ALTERNATIVELY, FOR AN ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT**

Defendants ask the Court to accept at face value their assertion that they are complying with the Court's preliminary injunction order. According to the Government's *own status reports*, however, ICE has granted parole in just 25% of asylum cases at the relevant field offices since the preliminary injunction issued, as compared to 92% just a few years ago. The Government makes no effort to explain this seismic shift. The unexplained dramatic decline in parole-grant rates is evidence of contempt — not compliance. The radical drop in the grant rate, and unrebutted corroborating declarations from class members and practitioners, strongly suggest that ICE is ignoring the Parole Directive's substantive standards. The Government's own data, and numerous declarations, also show that ICE is not complying with procedural requirements of the Parole Directive, having frequently failed, for instance, to provide parole interviews and parole decisions within seven days as the Parole Directive mandates.

Defendants' objections to Plaintiffs' request for targeted discovery ring hollow in these circumstances. While Defendants' own data is sufficient to support issuance of a show-cause order of contempt, the Court need not go that far at this juncture. We simply seek leave to take limited discovery to probe Defendants' dubious assertion that they are complying with the preliminary injunction. Contrary to Defendants' contention, the discovery Plaintiffs seek is limited to whether Defendants are conducting bona fide individualized parole reviews, as the preliminary injunction requires — not whether ICE is appropriately exercising discretion in specific cases. Moreover, because the limited discovery concerns whether Defendants are complying with a court order, it is irrelevant that no Rule 26(f) conference has yet occurred.

## ARGUMENT

### I.    Targeted Compliance Discovery Is Necessary in Light of the Substantial Evidence That Defendants Are Not Complying with the Preliminary Injunction.

The evidence Defendants have offered to date strongly suggests that they are not complying with the Court's July preliminary injunction order. Plaintiffs seek targeted discovery to assess Defendants' assertion that they are complying, notwithstanding that evidence.

As noted, Defendants' most recent status reports confirm that, since the preliminary injunction issued, only 25% of class members have been granted parole. Gov't Opp. 6 (citing ECF No. 44). That reflects a dramatic drop from the 92% parole rate in the same ICE Field Offices pursuant to the Parole Directive[1] a few years ago. *See* Declaration of Anne Daher ¶ 9 (ECF No. 17-10). Defendants offer no explanation for this precipitous decline — they do not, for example, suggest that asylum seekers today are more likely to flee. Defendants instead ask the Court to believe that the decline is purely fortuitous — a position that defies common sense.

---

[1] ICE Directive No. 11002.1, Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture (Dec. 8, 2009) (ECF No. 20-1).

In light of the numbers, the more plausible conclusion is that ICE simply is not following the Parole Directive.

That conclusion is buttressed by ten declarations from class members and legal practitioners practicing in the ICE Field Offices.  ECF Nos. 41-2 - 41-11.  These declarants attest that Defendants still are not complying with the Parole Directive, but rather are routinely denying parole on the basis of purported "flight risk" to class members who have shown they are not flight risks, *see* Pl. Mot. 5, and even denying parole to class members who have submitted *stronger* evidence that they are not flight risks than others who were granted parole before the Trump Administration, *see id.* at 5-6.  Defendants offer no responsive evidence.

Defendants' own status reports also reflect that Defendants are not following the Parole Directive's procedural requirements.  For instance:

- Defendants admit that nearly 20% of class members did not receive a parole interview within seven days of receiving a parole advisal, notwithstanding the Parole Directive's requirement that an interview normally must be conducted "no later than seven days following a finding that an arriving alien has a credible fear," Gov't Opp. 6; Parole Directive ¶ 8.2; and

- Defendants admit that more than 20% (and, in one Field Office, *more than 60%*) of class members did not receive a parole decision within seven days of their interview, notwithstanding the Parole Directive's requirement that "[w]ritten notifications of parole decisions" normally "shall be provided . . . within seven days of the interview," Gov't Opp. 6-7, 9; Parole Directive ¶ 6.6.

The substantial uncontested evidence that Defendants are not complying with the Parole Directive supports a finding that Defendants are in contempt of the Court's preliminary

injunction order.  At a minimum, though, Plaintiffs should be allowed targeted discovery to test Defendants' bald assertion that they are complying.  Courts regularly order such discovery where, as here, "'significant questions regarding noncompliance have been raised.'"  *See* Pl. Mot. 9-10 (quoting *Cal. Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1034 (9th Cir. 2008), and collecting additional cases); *see also Rutherford v. Baca*, 2009 WL 10653011, at *2 (C.D. Cal. Aug. 4, 2009) (request for discovery regarding compliance with court order requires "[v]ery little proof of noncompliance" (citing Rutter Group Practice Guide: Federal Civil Trials & Evidence ¶ 20:438.3)), *clarified on denial of reconsideration*, 2009 WL 10653010 (C.D. Cal. Sept. 22, 2009).

