**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| ANSLY DAMUS, *et al.*, |
| Plaintiffs, |
| v. |
| KIRSTJEN M. NIELSEN, *et al.*, |
| Defendants. |

Civil Action No. 18-578 (JEB)

**MEMORANDUM OPINION**

Plaintiffs are members of a provisionally certified class of asylum-seekers detained by Immigration and Customs Enforcement at one of its five Field Offices. ICE's detention policy is governed in part by its 2009 "Parole Directive," which establishes how the agency determines whether an individual who has been deemed to have a "credible fear of persecution" — the first step in gaining asylum status — will be released on parole pending a full hearing. In bringing suit, Plaintiffs' principal contention, based on plummeting parole rates and testimony from detained asylum-seekers and their counsel, is that this Administration is no longer following its own Directive but is instead engaging in systematic detention. Finding that Plaintiffs had established a reasonable likelihood of success on that claim, the Court last July granted a preliminary injunction requiring that Defendants comply with the Directive. See Damus v. Nielsen, 313 F. Supp. 3d 317 (D.D.C. July 2, 2018). Citing additional testimony from practitioners and parole statistics since the injunction issued, Plaintiffs believe that the five Field Offices are not following that injunction. They thus now move for discovery regarding the agency's compliance. As Plaintiffs have raised a sufficient question of noncompliance, the Court will grant their Motion and permit limited discovery to see if they can support their theory.

1

I.  **Background**

The background on the relevant statutory scheme, the Parole Directive, and Plaintiffs' detention is laid out in this Court's prior Opinion. Id. at 323–25. In brief, non-citizens applying for asylum may be paroled "into the United States temporarily" at the Attorney General's discretion. See 8 U.S.C. § 1182(d)(5)(A). Agency regulations provide that the Secretary of Homeland Security, under whom ICE operates, "may invoke" parole authority for individuals who are "neither a security risk nor a risk of absconding" and who meet one or more of a series of conditions — as relevant here, "for urgent humanitarian reasons or significant public benefit." See Damus, 313 F. Supp. 3d at 324 (quoting 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(b)). The Directive interprets "public benefit" and sets out procedural requirements for assessing whether individual applicants should be released. It provides that, if an asylum-seeker has established her identity and that she is neither a flight risk nor a risk to the public, detention is not in the public interest and parole should be granted between the initial credible-fear determination and the full hearing. Id.; see ICE Directive No. 11002.1 (Dec. 8, 2009) (Parole Directive). The Directive also requires that ICE make an individualized determination, provide a written notice of the parole process in a language the asylum-seeker understands, grant a parole interview within seven days, and provide a "brief explanation" of its decision. See Damus, 313 F. Supp. 3d at 324 (citation omitted).

Plaintiffs' principal allegation that ICE is no longer following the Directive relied in large part on statistics: under the Obama Administration, parole was granted to more than 90% of asylum-seekers at the five Field Offices at which class members are held; at the time Plaintiffs filed suit, ICE was denying over 90% of requests at those locations. Id. at 339. Plaintiffs also submitted "a number of declarations from asylum-seekers and their advocates[,] . . . all of whom

assert[ed] various violations of the . . . Directive." Id. at 340. Based on that evidence, this Court concluded that Plaintiffs were likely to succeed on the merits of their claim and satisfied the other prerequisites for a preliminary injunction. Id. at 339–43. It accordingly issued an Order requiring, *inter alia*, that "Defendants . . . [not] deny[] parole to any provisional class members absent an individualized determination[;] . . . [that] [t]he individualized determinations of flight risk and danger to the community referenced above . . . be based on the specific facts of each provisional class member's case"; and that Defendants comply with the procedural requirements of the Directive. See ECF No. 33 (PI Order), ¶¶ 3–5.

The Government, as also ordered, provided a report on parole determinations from when the preliminary injunction issued on July 2, 2018 until August 17. See ECF No. 40 (ICE Data) at 1–2. In the five Field Offices at issue, ICE granted approximately 19%, 27%, 17%, 42%, and 18% of requests during that period. Id. Plaintiffs have now filed a Motion for Limited Discovery Regarding Compliance with the Preliminary Injunction, contending that these statistics and affidavits they have collected raise a significant question about ICE's compliance with the preliminary injunction. See ECF No. 41 (Plaintiff's Motion) at 1–2.

