# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ANSLEY DAMUS, *et al.*,

    Plaintiffs,

    v.

KIRSTJEN M. NIELSEN, *et al.*,

    Defendants.

Civil Action No. 18-578 (JEB)

## MEMORANDUM OPINION

Does the Department of Homeland Security have a policy or practice of detaining asylum-seekers in violation of its own guidance or regulations? The Court issued an Opinion on July 2, 2018, finding a likelihood that Defendants do have such a policy, leading it to enter a preliminary injunction. The Opinion did not, however, rule on DHS's Motion to Dismiss, which was filed amid briefing on preliminary relief. The parties now ask the Court to resolve that Motion.

As the Government has acknowledged, most of its arguments in favor of dismissal of Plaintiffs' Administrative Procedure Act claims are foreclosed by the prior Opinion. The question that remains is whether Defendants' actions also violate the Due Process Clause. The Court, however, need not weigh in on this thorny constitutional issue. The "cardinal principle of judicial restraint" is that "if it is not necessary to decide more, it is necessary not to decide more." PDK Labs., Inc. v. DEA, 362 F.3d 786, 799 (D.C. Cir. 2004) (concurring opinion of Roberts, J.). Since a decision on the extent of the asylum-seekers' due-process rights will not at this point affect the outcome of this case, avoidance is the proper course. The Court will, accordingly, deny the Motion to Dismiss this count, but it will do so without prejudice; as a

1

result, in the event the constitutional claim ultimately becomes germane to adjudicating the rights of the parties, the Court may revisit it. Separately, the Court will grant DHS's Motion to Dismiss two individual Defendants from this case.

I.  **Background**

The circumstances underlying this litigation were recounted at length in the Court's prior Opinion. See Damus v. Nielsen, 313 F. Supp. 3d 317 (D.D.C. 2018). Only a short summary is thus needed to set the stage. The Court begins with a refresher on the legal landscape and then turns to the procedural history of this case.

Under the Immigration and Nationality Act, non-citizens who seek asylum upon their arrival in the United States are referred to interviews to determine whether they have a credible fear of persecution or torture in their home countries. See 8 U.S.C. § 1225(b)(1)(A)(ii). If the interviewing officer finds that such a fear exists, the individual "shall be detained for further consideration of the application for asylum." Id. § 1225(b)(1)(B)(ii). This detention authority, however, is not "entirely inflexible." Damus, 313 F. Supp. 3d at 323. Instead, asylum-seekers who are not security or flight risks can be paroled into the United States "for urgent humanitarian reasons or significant public benefit." 8 C.F.R. § 212.5(b). In a 2009 Directive, Immigration and Customs Enforcement explained that parole would be appropriate under these provisions when an asylum-seeker establishes his identity and demonstrates that he is neither a flight risk nor a danger to the public. See ECF No. 22-1 (ICE Directive 11002.1), ¶ 6.2. This Directive also requires individualized assessments, written notices of the process, and explanations of decisions denying parole. Id., ¶¶ 6.1, 6.5.

In March 2018, nine asylum-seekers who were detained after being denied parole filed this suit. See ECF No. 3 (Compl.), ¶¶ 1–2. On behalf of a class of similarly situated Plaintiffs,

they asserted that five particular ICE Field Offices were not providing the individualized determinations required by the 2009 Directive. Id., ¶¶ 14–17. In support, they pointed to parole-denial rates at those offices nearing 100%, an almost complete reversal from the minimal denial rates maintained in the previous administration. Id., ¶¶ 37–39. Plaintiffs alleged that these actions violated the Administrative Procedure Act and the Due Process Clause. Id., ¶¶ 66–80. Soon thereafter, they filed motions for provisional class certification and for a preliminary injunction, which the Government opposed. See ECF Nos. 11 & 17. The Government also filed a Motion to Dismiss. See ECF No. 22 (MTD). Granting the asylum-seekers' motions, the Court entered an Order enjoining DHS from "denying parole to any provisional class members absent an individualized determination, through the parole process, that such provisional class member presents a flight risk or a danger to the community." ECF No. 33 (PI Order) at 1. DHS's Motion, meanwhile, was held in abeyance. See Minute Order of July 10, 2019. After subsequent proceedings in which Plaintiffs were granted limited discovery related to the Government's compliance with the injunction, see ECF Nos. 41 & 52, the parties now ask the Court to rule on Defendants' Motion.

