# EXHIBIT B

## DECLARATION OF BROOKE WATSON

I, Brooke Watson, upon my personal knowledge, hereby submit this declaration and, if called to testify to these facts, could and would do so competently.

1. I am a Data Scientist at the American Civil Liberties Union national office, where I conduct quantitative analyses, perform statistical hypothesis tests, and use standard data science and machine learning techniques to study the impacts of government policies on populations. Prior to my current role, I worked as Research Scientist at the nonprofit organization EcoHealth Alliance, where I used mathematical models and statistical techniques to research infectious disease emergence. I hold a Master's degree in Epidemiology from the London School of Hygiene and Tropical Medicine and a Bachelor's degree in Microbiology from the University of Tennessee.

**Parole Decisions by the Los Angeles Field Office Since the Preliminary Injunction Order**

2. To analyze the numbers set forth in paragraphs 6-15, *infra*, I used the table provided by Defendants reporting data on parole decisions by the U.S. Immigration and Customs Enforcement ("ICE") Los Angeles Field Office. *See* ECF No. 75. This table provides information after the entry of the preliminary injunction order in this case on July 2, 2018 through March 17, 2019.

3. I used the statistical programming software, R, to extract the raw data from the PDF provided by Defendants. I identified one duplicated alien number ("A Number") in the table and removed this duplicate entry.

4. I then tabulated the number of parole determinations conducted and the parole grants and denials, and compared these numbers with the totals provided by Defendants in their status report (*See* ECF No. 72).

1

5. I also tabulated how many class members remained in ICE custody as of March 17, 2019 and how many class members had been released from ICE custody as of that date. The individuals who remain in ICE custody are missing both a "Date Left AOR Custody" and a "Reason for Leaving AOR Custody" on Defendants' table.[1] By contrast, the individuals who were released from ICE custody have a "Date Left AOR Custody," and a "Reason for Leaving AOR Custody."

6. I identified 315 unique class members in the Los Angeles Field Office.[2]

7. Of those class members, 242 individuals received parole decisions from the Los Angeles Field Office.

8. 73 of the 315 class members—or 23% of class members—have no recorded parole determination.

9. 25 of the class members lacking a parole determination were still in ICE custody as of March 17, 2019.

10. The Los Angeles Field Office granted parole in 34 cases—or in 14% of cases in which it made a parole determination.[3] Accounting for the class members who did not receive parole determinations, 34 out of a total of 315 class members were granted parole, meaning the effective parole rate was 11%.

11. The Los Angeles Field Office denied parole based on "flight risk" in 208 cases—or in 86% of cases in which it made a parole determination.

---

[1] Here I understand "AOR" refers to the Los Angeles "Area of Responsibility" that is supervised by the Los Angeles Field Office.
[2] Defendants' spreadsheets reported 316 class members in the Los Angeles Field Office, but included one duplicate entry for the same class member.
[3] Defendants reported 35 parole grants due to a duplicate entry for the same class member.

2

12.     The Los Angeles Field Office denied parole based on "danger to the community" in 0 cases.

13.     Of the 208 class members in the Los Angeles Field Office who were denied parole, 95 class members—or 46%—were still in custody as of March 17, 2019.

14.     Of the 174 class members who were denied parole and detained six months or more, 55 class members—or 32% of such class members—were released on an "IJ bond." My understanding is that an "IJ bond" refers to a bond set at a bond hearing before an immigration judge ("IJ") pursuant to the permanent injunction ordered in *Rodriguez v. Holder*, No. CV 07-3239 (C.D. Cal. Aug. 6, 2013) (ECF No. 353) (requiring an IJ bond hearing after six months of detention).

15.     Of the 208 class members who were denied parole, 26 class members—or 13% of such class members—were released from detention after winning asylum or other immigration relief. Defendants' data does not report how many class members' asylum cases are still pending. Defendants' data also does not report how many class members eventually won immigration relief *after* they were released from custody on IJ bonds, only those who won relief while still in custody.

**Parole Decisions by the Los Angeles Field Office in 2011-2013**

16.     To analyze the numbers set forth in paragraph 18, *infra*, I used the R statistical programming software to analyze Microsoft Excel spreadsheets that ICE produced in response to a request under the Freedom of Information Act ("FOIA"), FOIA Request No. 2016-ICFO-1574. These spreadsheets provide monthly reports on parole decisions by the ICE Field Offices from January 2011 to September 2017.

3

17. I tabulated parole grant and denial rates in the years 2011-2013 by filtering to only those parole decisions conducted by the Los Angeles Field office (with DCOs of "LOS", "ADE", and "OCDF"), grouping by year for the years 2011, 2012, and 2013, and summarizing the total number of grants and denials per year. I then divided the number of parole grants by the number of total entries for which a decision was made to get the percent of decisions that were granted parole.

18. The parole grant rate for the Los Angeles Field Office for January 2011 through December 2013 was 85%, with 502 total parole grants and 87 total parole denials reported.

I declare under penalty of perjury of the laws of the District of Columbia and the United States that the foregoing is true and correct.

Executed in New York, New York on April 11, 2019.

_____
Brooke Watson

4