# EXHIBIT 2

**DECLARATION OF CARLOS SPECTOR, ESQ.**

I, Carlos Spector, Esq., declare as follows:

I make this declaration based on my own personal knowledge and if called to testify I could and would do so competently as follows:

1.  I am a solo practitioner in El Paso, TX. I graduated from the Texas Southern University Law School. I was admitted to the Texas State Bar in 1988. I am bilingual in Spanish and English.

2.  I have practiced in El Paso for 28 years. Throughout that time, I have represented clients in a full range of immigration-related matters except for employment-based immigration issues. Most of my clients are in immigration proceedings. About one quarter of my clients are arriving asylum seekers.

3.  I currently represent detained immigrants at several detention centers run by Department of Homeland Security (DHS) Immigration and Customs Enforcement (ICE) under the El Paso ICE Field Office jurisdiction. This currently includes the El Paso Processing Center, which is located in El Paso, TX, the Otero County Processing Center, which is located in Chaparral, NM, and the West Texas Detention Facility, which is located in Sierra Blanca, TX.

4.  In the past year, I filed about 35 or 40 requests for arriving asylum seeker clients to be released from detention under the ICE Directive No. 11002.1: Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture ( "Parole Directive").

5.  In the past, the majority of my clients who met the Parole Directive criteria for release were granted parole. However, all of the parole requests I submitted in the past year for arriving

1

asylum seeker clients have been denied. Based on my experience, the majority of my clients have met the criteria for release under the Parole Directive, as they have had proof of their identity, were not a danger to the community because they had no criminal history in the United States or their home country, and were not a flight risk because they had sponsors in the community who were U.S. citizens or Lawful Permanent Residents.

6.   I do not recall ICE interviewing my clients about parole requests I have submitted for them.

7.   Typically, my clients have received a denial notice from ICE about one month after submitting the request.

8.   When denying a parole request, ICE issues a boilerplate form with a reason ticked for the denial. The reasons listed for each possible box are "flight risk," "identity," "danger to the community," or "additional factors." Flight risk is the most common reason for denial. In one case, my office was told by an ICE officer that a Mexican arriving asylum seeker client was denied parole as a "flight risk" just because they were a recent arrival.

9.   As far as I recall, my arriving asylum seeker clients remain in immigration detention on average for about six months. The longest time one of my arriving asylum seeker clients has remained in immigration detention was two and a half years and this client was only released after I prepared and filed a petition for *habeas corpus*, which a judge in the U.S. District Court for the Western District of Texas granted. That case was *Maldonado v. Macias*, 150 F.Supp.3d 788 (W.D. Tex., 2015).

10. Based on my experience, I do not think that *pro se* detainees are equipped to file their own individual law suits or *habeas* actions to challenge their prolonged detention. Most

2

attorneys that I know struggle with this type of a legal action, let alone a detained asylum seeker who likely does not speak or write English or understand the complicated United States legal system for filing such a claim.

11. Many of the arriving asylum seekers I have represented grow very despondent as a result of their prolonged detention and at least two that I recall gave up their asylum claims because they could not face remaining in detention any longer. I also recall the case of a female Mexican asylum seeker who sought protection with her five month old infant, whom she was still breastfeeding. Upon seeking protection, DHS officials separated her from her infant. Her child was released into the care of her sister who was a Lawful Permanent Resident living in the community; the sister was same family member was acting as the sponsor on my client's parole request. My client had no criminal history and had government-issued proof of her identity. ICE denied her parole request and she remained in detention for eight months until an immigration judge granted her withholding of removal under the Convention Against Torture. After being released from immigration detention, she was required to wear an ankle monitoring device for an additional 15 months.

12. I reserve the right to amend or supplement this report as appropriate upon receipt of additional information or documents.

I declare under penalty of perjury under the laws of the United States and the District of Columbia that the foregoing is true and correct.

Executed this 28th day of Feb, 2018 at El Paso, TX

Carlos Spector, Esq.

3