Defendants contend that a "reasonableness" test governs Plaintiffs' request for discovery. But the cases they cite, Gov't Opp. 10-12, are inapposite; they do not involve the targeted discovery regarding compliance with a court order that is at issue in this case.  Defendants' cases address requests for expedited discovery *before* any court order has issued, *Legal Tech. Grp., Inc. v. Mukerji*, 2017 WL 7279398, at *3 (D.D.C. June 5, 2017); *Guttenberg v. Emer*y, 26 F. Supp. 3d 88, 98 (D.D.C. 2014); *Disability Rights Council of Greater Washington v. Washington Metro. Area Transit Auth.*, 234 F.R.D. 4 (D.D.C. 2006), or even before a complaint had been served, *see Attkisson v. Holder*, 113 F. Supp. 3d 156 (D.D.C. 2015); *Landwehr v. F.D.I.C.*, 282 F.R.D. 1 (D.D.C. 2010); *In re Fannie Mae Derivative Litig.*, 227 F.R.D. 142, 143 (D.D.C. 2005). As explained in our opening brief, Pl. Mot. 9-10, in the context of a request for discovery regarding an existing court order, the relevant test is whether there exist "significant questions"

concerning Defendants' compliance with the order.  For the reasons stated, Plaintiffs satisfy that test.[2]

## II.    Plaintiffs' Discovery Request Is Reasonable and Appropriately Tailored to the Need to Assess Defendants' Compliance.

Even under the "reasonableness" test that Defendants advance, the discovery Plaintiffs seek would be appropriate.  Defendants cite the following reasonableness factors: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Guttenberg*, 26 F. Supp. 3d at 98 (internal quotation marks omitted).  Plaintiffs satisfy those factors here.

Although no preliminary injunction motion is currently pending, there is substantial evidence that Defendants are not complying with the preliminary injunction order.  *See supra* pp. 2-3.  Moreover, Plaintiffs' discovery request is narrowly tailored to assess compliance with the preliminary injunction.  Plaintiffs only seek information necessary to test Defendants' assertion that they are complying with the injunction, notwithstanding the statistical and testimonial evidence to the contrary.  That includes parole-determination documentation from the brief period since the preliminary injunction issued in July (or a statistically valid random sample thereof), and testimony and documents addressing the procedures and standards that the five ICE Field Offices at issue in this case have applied in making those parole determinations.

---

[2] Because the compliance discovery Plaintiffs seek is by court order, it is irrelevant that no Rule 26(f) conference has yet occurred.  *See* Fed. R. Civ. P. 26(d)(1) (party may take discovery "before the parties have conferred as required by Rule 26(f)" "when authorized . . . by court order"); *see also Arista Records LLC v. Does 1-19*, 551 F. Supp. 2d 1, 6 (D.D.C. 2008) ("Federal Rule of Civil Procedure 26(d) explains that parties may . . . serve discovery" before "a Rule 26(f) conference . . . when authorized by . . . court order" (internal quotation marks omitted)).

There is no merit to Defendants' assertion that this limited discovery would be unduly

burdensome.   Plaintiffs understand that each parole determination is typically documented by

just a two-page worksheet.[3]  Moreover, the Parole Directive requires that the worksheets "shall

be stored and maintained" in a central location in each field office "for use in preparing monthly

reports."  Parole Directive ¶ 8.10.  Pulling two-page parole worksheets from a central file for the

roughly 1,000 parole cases decided since the preliminary injunction issued is not unduly

burdensome — particularly in the context of a class action alleging that hundreds of individuals

are being unlawfully deprived of liberty.  Even if it were, Plaintiffs are amenable to receiving

only a statistically valid sample of the worksheets.

Defendants' objection that production of parole-determination documents goes to the

merits of individual parole decisions is baseless.  As another federal court recently held in

ordering the Government to produce parole-determination worksheets, such documentation goes

"to the heart of [Plaintiffs'] claim that Defendants 'fai[l]   . . . to provide individualized custody

reviews.'"  *See D.A. v. Nielsen*, 2018 WL 3158819, at *6 (D.N.J. June 28, 2018).  Only by

reviewing these documents can Plaintiffs assess whether the Government is conducting bona fide

parole reviews focused on flight risk and danger to the community, as the Parole Directive

requires.  *See id*.  The need for these documents "is particularly acute given the absence of other

materials that document the parole decision-making process."  *Id.*

Defendants' objection to producing parole-determination documents based on purported

deliberative process or law enforcement privilege is similarly off base.  As an initial matter,

Defendants' vague assertions do not come close to satisfying their burden of establishing these

---

[3] *See* Parole Directive ¶ 6.2.  A sample parole determination worksheet is available at
https://www.aila.org/File/Related/09121761c.pdf.

privileges with specificity.  *See, e.g.*, *Ameziane v. Obama*, 620 F.3d 1, 6 (D.C. Cir. 2010) (law enforcement privilege assertion requires "at a minimum, a specific, tailored rationale for protecting a general category of information, and a precise designation of each particular item of information that purportedly falls within the categor[y]" (internal quotation marks omitted)); *Pub. Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 874–75 (D.C. Cir. 2010) (rejecting "blanket application" of deliberative process privilege).  Moreover, the privileges Defendants cite "do[] not shield documents" that are "purely factual" and "simply state[] or explain[] a decision the government has already made" — like the parole-determination documents at issue here.  *See In re Sealed Case*, 121 F.3d 729, 735-36 (D.C. Cir. 1997).  Indeed, the *D.A.* court rejected the Government's privilege objections to production of parole-determination worksheets, concluding that the worksheets contain only "a series of 'yes or no' factual questions" and "brief factual conclusions."  *See D.A.*, 2018 WL 3158819, at *3-8.