**II.     Analysis**

The Court must first determine whether this situation is one in which discovery is available at all. Concluding that it is, the Court will then move on to address the scope of discovery and whether Defendants should, as they contend, receive reciprocal discovery.

    A.     Availability of Discovery

        1.     *Standard*

Plaintiffs urge that the Court has authority to grant limited discovery where significant questions have been raised about noncompliance with a preliminary injunction. See Pl. Mot. at

9. Defendants protest that the appropriate standard for Plaintiffs' request for discovery is not whether there are significant compliance questions, but whether the discovery request is warranted under a multi-factor test. See ECF No. 45 (Defendants' Opposition) at 11. They also posit that discovery is simply inappropriate before a Rule 26(f) conference has taken place — and especially so here, since preliminary injunctions are intended to preserve the status quo, rather than "to force one party to 'radically transform the status quo, on an expedited basis.'" Id. (quoting Disability Rights Council v. WMATA, 234 F.R.D. 4, 7 (D.D.C. 2006)).

      Plaintiffs have the better of this dispute. The Court has the relevant authority "as part of its inherent power to enforce its judgments," and it is clear that "appropriate discovery should be granted" where "significant questions regarding noncompliance [with a court order] have been raised." Cal. Dep't of Social Servs. v. Leavitt, 523 F.3d 1025, 1033–34 (9th Cir. 2008); see Palmer v. Rice, 231 F.R.D. 21, 25 (D.D.C. 2005) (allowing discovery where, "without [it], plaintiffs will not be able to determine whether the government has complied with the court's injunctions"); Blackberry Ltd. v. Typo Prods. LLC, 2014 WL 4136586, at *5 (N.D. Cal. Aug. 21, 2014) (granting discovery where Plaintiff had raised "serious questions . . . regarding [Defendant's] possible violations of the preliminary injunction"). The Court retains this discretion where compliance questions have been raised before the Rule 26(f) conference. See MACOM Tech. Sols. Holdings, Inc. v. Infineon Tech. AG, 2017 WL 1371247, at *2 (C.D. Cal. Mar. 17, 2017). This is particularly so where the discovery sought goes to compliance, as opposed to the merits, the typical subject of the Rule 26(f) conference.

      The Court has little trouble, furthermore, rejecting the contention that it should apply the alternative standard urged by Defendants — that is, whether a multi-factor test renders discovery reasonable. None of the cases on which Defendants rely addresses the propriety of discovery to

assess compliance with a court order; rather, they deal generally with the considerations courts should weigh in determining whether expedited discovery is appropriate before any court order has issued. See Def. Opp. at 11 (citing Guttenberg v. Emery, 26 F. Supp. 3d 88, 97 (D.D.C. 2014); Attkisson v. Holder, 113 F. Supp. 3d 156, 161–62 (D.D.C. 2015); Landwehr v. FDIC, 282 F.R.D. 1, 3 (D.D.C. 2010)). The Court is likewise not persuaded that the approach Plaintiffs request risks "forc[ing] [Defendants] to radically transform the status quo," since the Order in question does "no more than hold the Government accountable" to its own existing policy. See Damus, 313 F. Supp. 3d at 323.

2. *Application*

Plaintiffs have, in fact, raised significant questions of noncompliance sufficient to meet the standard here. The Government, across the five Field Offices at which Plaintiffs are detained, granted approximately 19%, 27%, 17%, 42%, and 18% of parole requests in the six weeks between the issuance of the preliminary injunction and the submission of the data. See ICE Data at 1–2. Notwithstanding ICE's assertion that these numbers represent a rate "more than six times higher than what Plaintiffs alleged at the outset of this action," Def. Opp. at 6, they are still significantly below the grant rate of over 90% from years past. Put another way: if you sextuple a very low percentage, your product remains low. Plaintiffs, moreover, offer additional affidavits from practitioners to substantiate their claim that asylum-seekers continue to be summarily detained as flight risks without the required individualized analysis. See Pl. Mot., Exh. 1 (Declaration of Elizabeth Ford), ¶¶ 4–5; Exh. 2 (Declaration of Carlos Spector), ¶¶ 6–9; Exh. 3 (Declaration of Elizabeth Hercules-Paez), ¶ 5; Exh. 4 (Declaration of Rafael Reyneri), ¶¶ 5, 8; Exh. 5 (Declaration of Troy E. Elder), ¶¶ 4, 9; Exh. 6 (Declaration of Andres Alonso),

5

¶¶ 6–7, 9; Exh. 7 (Declaration of Brennan Gian-Grasso), ¶¶ 6–9, 13; Exh. 8 (Declaration of Brayan Antonio Guzman Orellana), ¶ 11; Exh. 9 (Declaration of Yosiel Casado Milanes), ¶ 9.