## II.     Legal Standard

In evaluating their Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant [P]laintiff[s] 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253–54 (D.C. Cir. 2005). The Court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference

3

unsupported by the facts set forth in the Complaint. See Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citation omitted). For a plaintiff to survive a 12(b)(6) motion, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).

## III. Analysis

The Court first addresses the Government's arguments in favor of dismissing the APA claims, all of which were addressed by the prior Opinion. It then moves on to the due-process count and two individual Defendants.

### A. APA Claims

There is no need to linger on the APA claims, since DHS's objections on that score were squarely rejected in the Court's Opinion granting the motion for a preliminary injunction. Defendants contend that these causes of action should be dismissed because (1) the Court lacks jurisdiction under the INA to grant Plaintiffs relief; and (2) the claims are unsupported by sufficient factual allegations. See MTD at 10–15. As to the first, the Court previously concluded that the "alleged jurisdictional hurdles [we]re easily cleared by the asylum-seekers, and that their claims [could] therefore proceed." Damus, 313 F. Supp. 3d at 327. With regard to the second, the Court found, based on the "drastic decline in parole-grant rates at the five ICE Field Offices, and the affidavits by the named Plaintiffs and their counsel regarding the

4

processing of their parole applications," that "Plaintiffs have demonstrated a likelihood of success on the merits of their [] claim that Defendants are not abiding by their own policies and procedures." Id. at 341. As the Government acknowledged in a recent status conference, see Status Conf. of Feb. 7, 2019, these conclusions foreclose its only arguments for dismissing these claims.

### B. Due-Process Claim

The Opinion did not, conversely, resolve Defendants' position on the due-process claim. The Government asserts that it should be dismissed because Plaintiffs, as non-citizens detained upon their arrival into the United States, have no due-process rights beyond those bestowed on them by Congress. See MTD at 16 (citing Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953)). The Court found it unnecessary to rule on this claim for purposes of the preliminary injunction because the asylum-seekers achieved all the relief they then sought through victory on their APA claims. Likewise, it need not decide the merits of it now. This is so for two reasons. First, the merits of the constitutional cause of action rise and fall in relevant part with the merits of Plaintiffs' APA claims. And second, the asylum-seekers request the same relief from both. Resolving the matter will therefore have no ultimate effect on the relative success of the parties or the breadth of relief awarded. The Court will thus adhere to the "longstanding principle of judicial restraint requir[ing] that courts avoid reaching constitutional questions in advance of the necessity of deciding them." Camreta v. Greene, 563 U.S. 692, 705 (2011) (citations omitted).

   1. *The Merits*

To start, under the facts alleged, Plaintiffs cannot prevail on their due-process claim without also prevailing on their APA ones. The linchpin of their APA argument is that DHS has a

5

policy or practice of failing to provide asylum-seekers the individualized parole determinations required by law. See Compl., ¶¶ 66–74; ECF No. 17 (PI Motion) at 16–32; ECF No. 24 (Opp. to MTD) at 3–15. There is little question that such a policy or practice, if it exists, would violate the APA. The crux of the asylum-seekers' due-process claim is the same: DHS's allegedly unconstitutional practice of "refus[ing] to provide individualized parole determinations." PI Mot. at 39 (formatting modified). In order to succeed on their due-process claim, therefore, the asylum-seekers must prove that DHS has a policy or practice of refusing to provide individualized parole determinations. Yet once they have so proven, they will have necessarily prevailed on their APA claim. Resolving the legal dispute about Plaintiffs' constitutional rights is thus unnecessary to determining who will triumph on the merits in this case.

Besides being unnecessary, deciding the due-process claim would be no walk in the park. Courts across the country have divided on the right answer. Compare Rosales-Garcia v. Holland, 322 F.3d 386, 411–15 (6th Cir. 2003) (*en banc*) (holding that persons subject to immigration detention upon arrival in United States are protected by Due Process Clause), and Perez v. Decker, 2018 WL 3991497, at *3–4 (S.D.N.Y. Aug. 20, 2018) (same), with Borrero v. Aljets, 325 F.3d 1003, 1005–08 (8th Cir. 2003) (holding that persons detained at border do not have judicially enforceable due-process rights), and Aracely, R. v. Nielsen, 319 F. Supp. 3d 110, 144 (D.D.C. 2018) (concluding that due process does not entitle asylum-seekers to individual hearings). Last year, with the issue squarely teed up, the Supreme Court declined to resolve it. See Jennings v. Rodriguez, 138 S. Ct. 830, 851 (2018). These disagreements counsel against this Court's weighing in unnecessarily, particularly when the parties have given it less than ten total pages of briefing. See PI Mot. at 36–41; MTD at 15–17; Opp. at 16–17.