The Court also should reject Defendants' objections to the provision of documents and testimony regarding the parole procedures and standards that the ICE Field Offices have applied since the preliminary injunction issued.  Documents reflecting such procedures and standards are obviously relevant to whether Defendants are conducting bona fide case-by-case parole reviews.  And testimony is especially important both because Defendants claim to have few if any relevant documents, Gov't Opp. 19, and because — as Defendants themselves recognize — testimony provides a unique opportunity "to further probe the facts elicited through [written discovery]."  Gov't Opp. 20 (citing *English v. Washington Metro. Area Transit Auth.*, 323 F.R.D. 1, 26 (D.D.C. 2017) (denying motion to quash deposition)).

Finally, Plaintiffs' request for compliance discovery comes six months into this litigation, and after this Court already preliminarily rejected all of Defendants' motion to dismiss

arguments in its preliminary injunction order.  The motion to dismiss has not yet been decided, and discovery has not yet begun, only because the Court is holding the motion to dismiss in abeyance precisely to focus first on compliance with the preliminary injunction.  *See* Minute Order (July 10, 2018).  Limited discovery is necessary to complete that task.[4]

## CONCLUSION

Defendants' bald assertion that they are complying with the preliminary injunction should not trump the hard statistical evidence that they are not.  The Court should grant the targeted compliance discovery outlined in Plaintiffs' motion and proposed order, or, alternatively, order that Defendants show cause why they should not be held in contempt of the preliminary injunction order.

---

[4] Plaintiffs do not object to Defendants taking reciprocal discovery to the extent it concerns Defendants' compliance with the preliminary injunction.  Plaintiffs do, however, object to Defendants' request for expedited discovery regarding "any matter that forms the basis of Plaintiffs' allegations thus far."  Gov't Opp. 27.  Such broad discovery would exceed the scope of discovery regarding compliance with the preliminary injunction.

Dated: October 4, 2018

Judy Rabinovitz
Michael K.T. Tan
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION, IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2618

Stephen B. Kang
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION, IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
(415) 343-0783

Hardy Vieux (D.C. Bar No. 474762)
HUMAN RIGHTS FIRST
805 15th Street, N.W., Suite 900
Washington, D.C. 20005
(202) 547-5692

Eleni Bakst
HUMAN RIGHTS FIRST
75 Broad Street, 31st floor
New York, NY 10004
(212) 845-5200

Leon Howard
Kristin Greer Love
ACLU OF NEW MEXICO
1410 Coal Ave. SW
Albuquerque, NM 87104
(505) 266-5915, x1007

Respectfully submitted,

/s/ Philip J. Levitz

Dennis B. Auerbach (D.C. Bar No. 418982)
Philip J. Levitz (D.C. Bar No. 1018430)
Julia H. Brower (D.C. Bar No. 1048925)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth St., N.W.
Washington, D.C. 20001–4956
(202) 662-6000

Eunice Lee
Blaine Bookey
CENTER FOR GENDER & REFUGEE STUDIES
200 McAllister St.
San Francisco, CA 94102
(415) 565-4877

Arthur B. Spitzer (D.C. Bar. No. 235960)
AMERICAN CIVIL LIBERTIES UNION OF THE
DISTRICT OF COLUMBIA
915 15th Street, NW, 2nd floor
Washington, D.C. 20005-2302
(202) 457-0800

Farrin R. Anello
Edward Barocas
Jeanne LoCicero
AMERICAN CIVIL LIBERTIES UNION OF NEW
JERSEY FOUNDATION
P.O. Box 32159
Newark, NJ 07102
(973) 642-2084

Witold J. Walczak
Golnaz Fakhimi
ACLU OF PENNSYLVANIA
247 Ft. Pitt Blvd., 2nd floor
Pittsburgh, PA 15222
(412) 681-7864

Edgar Saldivar
Andre Segura
ACLU FOUNDATION OF TEXAS, INC.
1500 McGowen, Suite 250
Houston, TX 77004
(713) 942-8146 x111

Freda J. Levenson
ACLU OF OHIO
4506 Chester Ave.
Cleveland, OH 44103
(216) 472-2220

Ahilan T. Arulanantham
Sameer Ahmed
ACLU FOUNDATION OF SOUTHERN
CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
(213) 977-5232

## CERTIFICATE OF SERVICE

I certify that, on October 4, 2018, I electronically transmitted the attached motion and accompanying exhibits using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants for this case.

Date: October 4, 2018                                  Signed:      /s/ Philip J. Levitz
                                                                    Philip J. Levitz
                                                                    COVINGTON & BURLING LLP
                                                                    One CityCenter
                                                                    850 Tenth St., N.W.
                                                                    Washington, D.C. 20001–4956
                                                                    (202) 662-6000