Plaintiffs also offer evidence that Defendants are failing to comply with several of the Directive's procedural requirements, including that ICE explain the parole process in a language that asylum-seekers understand. See Hercules-Paez Decl., ¶ 6; Pl. Mot., Exh. 10 (Declaration of Linda Corchado), ¶¶ 3–5. In addition, despite the Directive's requirements that ICE briefly explain its reasons for denying parole, Plaintiffs submit that the Agency continues to use the form denial letters without any individualized process that it did before the injunction issued. See Ford Decl., ¶¶ 4–5; Spector Decl., ¶ 7; Hercules-Paez Decl., ¶ 8; Reyneri Decl. ¶ 8; Elder Decl., ¶ 9; Alonso Decl., ¶ 7; Gian-Grasso Decl., ¶ 9; Guzman Orellana Decl., ¶ 11; Casado Milanes Decl., ¶ 9; Corchado Decl., ¶ 8.

The Government makes no attempt to argue that Plaintiffs have not raised a significant question as to compliance, instead relying entirely on the contention that a different standard — the multi-factor reasonableness test mentioned above — applies. Even if the Court applied Defendants' preferred standard, however, it would conclude Plaintiffs had met it here. In the case on which Defendants most rely, the court explained that its role was to assess the reasonableness of the plaintiffs' request, with the following five factors as "guidelines for the exercise of [its] discretion": "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." Guttenberg, 26 F. Supp. 3d at 98 (quoting In re Fannie Mae Derivative Litig., 227 F.R.D. 142, 142–43 (D.D.C. 2005)).

The court in Guttenberg indicated it would be more appropriate to grant discovery had the plaintiffs "narrowly tailored [their requests] to reveal information related to the preliminary injunction [they were seeking]," rather than "seek[ing] relatively broad discovery on issues going to the merits of their case." Id. (citing Dimension Data North America, Inc. v. NetStar-1, Inc., 226 F.R.D. 528, 532 (E.D.N.C. 2005)). Here, as the Court will explain further in the next section, Plaintiffs do seek discovery specifically relevant to compliance with the injunction, rather than the merits question. Similarly, their requests are neither overbroad nor, as tailored by the Court, overly burdensome to Defendants. Finally, given the importance of ensuring compliance with its orders, the Court would determine the purpose of discovery likewise weighed heavily in favor of granting it, even if it occurred in advance of the typical discovery process.

B. Scope of Discovery

So what type(s) of discovery should Plaintiffs obtain here? They seek three categories: (1) parole-determination documentation from the period since the injunction issued in July; (2) deposition testimony as to why the grant rates remain low; and (3) "documents reflecting the procedures and standards that the five ICE Field Offices have applied in making parole determinations" from the relevant period. See Pl. Mot. at 10. The Court will permit some, but not all, of this.

First, as to the parole-determination documentation issued in the relevant period, ICE argues that there have been over 1000 determinations, and it would be overly burdensome to produce so many. See Def. Opp. at 18. As a compromise, the Court will require production of a random sample. It will leave it to the parties to agree on the contours of such sample, which might, for example, be one out of every ten documents. The Court will also allow five

7

depositions: an official from each of the five Field Offices. The depositions should neither address the merits of individual determinations nor delve deeply into the seven years since the Directive has been in effect. Rather, they should address ICE's activity since the injunction issued with any necessary context from the preceding period.