6

2. *Relief*

Plaintiffs also seek equivalent relief on their due-process and APA claims. If they win on the latter, the asylum-seekers will presumably obtain permanent injunctive relief requiring DHS to provide them with the individualized parole determinations required by the Parole Directive. See Compl., ¶ c. As the crux of the former is that the Due Process Clause requires individualized parole determinations, the relief they would be accorded if successful would also be the parole determinations to which they claim to be entitled. See Salazar v. Buono, 559 U.S. 700, 718 (2010) ("A court must find prospective relief that fits the remedy to the wrong or injury that has been established.").

Plaintiffs, the Court acknowledges, do briefly hint at a different due-process claim that may seek potentially broader relief. In opposing dismissal of several individual Defendants — an issue the Court addresses below — they say in a footnote that "Plaintiffs' complaint also includes a claim that Due Process requires a custody hearing before an immigration judge as a neutral decision-maker when detention becomes unreasonably prolonged." Opp. at 17 n.5. Based on the parties' positions and filings throughout this case, however, the Court is not convinced that Plaintiffs are really pursuing such a claim. As far as the Court can tell, the footnote is the only place this theory is mentioned in any briefing. The silence in their motion for class certification is particularly notable. The proposed class, which the Court provisionally certified, includes some asylum-seekers who have not been detained for a prolonged period and thus would not be entitled to the relief sought for this claim. But "Rule 23(b)(2)" — the basis for certification here — "applies only when a single injunction or declaratory judgment would provide relief to each member of the class." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 360

(2011). A class drawn to include persons detained for any amount of time may face difficulty pursuing a class-wide claim hinging on prolonged detention.

As to the Complaint, it implies that Plaintiffs may have a separate due-process claim in a single legal assertion: "[P]articularly where detention is prolonged, due process requires a custody hearing before a neutral-decision maker to determine if detention is necessary." Compl., ¶ 79. It also requests that the Court "[e]nter an order enjoining Defendants from subjecting Plaintiffs and proposed class members to prolonged detention absent a custody hearing before an immigration judge." Id., ¶ d. But that is it. Considered as a whole, the Court finds that the asylum-seekers have not pursued a constitutional claim based on prolonged detention. The broader relief to which they might be entitled from such a claim thus does not necessitate a decision on the due-process issue. "If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality unless such adjudication is unavoidable." Spector Motor Serv. v. McLaughlin, 323 U.S. 101, 105 (1944). The Court, accordingly, will not decide the due-process question today.

One outside possibility is worth flagging: that the nature of the claims being litigated in this case will matter for determining the propriety of discovery. The general rule, of course, is that discovery is not available in an APA case — instead, such cases are litigated on the basis of the administrative record. See Air Transp. Ass'n of America v. Nat'l Mediation Bd., 663 F.3d 476, 487 (D.C. Cir. 2011). No such rule exists in constitutional cases. At this point, though, the Court is skeptical that any difference in the substantive basis of the claims will matter to the availability of discovery. See Bellion Spirits, LLC v. United States, 335 F. Supp. 3d 32, 41–45 (D.D.C. 2018). In any event, if the nature of the claims is dispositive in a subsequent discovery

motion, the Court can consider the Government's arguments in favor of dismissing the due-process claim at that point. For now, the proper course is to deny the Motion to Dismiss without prejudice.

    C.  <u>Individual Defendants</u>

The Court last turns to the Government's independent argument that certain individual Defendants — namely, the Attorney General and the Director of the Executive Office for Immigration Review — should be dismissed. <u>See</u> MTD at 17–18. Plaintiffs oppose on the ground that they maintain a separate due-process claim seeking bond hearings for asylum-seekers in prolonged detention and that such hearings would be supervised by the Attorney General and EOIR Director. <u>See</u> Opp. at 17 n.5. As the Court has just explained, however, it is not persuaded that Plaintiffs are pursuing any such claim. The Court thus agrees with the Government that those individual Defendants should be dismissed.

**IV.**    **Conclusion**

For these reasons, the Court will grant in part and deny in part Defendants' Motion to Dismiss. A separate Order so stating will issue this day.

                                              <u>/s/ *James E. Boasberg*</u>
                                              JAMES E. BOASBERG
                                              United States District Judge

Date:  <u>February 28, 2019</u>