As to the final request, Defendants represent that "Plaintiffs have already received copies of the non-attorney-client privileged communications related to the Field Offices' implementation of the preliminary injunction." Def. Opp. at 19 (citing ECF No. 41-12 (Emails Between Counsel) at 5–6). While Plaintiffs maintain that they should receive these documents, they do not represent that they have not received them. See ECF No. 48 (Plaintiffs' Reply) at 7. Rather, they elaborate that "because Defendants claim to have few if any relevant documents," their request for "testimony is especially important." Id. Given that the Court is granting Plaintiffs five depositions and accepting the representation that all non-privileged material has already been provided, the Court will deny the request for documents reflecting ICE's implementation of the injunction.

The Court believes that this discovery is narrowly tailored to the compliance question, bounded both in temporal scope and substance. Defendants nonetheless contend that it is an imposition for them to compile the relevant documentation and to spend resources preparing for and defending depositions. See Def. Opp. at 20, 21. In addition, they complain that Plaintiffs could have sought this discovery in July. Id. The latter point is specious: compliance with the injunction was not at issue in July. As to the former, the Court has cabined the number of depositions and the amount of parole-determination documentation. That documentation is also centrally maintained, see Parole Directive, ¶ 8.10, reducing any burden associated with compilation.

Finally, the Government presses two additional arguments as to why allowing discovery of the parole-determination worksheets specifically is improper: "[The relevant] request . . . seeks nothing but individualized evidence of ICE's discretionary determinations," and it is "so broad [as to be] virtually certain to encompass information exempted from disclosure under the deliberative process privilege or as law enforcement sensitive." Def. Opp. at 17, 18. The Court need not linger long on these. Plaintiffs are not inquiring into the merits of individual parole determinations. Rather, they seek the documentation to confirm that the Government is, as required by the preliminary injunction, engaging in a process including "individualized determinations" for each class member. See PI Order, ¶¶ 3–4.

Nor does the privilege claim give the Court pause. The Government contends that Plaintiffs' request "is . . . so broad that it is virtually certain to encompass information exempted from disclosure under the deliberative process privilege or as law enforcement sensitive," although "Defendants cannot presently say which documents and information might fall under either or both of these exemptions." Def. Opp. at 18. ICE has not invoked either privilege with sufficient specificity. See Ameziane v. Obama, 620 F.3d 1, 6 (D.C. Cir. 2010) (requiring "at a minimum, a 'specific,' 'tailored' rationale for protecting a general category of information, and a precise designation of each particular item of information" withheld as law-enforcement sensitive) (quoting Parhat v. Gates, 532 F.3d 834, 853 (D.C. Cir. 2008)); Public Citizen, Inc. v. Office of Management & Budget, 598 F.3d 865, 874–75 (D.C. Cir. 2010) (finding "blanket application" of deliberative-process privilege insufficient to support withholding). Even if it had, it is not clear that the documentation contains deliberative or law-enforcement sensitive information. Rather, the worksheets contain a factual account of a decision already rendered — a recitation that is not privileged. See In re Sealed Case, 121 F.3d 729, 737 (D.C. Cir. 1997).

9

The Court's conclusion is reinforced by a similar recent court decision on an essentially identical issue. A district court in New Jersey determined that neither invocation could support withholding of the parole-determination worksheets because they include only "a series of 'yes or no' factual questions" and "brief factual conclusions" and do not contain "any information related to a past, ongoing, or potential law enforcement investigation." D.A. v. Nielsen, 2018 WL 3158819, at *5, *7 (D.N.J. June 28, 2018).

    C.    Discovery for Defendants

Defendants last rejoin that, if Plaintiffs are permitted discovery, "fundamental fairness dictates that [the Court] allow Defendants" discovery as well — *e.g.*, information relating to the extent of declarants' experience with parole determinations and the "specific facts underlying the declarants' multiple factual and legal conclusions." Def. Opp. at 27. The Court cannot agree. Of course, Defendants are correct that, as to the merits, "discovery must be a two-way street." Id. (quoting Wardius v. Oregon, 412 U.S. 470, 475 (1973)). The preliminary injunction, however, is a street that runs only one way. At issue here is simply Defendants' compliance with the Order. Allowing the Government discovery on the merits would, at this stage, be premature.

**III.    Conclusion**

For the foregoing reasons, the Court will grant Plaintiffs' Motion for Limited Discovery. A separate Order consistent with this Opinion will issue this day.

                                                /s/ James E. Boasberg
                                              JAMES E. BOASBERG
                                              United States District Judge

Date: October 22, 2018