## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Ansly DAMUS, et al., on behalf of themselves
and others similarly situated,

              *Plaintiffs*,

      v.

Kirstjen NIELSEN, Secretary of the Department
of Homeland Security, in her official capacity, *et
al.*,

              *Defendants*.

Case No:  1:18-cv-00578-JEB

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
## LEAVE TO INTERVENE AND TO UNSEAL JUDICIAL DOCUMENTS

Victoria Baranetsky (*pro hac vice* pending)
General Counsel
The Center for Investigative Reporting
1400 65th St., Suite 200
Emeryville, CA 94608
Telephone: 510-982-2890, Ext. 390
Email: vbaranetsky@revealnews.org

Chelsea T. Kelly (DC Bar No. 1045673)
Davis Wright Tremaine LLP
1301 K Street NW, Suite 500 East
Washington, DC 20005
Phone:  (703) 850-6317
Fax:  (202) 973-4450
Email:  chelseakelly@dwt.com

*Counsel for Third-Party Intervenor The
Center for Investigative Reporting*

**TABLE OF CONTENTS**

I.  PRELIMINARY STATEMENT ...................................................................... 1

II.  BACKGROUND……………………………………………………………… 2

    A.  THE DOCUMENTS THAT CIR SEEKS TO UNSEAL ............................................. 2

    B.  PROPOSED INTERVENOR'S INTEREST ON BEHALF OF THE PUBLIC ......... 6

III.  ARGUMENT……………………………………………………………….9

    A.  CIR SHOULD BE PERMITTED TO INTERVENE FOR THE LIMITED
    PURPOSE OF UNSEALING COURT RECORDS. ......................................... 9

    B.  THERE IS A STRONG PRESUMPTION THAT THE RECORDS IN THIS
    CASE ARE OPEN TO THE PUBLIC.......................................................... 10

        1.  The First Amendment and Common Law Rights of Access Apply to Civil
           Court Records Involving Detainment to Ensure Accountability and
           Integrity........................................................................................ 10

        2.  The Court Should Unseal the Parole Determinations According to the First
           Amendment Right of Access. ............................................................. 11

        3.  Continued Blanket Sealing of Defendants' Parole Determinations Cannot
           Serve Any Compelling Governmental Interest, Especially Where
           Anonymity Can Easily Be Provided Through Redactions. ................................ 16

        4.  The Court Should Unseal the Parole Determinations According to the
           Common Law Right of Access. .......................................................... 18

IV.  CONCLUSION.................................................................................... 24

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Abdi v. Duke,*
  280 F. Supp. 3d 373, 2017 WL 5599521 (W.D.N.Y. Nov. 17, 2017) .................................... 15

*Abdi v. McAleenan,*
  405 F. Supp. 3d 467 (W.D.N.Y. 2019) ................................................................................ 15

*Ahad v. Lowe,*
  235 F. Supp. 3d 676 (M.D. Pa. 2017) ................................................................................. 20

*Battle v. FAA,*
  393 F.3d 1330 (D.C. Cir. 2005) .......................................................................................... 21

*Bismullah v. Gates,*
  501 F.3d 178 (D.C. Cir. 2007) ............................................................................................ 22

*Boumediene v. Bush,*
  553 U.S. 723 (2008) ............................................................................................................. 15

*Brown & Williamson Tobacco Corp. v. FTC,*
  710 F.2d 1165 (6th Cir. 1983) ............................................................................................ 13

*Cable News Network, Inc. v. FBI,*
  384 F. Supp. 3d 19 (D.D.C.) (Boasberg, J.), *recons. denied,* 401 F. Supp. 3d
  187 (D.D.C.), *appeal filed,* No. 19-5278 (D.C. Cir. Oct. 21, 2019) ...........................19, 20, 23

*Damus v. Nielson,*
  313 F. Supp. 3d 317 (D.D.C. 2018) ...........................................................................3, 4, 21

*Damus, et al. v. Nielsen, et al.,*
  No. 1:18-cv-00578 (D.D.C.) ...............................................................................................4, 5

*Dhiab v. Trump,*
  852 F.3d 1087 (D.C. Cir. 2017) .....................................................................................10, 13

*Doe v. Islamic Salvation Front,*
  257 F. Supp. 2d 115 (D.D.C. 2003) .................................................................................... 17

*Doe v. MAMSI Life & Health Ins. Co.,*
  471 F. Supp. 2d 139 (D.D.C. 2007) .................................................................................... 17

*Doe v. Rumsfeld*,

    341 F. Supp. 2d 1 (D.D.C. 2004) ........................................................................17

*Doe v. Stephens*,

    851 F.2d 1457 (D.C. Cir. 1988) .........................................................................17

*Doe v. U.S. Dep't of Justice*,

    660 F. Supp. 2d 31 (D.D.C. 2009) ......................................................................17

*Does I Thru XXIII v. Advanced Textile Corp.*,

    214 F.3d 1058 (9th Cir. 2000) ...........................................................................17

*Douglas Oil Co. of Cal. v. Petrol Stops Nw.*,

    441 U.S. 211 (1979) ...........................................................................................16

*EEOC v. Nat'l Children's Ctr., Inc.*,

    98 F.3d 1406 (D.C. Cir. 1996) .....................................................................20, 24

*Globe Newspaper Co. v. Super. Ct.*,

    457 U.S. 596 (1982) ..........................................................................9, 11, 16, 22

*Herron v. Fannie Mae*,

    No. CV 10-943 (RMC), 2016 WL 10677615 (D.D.C. June 20, 2016) ...................18

*Hyatt v. Lee*,

    251 F. Supp. 3d 181 (D.D.C. 2017) ...................................................................23

*In re Appl. of N.Y. Times Co. for Access to Certain Sealed Court Records*,

    585 F. Supp. 2d 83 (D.D.C. 2008) .............................................................16, 22, 23

*In re Capital Cities/ABC, Inc.*,

    913 F.2d 89 (3d Cir. 1990) .................................................................................17

*In re Cont'l Ill. Sec. Litig.*,

    732 F.2d 1302 (7th Cir. 1984) ...........................................................................13

*In re Fort Totten Metrorail Cases*,

    960 F. Supp. 2d 2 (D.D.C. 2013) .........................................................................9

*In re Grand Jury Matter*,

    906 F.2d 78 (3d Cir. 1990) .................................................................................13

*In re Grand Jury Subpoena, Judith Miller*,

    493 F.3d 152 (D.C. Cir. 2007) ...........................................................................17

*In re Guantanamo Bay Detainee Litig.*,

    624 F. Supp. 2d 27 (D.D.C. 2009) ............................................................................13, 14, 15

*In re Hearst Newspapers, L.L.C.*,

    641 F.3d 168 (5th Cir. 2011) ...................................................................................................12

*In re Knight Publ'g Co.*,

    743 F.2d 231 (4th Cir. 1984) ..................................................................................................18

*In re Leopold to Unseal Certain Elec. Surveillance Appls. & Orders*,

    964 F.3d 1121 (D.C. Cir. 2020) ..........................................................................................9, 11

*In re Motions of Dow Jones & Co.*,

    142 F.3d 496 (D.C. Cir. 1998) ................................................................................................18

*In re Reporters Comm. for Freedom of the Press*,

    773 F.2d 1325 (D.C. Cir. 1985) ................................................................................................9

*In re Washington Post Co.*,

    807 F.2d 383 (4th Cir. 1986) ..................................................................................................22

*Int'l Union, United Mine Workers of Am. v. Bagwell*,

    512 U.S. 821 (1994).................................................................................................................12

*Jennings v. Rodriguez*,

    138 S. Ct. 830 (2019)................................................................................................................8

*Kamakana v. City & Cty. of Honolulu*,

    447 F.3d 1172 (9th Cir. 2006) ................................................................................................11

*Levine v. United States*,

    362 U.S. 610 (1960).................................................................................................................21

*Lugosch v. Pyramid Co. of Onondaga*,

    435 F.3d 110 (2d Cir. 2006)....................................................................................................13

*Maldonado v. Macias*,

    150 F. Supp. 3d 788 (W.D. Tex. 2015)...................................................................................20

*Metlife, Inc. v. Fin. Stability Oversight Council*,

    865 F.3d 661 (D.C. Cir. 2017) ................................................................................................24

*N. Mariana Islands v. United States*,

    686 F. Supp. 2d 7 (D.D.C. 2009) ........................................................................................4, 21

*N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*,
    684 F.3d 286 (2d Cir. 2012) ................................................................12

*Newsday LLC v. Cty. of Nassau*,
    730 F.3d 156 (2d Cir. 2013) ................................................................13

*Ngo v. INS*,
    192 F.3d 390 (3d Cir. 1999) ..........................................................15, 20

*Nightingale v. U.S. Citizenship & Immigration Servs.*,
    333 F.R.D. 449 (N.D. Cal. 2019) ........................................................15

*Nixon v. Warner Commc'ns, Inc.*,
    435 U.S. 589 (1978) ............................................................................18

*Press-Enterprise Co. v. Super. Ct.*,
    464 U.S. 501 (1984) ....................................................10, 11, 12, 16, 18

*Press-Enterprise Co. v. Super. Ct.*,
    478 U.S. 1 (1986) ..........................................................10, 11, 14, 16

*Publicker Indus., Inc. v. Cohen*,
    733 F.2d 1059 (3d Cir. 1984) ..............................................................13

*R.I.L-R. v. Johnson*,
    80 F. Supp. 3d 164 (D.D.C. 2015) ..................................................8, 17

*Richmond Newspapers, Inc. v. Virginia*,
    448 U.S. 555 (1980) ..............................................................9, 12, 13

*Roe v. Aware Woman Ctr. for Choice, Inc.*,
    253 F.3d 678 (11th Cir. 2001) ............................................................17

*Rosales-Garcia v. Holland*,
    322 F.3d 386 (6th Cir. 2003) ..........................................................15, 20

*Rushford v. New Yorker Magazine*,
    846 F.2d 249 (4th Cir. 1988) ..............................................................13

*Sealed Plaintiff v. Sealed Defendant*,
    537 F.3d 185 (2d Cir. 2008) ................................................................17

*SEC v. Am. Int'l Grp.*,
    712 F.3d 1 (D.C. Cir. 2013) ................................................................19

*Steenholdt v. FAA*,

    314 F.3d 633 (D.C. Cir. 2003) ............................................................................21

*Tavoulareas v. Washington Post Co.*,

    111 F.R.D. 653 (D.D.C. 1986) ..........................................................................10

*U.S. ex rel. Durham v. Prospect Waterproofing, Inc.*,

    818 F. Supp. 2d 64 (D.D.C. 2011) .....................................................................23

*United States v. Alcantara*,

    396 F.3d 189 (2d Cir. 2005) ...............................................................................12

*United States v. Doe*,

    356 F. App'x 488 (2d Cir. 2009) ........................................................................18

*United States v. El-Sayegh*,

    131 F.3d 158 (D.C. Cir. 1997) ...........................................................9, 18, 19, 22

*United States v. Hubbard*,

    650 F.2d 293 (D.C. Cir. 1980) .....................................................................20, 24

*United States v. Index Newspapers LLC*,

    766 F.3d 1072 (9th Cir. 2014) ......................................................................15, 21

*United States v. Rosen*,

    487 F. Supp. 2d 703 (E.D. Va. 2007) ................................................................21

*United States v. Schlette*,

    842 F.2d 1574 (9th Cir. 1988) ...........................................................................12

*United States v. Thompson*,

    199 F. Supp. 3d 3 (D.D.C. 2016) .......................................................................23

*Wash. Legal Found. v. U.S. Sentencing Comm'n*,

    89 F.3d 897 (D.C. Cir. 1996) .............................................................................19

*Washington Post v. Robinson*,

    935 F.2d 282 (D.C. Cir. 1991) .....................................................................10, 11

**State Cases**

*Mokhiber v. Davis*,

    537 A.2d 1100 (D.C. 1988) ...............................................................................19

**Constitutional Provisions**

U.S. Const. amend. I .................................................................................... *passim*

U.S. Const. amend. V ..................................................................................................................3, 20

U.S. Const. amend. XIV ..................................................................................................................20

**Federal Statutes**

8 U.S.C. § 1182(d)(5)(A) ...................................................................................................................2

Administrative Procedure Act, the INA .............................................................................................3

FOIA ..................................................................................................................................................15

Immigration and Nationality Act ........................................................................................................2

INA ......................................................................................................................................................2

**Rules**

Federal Rules of Civil Procedure Rule 24 .........................................................................................1

**Regulations**

8 C.F.R. § 212.5(b) ............................................................................................................................2

8 C.F.R. § 235.3(c) .........................................................................................................................2, 3

The Center for Investigative Reporting, d/b/a Reveal from The Center for Investigative Reporting ("CIR" or "Proposed Intervenor"), by and through undersigned counsel, respectfully submits this memorandum of points and authorities in support of its motion seeking leave to intervene under Rule 24 of the Federal Rules of Civil Procedure, for the limited purpose of requesting the unsealing of Defendants' parole determinations for the benefit of the public interest.

## I.   PRELIMINARY STATEMENT

The policies and practices of the Department of Homeland Security ("DHS"), including how DHS adjudicates asylum cases, and detains individuals throughout the process are some of the most discussed issues before our nation today.  Indeed, DHS's detention policies have become a matter of heightened public concern since the rise of COVID-19 escalated the importance of health precautions taken inside detention centers.  This litigation—a class action brought by asylees challenging DHS's failure to follow its parole policies—is thus of immense interest to U.S. citizens and others around the world, who seek to understand whether the government is systematically detaining individuals without the possibility of parole, and equally seek to monitor the government's progress to ensure that justice is done.  None of this is possible if DHS is permitted to keep its monthly productions of parole determinations indefinitely under seal, as is now the case.

Accordingly, CIR, the oldest non-profit investigative newsroom in the country, now moves this Court, on behalf of the public, to unseal Defendants' parole determinations, to better inform the American public about this critically important issue.  Specifically, CIR seeks to vindicate the public's First Amendment and common-law rights of access to judicial records, both of which apply to the parole determinations at issue here.  Although these rights of access may be overcome by compelling and narrowly-tailored government interests in keeping the documents under seal,

no such interests exist here, especially where similar records involving detainees have previously been disclosed.  *See infra* Section III(B)(2-3).  The only possible interest in sealing the parole determinations is protecting Plaintiffs' privacy, but this concern is easily addressed by redacting Plaintiffs' personally identifying information in the documents (*i.e.* redacting names and A-numbers)—to which CIR readily agrees.  Courts have applied such redactions in similar cases involving immigration records.  Otherwise, there is no justification for maintaining government secrecy—for years—especially where, as here, there is great public interest in dissemination.

## II.   BACKGROUND

### A.   THE DOCUMENTS THAT CIR SEEKS TO UNSEAL

On March 15, 2018, Plaintiffs, a group of asylum-seekers detained by DHS pending their asylum hearings, filed this lawsuit against officials at DHS, ICE, and the Attorney General.  *See generally* Compl.  In that process, Plaintiffs alleged that the agency was not following its parole policy called the Parole Directive.  *See* ICE Directive 11002.1, Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture (Dec. 8, 2009), ¶ 6.2., https://www.ice.gov/doclib/dro/pdf/11002.1-hd-parole_of_arriving_aliens_found_credible_fear.pdf (hereinafter, the "Parole Directive") (Declaration of D. Victoria Baranetsky ¶ 3, Ex. 1) (hereinafter, "Baranetsky Decl.").  The Parole Directive requires the agency make individualized parole determinations and follow certain procedural safeguards, and defines the circumstances under which there is a "public interest" in granting parole pursuant to the Immigration and Nationality Act ("INA").  Specifically, the INA states, asylum seekers who do not pose a flight risk or a danger to the community may be paroled by DHS on a "case-by-case basis for urgent humanitarian reasons or significant public benefit."  8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(b); *see also* 8 C.F.R. § 235.3(c).  The Parole Directive

also instructs ICE Detention and Removal Operations field offices to follow detailed procedures in making parole determinations and establishes reporting requirements "to ensure accountability and compliance with [its] procedures." *Id.* Instead of following the Parole Directive, Plaintiffs alleged that Defendants were engaging in systematic detention, noting that five particular ICE Field Offices were denying parole to almost 100% of their detainees. *See generally* Compl. Thus, Plaintiffs filed a motion for preliminary injunction to enjoin Defendants from disregarding their own policy of granting parole, in violation of the Administrative Procedure Act, the INA, and the Due Process Clause of the Fifth Amendment. *See* Dkt. No. 17.

On July 2, 2018, finding that the circumstances merited an "extraordinary form of relief[,]" the Court granted Plaintiffs' motion, and ordered DHS to provide Plaintiffs with individualized parole determinations while this suit was pending. *See* Dkt. No. 33 ¶ 5 (hereinafter, "Preliminary Injunction Order"). In particular, the Court found: "To mandate that ICE provide these baseline procedures to those entering our country—individuals who have often fled violence and persecution to seek safety on our shores—is no great judicial leap. Rather, the issuance of injunctive relief in this case serves only to hold Defendants accountable to their own governing policies and to ensure that Plaintiffs receive the protections they are due under the Parole Directive." *See Damus v. Nielson*, 313 F. Supp. 3d 317, 343 (D.D.C. 2018). In reaching its decision, the Court highlighted the importance of the public interest in parole information. The Court noted: "It is this last factor—'public benefit'—that is the focus of the 2009 Directive . . . . The Directive explains the agency's interpretation of 'public benefit' for the purposes of determining parole . . . ." *Id.* at 324. The Court also found that the public interest factor weighed in favor of preliminary injunctive relief because: "The public interest is served when administrative

agencies comply with their obligations under the APA."  *Id.* at 342 (quoting *N. Mariana Islands v. United States*, 686 F. Supp. 2d 7, 21 (D.D.C. 2009)).

On July 17, 2018, the parties filed a Joint Status Report (Dkt. No. 36) summarizing their meet and confer discussions regarding implementation of the Court's Preliminary Injunction Order.  In this Report, the parties stated that:

> Plaintiffs have asked that, promptly upon completion of parole redeterminations for class members, Defendants will file under seal and provide class counsel with a status report containing, for each class member currently in detention:
>
> • Name, Alien Number, and Detention Facility;
> • Date booked into ICE custody;
> • The date and outcome of the new parole determination, including whether the provisional class member was ordered released, the amount of any bond set, and any conditions of supervision imposed;
> • If bond was set, whether the provisional class member posted bond;
> • If applicable, the date of the provisional class member's release from ICE custody; and
> • If applicable, the reason the provisional class member was denied parole.

*Id.* at 3.  On July 24, 2018, the Court entered a Minute Order requiring Defendants to "submit a report to the Court by August 24, 2018, covering [this] information."  Jul. 24, 2018 Minute Order. After Defendants filed their initial production of parole determinations on August 24, 2018 (Dkt. No. 40), the Court ordered Defendants to "provide by the 24th of each month an updated spreadsheet regarding parole determinations through the 17th of that month" (Aug. 28, 2018 Minute Order).

Before Defendants produced these individualized parole determinations starting on August 24, the parties filed a Stipulation for Protective Order, which the Court entered on August 2, 2018. *See* Dkt. No. 39 (hereinafter, "Protective Order").  The Protective Order states: "For good cause shown . . . all discovery and other materials . . . filed with the Court, in *Damus, et al. v. Nielsen, et al.*, No. 1:18-cv-00578, (D.D.C.), shall be provided subject to the conditions set forth in the

foregoing Stipulated Protective Order." *Id.* at 16.  The Protective Order further provides that if a party wants to file any confidential information "with the Court for any purpose," it "must seek permission of the Court to file the material under seal, unless the Parties agree that the documents can be redacted to remove the Protected Material." *Id.* at 6.

Starting on August 24, 2018 and continuing to the present, Defendants have been automatically filing their monthly productions of parole determinations under seal.  *See* Dkt. Nos. 40, 44, 47, 53, 56, 61, 65, 66, 72, 74, 75, 79, 80, 92, 94, 97, 100, 106, 111, 119, 123, 124, 125, 129, 130, 131, 132, 133, 136, 138.  Defendants never filed a motion seeking the Court's permission to file these materials under seal as seemingly required by the Protective Order, and thus the Court never entered a sealing order considering the First Amendment or common-law implications of such sealing.  *See generally id.*

The case is still ongoing, and the parties' summary judgment motions are due to be filed this fall, as well as Plaintiffs' anticipated motion for a permanent injunction.  *See* Jan. 29, 2020 Minute Order.  Over the course of the past few years, Plaintiffs also briefed a contempt motion arguing that Defendants are violating the requirements of the Court's Preliminary Injunction Order, based on a review of Defendants' monthly productions of parole determinations.  *See* Dkt. No. 77.  On February 7, 2020, the Court ruled on this contempt motion—citing information from Defendants' productions in its Order.  *See* Dkt. No. 128 at 2.  In this Order, the Court noted that it had "directed the Government to file monthly reports reflecting parole determinations at each of the five Field Offices so that it could monitor compliance with the Directive and the injunction." *Id.*

Because of the immense public interest in these parole determinations, counsel for CIR asked counsel for both parties if they would stipulate to the unsealing of these parole

determinations.  Plaintiffs' counsel represented that his clients will not oppose the motion, so long as Plaintiffs' privacy is maintained through easily employed redactions (such as names and A-numbers).  *See* Baranetsky Decl. ¶ 4, Ex. 2.  Defendant's counsel declined to unseal the parole determinations without a court order and represented that it would evaluate the unsealing motion when filed and respond accordingly.  *See id.* ¶ 5, Ex. 3.  Now, CIR files the instant motion to unseal the documents, which are currently in the custody of the Clerk of Court as sealed records of this proceeding.  CIR is committed to making publicly available whatever portion of the records are unsealed in a way that educates the public through its reporting and by providing context for these important documents.

## B.   PROPOSED INTERVENOR'S INTEREST ON BEHALF OF THE PUBLIC

Founded in 1977, Proposed Intervenor CIR is the oldest investigative newsroom in America listened to by millions of public radio listeners around the country and nearly 3 million podcasts listeners every month.  *See About Us,* REVEAL, https://revealnews.org/about-us/ (Baranetsky Decl. ¶ 6, Ex. 4).  CIR operates *Reveal*, an online news site at revealnews.org, and *Reveal*, a weekly public radio show.  *Id.*  It has received numerous awards for its reporting and been a finalist for various awards like the Pulitzer Prize and Oscar for best documentary.  *Id*.  As an investigative newsroom, CIR is uniquely situated to assess the desire of its listeners, viewers, and readers have to view the unsealed court records.  That desire remains voracious.  Given the public outcry surrounding ongoing decisions made by DHS involving asylees as well as other related practices, the public has an immediate and overwhelming interest in understanding the facts surrounding the agency's decision-making over time, particularly those affecting detainees.

Indeed, as recent news media reports have shown, DHS's actions regarding the detention of immigrants are perhaps some of the most reported on stories of the year.  *See* Jonathon Blitzer,

6

*How Stephen Miller Manipulates Donald Trump to Further His Immigration Obsession*, NEW YORKER, Feb. 21, 2020, https://www.newyorker.com/magazine/2020/03/02/how-stephen-miller-manipulates-donald-trump-to-further-his-immigration-obsession (Baranetsky Decl. ¶ 7, Ex. 5); Tara Golshan, *The 2020 Immigration Debate, Explained*, VOX, July 29, 2019, https://www.vox.com/2019/7/29/6741801/2020-democrat-presidential-immigration-debate (Baranetsky Decl. ¶ 8, Ex. 6).   Additionally, public outcry over DHS's actions has led political candidates and members of Congress to call for increased transparency and reform.   *Id.* (summarizing six presidential candidates' plans for reform); Letter from Rep. Jason Crow et al., to Matthew Albence, Acting Director, U.S. Immigration & Customs Enforcement (Apr. 20, 2020), https://crow.house.gov/sites/crow.house.gov/files/Letter%20to%20Acting%20Director%20Albe nce%20to%20Provide%20Non-ICE%20Employee%20COVID-19%20Data.pdf          (Baranetsky Decl. ¶ 9, Ex. 7) (letter from twelve members of Congress requesting increased transparency in ICE's policies).

Additionally, DHS's power to make parole determinations has taken on a new salience during the COVID-19 pandemic, as failure to grant parole can put detainees at substantial risk of contracting the virus in crowded ICE detentions centers.   *See* Laura C. Morel, *Inside ICE Lockdown: Face Masks Made of Socks, No Hand Sanitizer and Growing Tensions*, REVEAL, Apr. 7, 2020, https://www.revealnews.org/article/inside-ice-lockdown-face-masks-made-of-socks-no-hand-sanitizer-and-growing-tensions/ (Baranetsky Decl. ¶ 10, Ex. 8).   The fact that ICE has total discretion to release many of the detainees in its custody, and could unilaterally prevent the "foreseeable disaster" of putting thousands of detainees at risk for COVID-19, has only fed public interest and criticism of the agency's practices.   Noah Lanard, *ICE Is Ignoring a Simple Way to Slow the Spread of Coronavirus: Let People Out of Detention*, MOTHER JONES, Mar. 13, 2020,

https://www.motherjones.com/politics/2020/03/ice-is-ignoring-a-simple-way-to-slow-the-spread-of-coronavirus-let-people-out-of-detention/ (Baranetsky Decl. ¶ 11, Ex. 9).[1]

In providing the American public with access to these important government actions, there is no substitute for the insight and illumination that only the judicial records can provide. *See, e.g.*, Noah Lanard, *7 Detainees Sued ICE. Then They Were Transferred to a Notorious Alabama Jail.*, Mother Jones, July 21, 2020, https://www.motherjones.com/politics/2020/07/seven-detainees-sued-ice-then-they-were-transferred-to-a-notorious-alabama-jail/ (Baranetsky Decl. ¶ 12, Ex. 10); *Emails Show Officials Blocked Coronavirus Testing During Outbreak at Mesa Verde ICE Jail*, Democracy Now, Aug. 7, 2020, https://www.democracynow.org/2020/8/7/headlines/emails_show_officials_blocked_coronavirus_testing_during_outbreak_at_mesa_verde_ice_jail (Baranetsky Decl. ¶ 13, Ex. 11); Monique O. Madan, *Miami Federal Judge Orders a New Fact-Finder to Investigate ICE Detention Centers*, Miami Herald, July 20, 2020, https://www.miamiherald.com/news/local/immigration/article244346252.html (Baranetsky Decl. ¶ 14, Ex. 12); Rebecca Klar, *Watchdog Suing ICE, DHS, CBP to Release Records of Deaths in Custod*y, The Hill, July 23, 2020, https://thehill.com/regulation/court-battles/508701-watchdog-suing-ice-dhs-cbp-to-release-records-of-deaths-in-custody (Baranetsky Decl. ¶ 15, Ex. 13). Moreover, it is unclear if the sealed records here—some of which date back two years—are entirely stale. Thus, unsealing appears even more appropriate because countervailing interests seem

---

[1] "Ensuring that asylum seekers have access to a meaningful parole process has become even more critical in light of the Supreme Court's recent decision in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2019)" (enumerating that the parole process is required). Compl. ¶ 6. Similarly, this Court in *R.I.L-R. v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015), preliminarily enjoined a DHS policy of detaining families seeking asylum that was designed to "send[] a message of deterrence" to other migrants. *Id*. at 188-89.

nonextant—where these records appear to have no putative harm and can only provide historical context for the public on the government's decisions.  Additionally, as stated above, CIR consents to any necessary redactions to the sealed documents to protect the asylum-seekers' personal privacy—further indicating that no countervailing interests exist.

### III.    ARGUMENT

**A.    CIR SHOULD BE PERMITTED TO INTERVENE FOR THE LIMITED PURPOSE OF UNSEALING COURT RECORDS.**

The press has standing to assert the right of public access to court records and proceedings. *See Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 609 n.25 (1982) ("representatives of the press and general public must be given an opportunity to be heard on the question of their exclusion" from court proceedings) (citation and internal quotation marks omitted); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 586 n.2 (1980) ("[T]he institutional press is the likely, and fitting, chief beneficiary of a right of access because it serves as the 'agent' of interested citizens, and funnels information about trials to a large number of individuals."); *see also In re Leopold to Unseal Certain Elec. Surveillance Appls. & Orders*, 964 F.3d 1121, 1134 (D.C. Cir. 2020).  The D.C. Circuit has long allowed limited intervention for the purpose of challenging the sealing of judicial documents.  *United States v. El-Sayegh*, 131 F.3d 158, 160 (D.C. Cir. 1997) (media organizations intervening in criminal proceedings to challenge sealing of plea agreement).

The D.C. Circuit also routinely permits non-party news organizations to intervene in civil cases for the limited purpose of requesting that records be unsealed.  *See, e.g.*, *In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325, 1327 (D.C. Cir. 1985) (media organization's intervention in defamation action to challenge sealing); *In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d 2, 11 (D.D.C. 2013) (newspaper's intervention to unseal settlement documents in a civil case); *Tavoulareas v. Washington Post Co.*, 111 F.R.D. 653, 655 (D.D.C. 1986) (media

organization's intervention to unseal discovery materials in a civil case); *see also Dhiab v. Trump*, 852 F.3d 1087 (D.C. Cir. 2017) (allowing intervention in habeas corpus proceeding for the purpose of seeking unsealing of "classified videotapes").

CIR has been reporting on the questions involving this case.[2]  Access to the records at issue is critical for CIR to understand the basis of the Court's rulings, and to present readers with a full and accurate account of the proceedings and historical decisions that helped lead Defendants to their current state of affairs.  Consistent with the authorities discussed above, CIR respectfully requests leave to intervene for the limited purpose of asserting the public's (and its own) right of access and challenging the sealing of records in this matter.

**B.    THERE IS A STRONG PRESUMPTION THAT THE RECORDS IN THIS CASE ARE OPEN TO THE PUBLIC.**

Now, years after this case was initially filed, this motion presents an opportune time to unseal the court records related to one of the most impactful and important news stories vital to the public interest today.  The sealed documents in this case are subject to the First Amendment and common-law rights of access, and there are no countervailing government interests sufficient to overcome these rights.  *Washington Post v. Robinson*, 935 F.2d 282, 288 (D.C. Cir. 1991).

**1.    The First Amendment and Common Law Rights of Access Apply to Civil Court Records Involving Detainment to Ensure Accountability and Integrity.**

Both the First Amendment and common law provide the public and the press with a presumptive right of access to a wide range of court records.  *Press-Enterprise Co. v. Super. Ct.*, 478 U.S. 1 (1986) ("*Press-Enterprise II*") (preliminary hearings); *Press-Enterprise Co. v. Super. Ct.*, 464 U.S. 501 (1984) ("*Press Enterprise I*") (voir dire); *Globe Newspaper*, 457 U.S. 596 (criminal trials).  Building on these cases, the D.C. Circuit has declared that "[t]he first amendment

---

[2] *See, e.g.*, Morel, *supra* at 7.

guarantees the press and the public a *general right of access to court proceedings and court documents* unless there are compelling reasons demonstrating why it cannot be observed." *Washington Post*, 935 F.2d at 287 (emphasis added). The common-law right of access is an exceptionally broad right.  Only "a narrow range of documents" is exempt from the common-law right of public access.  *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006); *see also In re Leopold*, 964 F.3d at 1127 (explaining importance and breadth of right in D.C. Circuit).

      **2.**      **The Court Should Unseal the Parole Determinations According to the First Amendment Right of Access.**

The First Amendment dictates under its two-part test that the parole determinations—involving detainment of individuals—at issue in this case should be disclosed.  There are two considerations for courts when deciding whether a particular judicial record is subject to the First Amendment presumption in favor of access.  *Press-Enterprise II*, 478 U.S. at 8.  The first is "whether the place and process have historically been open to the press and general public.  *Id.* The second is "whether public access plays a significant positive role in the functioning of the particular process in question."  *Id.*  Where a qualified public right of access exists, the records cannot be closed unless "specific, on the record findings are made demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'"  *Id.* at 13-14 (quoting *Press-Enterprise I*, 464 U.S. at 510).

Under the first prong of the *Press-Enterprise* test (the historic-availability prong), the right of access to these parole determinations begins with the historically indisputable right of access to civil and criminal trials, particularly where there are questions of detention at hand, in order to ensure a just and fair process has been applied.  Since the Norman Conquest, publicity of criminal trials has allowed "people not actually attending [trials to] . . . have confidence standards of fairness

11

are being observed . . . and that deviations will become known." *Press-Enterprise I*, 464 U.S. at

508.  "Openness thus enhances both the basic fairness of the criminal trial and the appearance of

fairness so essential to public confidence in the system." *Id.*; *see also Richmond Newspapers*, 448

U.S. at 569 (noting that as far back as the 17th century, leading English jurists "saw the importance

of openness to the proper functioning of a trial; it gave assurance that the proceedings were

conducted fairly to all concerned, and it discouraged perjury, the misconduct of participants, and

decisions based on secret bias or partiality.").

 Following this historic pattern, courts have recognized that the public has a qualified First

Amendment right of access to numerous types of judicial records in various analogous

proceedings, particularly where detainment is at issue.  For instance, in addition to the right

applying to nearly all facets of a criminal trial, *see, e.g.*, *N.Y. Civil Liberties Union v. N.Y.C. Transit

Auth.*, 684 F.3d 286, 297-98 (2d Cir. 2012) (collecting cases), circuit courts across the country

have universally extended the right to cover records such as presentence reports, *United States v.

Schlette*, 842 F.2d 1574, 1582-83 (9th Cir. 1988), and sentencing hearings.  *In re Hearst

Newspapers, L.L.C.*, 641 F.3d 168, 176 (5th Cir. 2011) (finding presumption of access, in accord

with decisions by "the Second, Fourth, Seventh, and Ninth Circuits"); *see also United States v.

Alcantara*, 396 F.3d 189, 196 (2d Cir. 2005) ("There is little doubt that the First Amendment right

of access extends to sentencing proceedings.").

Because the distinction between civil and criminal contempt is "elusive" and often without

a difference, *see Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 830-31

(1994), numerous courts have held that the public's right of access applies equally to civil and

criminal contempt proceedings, especially where incarceration is at hand.  *In re Grand Jury

Matter*, 906 F.2d 78, 86-87 (3d Cir. 1990) (holding that right attaches where incarceration is a

12

possible penalty); *see also Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 164 (2d Cir. 2013) (holding that the First Amendment public right of access attaches to "civil contempt proceedings . . . [because they] carry the threat of coercive sanctions").  Given the parole determinations concern detainment of asylees, as well as the fact that detainment is not just a possibility but a *definite alternative*—these records should be disclosed according to the history prong.

In line with that trend, although the D.C. Circuit "has neither recognized nor rejected that the First Amendment affords the public a right of access to civil proceedings," [3] a court within this Circuit has determined that documents in civil proceedings with a quasi-criminal nature—such as habeas proceedings—are covered by the First Amendment public right of access, and thus decided to unseal records analogous to those in this case.  *In re Guantanamo Bay Detainee Litig.*, 624 F. Supp. 2d 27, 35 (D.D.C. 2009).  In *In re Guantanamo Bay*, detainees at Guantanamo Bay petitioned for habeas relief to challenge the legality of their indefinite detention at that base.  The Court ordered the government to file a "factual return" as to each petitioner, which would contain the "factual basis upon which [the government was] detaining" the petitioner.  624 F. Supp. 2d at 30.  The government sought to seal the unclassified versions of the returns—arguing that they had

---

[3] Most circuit courts have also recognized that the First Amendment right of access extends to civil proceedings and records. *Dhiab*, 852 F.3d at 1099 (Rogers, J., concurring in part and concurring in the judgment) ("Every Circuit to consider the issue has concluded" that same "right of public access applies to civil" proceedings as well) (collecting cases); *see also Richmond Newspapers*, 448 U.S. at 580 n.17; *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124-27 (2d Cir. 2006) (holding that the First Amendment secures for the public and the press a right of access to civil proceedings); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1067-71 (3d Cir. 1984) ("the public and the press possess a First Amendment . . . right of access to civil proceedings"); *Rushford v. New Yorker Magazine*, 846 F.2d 249, 253 (4th Cir. 1988) ("We believe that the more rigorous First Amendment standard should also apply to documents filed in connection with a summary judgment motion in a civil case."); *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1178-79 (6th Cir. 1983) ("The historical support for access to criminal trials applies in equal measure to civil trials."); *In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984) ("[T]he policy reasons for granting public access to criminal proceedings apply to civil cases as well.").

made "inadvertent errors" in developing the unclassified returns and accidentally included some classified information therein. *Id.* Multiple press organizations sought leave to intervene to oppose the sealing of these unclassified returns, and the Court granted their motion. In so doing, the Court held, as a matter of first impression, that the public had a First Amendment right of access to filings in civil habeas proceedings. *Id.* at 34-35. Here, the same historical precedent should apply, as the "factual returns" at issue in that case are similar documents to the parole determinations in this case, in that they involve the government's explanation of a detained person's status.

Logic—the second factor of the *Press-Enterprise II* test—"whether public access plays a significant positive role in the functioning of the particular process in question"—also dictates the release of the parole determinations. 478 U.S. at 8. For instance, in the Court's reasoning in *In re Guantanamo Bay* is also relevant to that factor. In finding the factor satisfied, the Court there noted that: (1) "[p]ublic interest in Guantanamo Bay generally and these proceedings specifically has been unwavering . . . [and the] public's understanding of the proceedings . . . [would be] incomplete without the factual returns"; (2) the habeas proceedings at issue were of "critical importance and relevance," because they were the "vehicle for [the detainees] to challenge the government's decision to detain [them]"; and (3) "opening the judicial process ensures actual fairness as well as the appearance of fairness." 624 F. Supp. 2d at 37-38.

All of those interests are present in this case as well. As in *In re Guantanamo Bay*, there is enormous public interest in DHS's treatment of detainees. Indeed, as recent news media reports have shown, DHS's actions regarding the detention of immigrants are perhaps one of the most reported on stories of the year,[4] and have taken on a new salience during the COVID-19 pandemic,

---

[4] *See* Blitzer, *supra* at 1; Golshan, *supra* at 1.

as failure to grant parole can put detainees at substantial risk of contracting the virus in crowded ICE detentions centers.[5]  This litigation, like the habeas proceedings in *In re Guantanamo Bay*, is also of critical importance as it constitutes a means for some of the most vulnerable in our society to challenge the circumstances of their detention without due process.  *See Boumediene v. Bush*, 553 U.S. 723, 797 (2008) ("Within the Constitution's separation-of-powers structure, few exercises of judicial power are as legitimate or as necessary as the responsibility to hear challenges to the authority of the Executive to imprison a person."); *see also Rosales-Garcia v. Holland*, 322 F.3d 386, 408 (6th Cir. 2003) (en banc) (finding serious constitutional problems with indefinite detention of excludable noncitizens; *Ngo v. INS*, 192 F.3d 390, 396 (3d Cir. 1999) (same).[6] "Public access" to parole determinations "provides a check on the process by ensuring that the public may discover when a [asylee] has been held in contempt and held in custody." *United States v. Index Newspapers LLC*, 766 F.3d 1072, 1093 (9th Cir. 2014).  And without access to Defendants' parole determinations, the public's understanding of this litigation and DHS's practices is incomplete.[7]

Furthermore, logic also shows that there are no countervailing harms that could cause concern.  For instance, grand jury information is kept secret for four "distinct interests" not at issue

---

[5] Morel, *supra* at 7.

[6] *See also Nightingale v. U.S. Citizenship & Immigration Servs.*, 333 F.R.D. 449 (N.D. Cal. 2019) (certifying class of noncitizens in action against DHS alleging agency engaged in pattern or practice of failing to make timely determinations on noncitzens' FOIA requests for their alien registration files); *Abdi v. Duke*, 280 F. Supp. 3d 373, 2017 WL 5599521, at *23 (W.D.N.Y. Nov. 17, 2017) (As a federal court said in a similar case involving asylee detention, that class members' "physical and psychological impairments" resulting from their "prolonged confinement" established that detainees were irreparably harmed.), *vacated in part on other grounds sub nom. Abdi v. McAleenan*, 405 F. Supp. 3d 467 (W.D.N.Y. 2019).

[7] In fact, the stated purpose of the 2009 Parole Directive "is to ensure *transparent*, consistent and considered ICE parole determinations for arriving aliens seeking asylum in the United States." Parole Directive at ¶ 1 (emphasis added).

15

here.  *Cf. Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 218-19 (1979) (listing four

interests inapplicable here).  Here, many of the parole determinations are likely stale as time has

passed and circumstances have changed—some individuals may no longer even be in detention or

in this country.  Accordingly, because the public has a First Amendment right of access to

Defendants' parole determinations under the *Press-Enterprise II* test, the Court should grant CIR's

motion in the absence of a compelling and narrowly-tailored government interest to the contrary.

> 3.  **Continued Blanket Sealing of Defendants' Parole Determinations Cannot
> Serve Any Compelling Governmental Interest, Especially Where Anonymity
> Can Easily Be Provided Through Redactions.**

Because the constitutional right of access applies to the records of this case, the government

bears the burden to justify any sealing or redaction of records.  *In re Appl. of N.Y. Times Co. for*

*Access to Certain Sealed Court Records*, 585 F. Supp. 2d 83, 90 (D.D.C. 2008).  That heavy burden

demands the government demonstrate that closure "'is necessitated by a compelling governmental

interest, and is narrowly tailored to serve that interest.'"  *Globe Newspaper Co. v. Superior Court*

*for Norfolk Cty.*, 457 U.S. 596, 615 (1982).  "The interest is to be articulated along with findings

specific enough that a reviewing court can determine whether the closure order was properly

entered."  *Press-Enterprise I*, 464 U.S. at 510.  At this stage, there has been no public explanation

as to why the documents in these proceedings must be sealed in full.  *See In re Capital Cities/ABC,*

*Inc.'s Appl. for Access to Sealed Transcripts*, 913 F.2d 89, 95 (3d Cir. 1990).  Nonetheless, there

can be no compelling interest that justifies withholding of the parole determinations wholesale,

particularly where there is such a demonstrable public interest and redactions can easily be put in

place to quell any privacy concerns.

The ability for countless cases to move forward with redacted names while still outlining

legal arguments and at least part of the underlying factual circumstances, *see, e.g.*, *R.I.L-R*, 80 F.

Supp. 3d at 172; *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189-90 (2d Cir. 2008); *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 684-87 (11th Cir. 2001); *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000), demonstrates that it is easily feasible for portions of these parole determinations to be made open to public view without jeopardizing any compelling governmental interest.  Indeed, this Court and the D.C. Circuit have routinely permitted parties to proceed anonymously.  *See, e.g.*, *Doe v. Stephens*, 851 F.2d 1457, 1459 n.2 (D.C. Cir. 1988); *Doe v. U.S. Dep't of Justice*, 660 F. Supp. 2d 31, 40 (D.D.C. 2009); *Doe v. MAMSI Life & Health Ins. Co.*, 471 F. Supp. 2d 139 (D.D.C. 2007); *Doe v. Rumsfeld*, 341 F. Supp. 2d 1 (D.D.C. 2004); *Doe v. Islamic Salvation Front*, 257 F. Supp. 2d 115, 117-18 (D.D.C. 2003).  So, too, can parole determinations easily be made anonymous.

Moreover, large amounts of parole stories, determinations and information have already been made public through media accounts and other channels, Laura Villagran, *Cuban Asylum Seeker Remains Detained by ICE Without Parole*, NBC, Feb. 9, 2020, https://www.nbcdfw.com/news/local/texas-news/cuban-asylum-seeker-remains-detained-by-ice-without-parole/2307893/ (Baranetsky Decl. ¶ 16, Ex. 14) (discussing multiple disclosed parole denials), so keeping such information under seal is not necessary—or justifiable.  *See In re Grand Jury Subpoena, Judith Miller*, 493 F.3d 152, 154-55 (D.C. Cir. 2007) (ordering the "release" of "those redacted portions of [the] concurring opinion" where "the 'cat is out of the bag'" given that one grand jury witness "discusse[d] his role on the CBS Evening News"); *see also In re Motions of Dow Jones & Co.*, 142 F.3d 496, 505 (D.C. Cir. 1998) (noting that where a witness's attorney "virtually proclaimed from the rooftops that his client had been subpoenaed," that fact was no longer protected by grand jury secrecy).  And redacting portions of these parole determinations is a more narrowly tailored (and thus less-restrictive) alternative to withholding them wholesale.  *See*

17

*United States v. Doe*, 356 F. App'x 488, 490 (2d Cir. 2009) ("Where . . . a party seeks to seal the record of criminal proceedings *totally* and *permanently*, the burden is heavy indeed." (emphasis in original)); *In re Knight Publ'g Co.*, 743 F.2d 231, 234 (4th Cir. 1984) (citing *Press-Enterprise I*). In *Dow Jones*, for instance, the D.C. Circuit recognized that the trial court must consider whether redactions, rather than sealing whole documents, would be possible. 142 F.3d at 502, 506. This Court should do the same for the parole determinations.

### 4. The Court Should Unseal the Parole Determinations According to the Common Law Right of Access.

The public's common law right of access provides further justification to unseal the filings in this action. "The common law right of access to judicial records antedates the Constitution." *El-Sayegh*, 131 F.3d at 161-62. It provides a "right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-98 (1978) (internal footnote omitted). In analyzing whether the common law right of access applies, DC courts apply a two-step inquiry: "(1) whether the document being sought is a judicial record; and (2) whether the interests favoring public access outweigh those interests favoring nondisclosure." *Herron v. Fannie Mae*, No. CV 10-943 (RMC), 2016 WL 10677615, at *1 (D.D.C. June 20, 2016). Under both steps of this inquiry, it is clear that the common law right of access applies to Defendants' productions of the parole determinations.

First, these productions undoubtedly qualify as judicial records. Courts have determined that whether a document qualifies as a "judicial record" is based on "the role it plays in the adjudicatory process." *SEC v. Am. Int'l Grp.*, 712 F.3d 1, 3 (D.C. Cir. 2013) (quoting *El-Sayegh*, 131 F.3d at 163) (explaining that the common law protects the public's right to inspect and copy "those 'government document[s] created and kept for the purpose of memorializing or recording an official action, decision, statement, or other matter of legal significance, broadly conceived'"

18

(quoting *Wash. Legal Found. v. U.S. Sentencing Comm'n*, 89 F.3d 897, 905 (D.C. Cir. 1996))).

"Something 'intended to influence' a court's pending decision—a party's brief, for example—is

almost certainly a judicial record, while a document about which the court 'made no decisions'

and did not 'otherwise rel[y]' does not qualify." *Cable News Network, Inc. v. FBI*, 384 F. Supp.

3d 19, 41-44 (D.D.C.) (Boasberg, J.) (internal citation omitted), *recons. denied*, 401 F. Supp. 3d

187 (D.D.C.), *appeal filed*, No. 19-5278 (D.C. Cir. Oct. 21, 2019).   Here, the Court ordered

Defendants to file these parole determinations on the docket to monitor their compliance with the

Court's Preliminary Injunction Order.  *See* Dkt. No. 128 at 2.  The Court relied on these documents

in ruling on Plaintiffs' contempt motion (*see id.*), and will very likely need to consider them when

ruling upon the parties' upcoming summary judgment motions, as well as Plaintiffs' anticipated

motion for permanent injunctive relief.[8]  Accordingly, these parole determinations are critical to

the Court's adjudicatory process, and therefore constitute "judicial records" to which the common

law right of access presumptively applies.

"A court's conclusion that a document constitutes a judicial record triggers a 'strong

presumption in favor of public access.'"  *Cable News Network*, 384 F. Supp. 3d at 41-44 (quoting

*EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996)).  At this second step of

the unsealing analysis, DC courts weigh the following six facts to determine whether the interests

favoring public access outweigh those favoring nondisclosure:  (1) the need for public access to

the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that

---

[8] Defendants' monthly productions do not constitute mere discovery materials, which courts have, on occasion, held do not qualify as judicial records where they are only shared between the parties. *See Mokhiber v. Davis*, 537 A.2d 1100, 1109, 1111 (D.C. 1988) (*per curiam*) (presumptive right of public access applies to motions filed with the court concerning discovery, evidence submitted with such motions, and the court's depositions; but presumptive right of public access does not apply to depositions, interrogations, or the documents obtained in discovery that are neither submitted as evidence at trial nor filed in connection with motions).

someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings. *United States v. Hubbard*, 650 F.2d 293, 317-21 (D.C. Cir. 1980). Here, all six *Hubbard* factors weigh in favor of public access for the parole determinations CIR seeks to unseal.

First, there is an enormous need for public access to these documents. Public oversight is especially important where, as here, the due process rights of those most vulnerable in our society is at issue. *See, e.g.*, *Rosales-Garcia*, 322 F.3d at 408-410 n.29 (finding serious constitutional problems with indefinite detention of excludable noncitizens, noting, "[N]o circuit has concluded that the Due Process Clauses of the Fifth and Fourteenth Amendments do not apply to excludable aliens."); *Ngo*, 192 F.3d at 396 (same); *Ahad v. Lowe*, 235 F. Supp. 676, 687-88 (M.D. Pa. 2017) ("rising sea of case law" "has consistently determined that detained aliens," including arriving noncitizens, "are entitled to some essential measure of due process"); *Maldonado v. Macias*, 150 F. Supp. 3d 788, 800 (W.D. Tex. 2015) ("[I]t is clear that aliens—even inadmissible aliens—are entitled to some constitutional protections, including some amount of due process."). Additionally, "[p]ublic access" to parole determinations "provides a check on the process by ensuring that the public may discover when a[n] [asylee] has been held in . . . custody." *Index Newspapers LLC*, 766 F.3d at 1093; *see also Levine v. United States*, 362 U.S. 610, 615-16 (1960). This Circuit has also expressed the importance of federal agencies following their own rules, *Battle v. FAA*, 393 F.3d 1330, 1336 (D.C. Cir. 2005); *see also Steenholdt v. FAA*, 314 F.3d 633, 639 (D.C. Cir. 2003) ("The *Accardi* doctrine requires federal agencies to follow their own rules, even gratuitous procedural rules that limit otherwise discretionary actions."), and there is no other way

to know whether parole policies are followed other than for the public to have some insight into the actual parole determinations.

In fact, this Court itself highlighted the public interest in these parole determinations in its opinion granting Plaintiffs' preliminary injunction motion.  In reaching its decision, the Court noted that the "public benefit" was "the focus of the 2009 Directive," *Damus*, 313 F. Supp. 3d at 324; and also found that the public interest factor weighed in favor of preliminary injunctive relief because: "The public interest is served when administrative agencies comply with their obligations under the APA," *id.* at 342 (quoting *N. Mariana Islands*, 686 F. Supp. 2d at 21).

The second factor—the extent of previous public access—also weighs in favor of unsealing.  As set forth above, courts have previously granted public access to judicial records in civil cases where those records were significant to the adjudicatory process, and also to civil proceedings of a quasi-criminal nature—such as habeas proceedings.  Additionally, courts have historically applied the right of access in circumstances where there is a need for government accountability, particularly involving discretionary choices made by the executive branch.  *See, e.g.*, *United States v. Rosen*, 487 F. Supp. 2d 703, 716-17 (E.D. Va. 2007) ("Of course, classification decisions are for the Executive Branch, and the information's classified status must inform an assessment of the government's asserted interests under *Press-Enterprise*.  But ultimately, trial judges must make their own judgment about whether the government's asserted interest . . . is compelling or overriding."); *In re Washington Post Co.*, 807 F.2d 383, 391-92 (4th Cir. 1986) ("History teaches us how easily the spectre of a threat to 'national security' may be used to justify a wide variety of repressive government actions.  A blind acceptance by the courts of the government's insistence on the need for secrecy . . . would impermissibly compromise the independence of the judiciary and open the door to possible abuse.").  This tradition "ensure[s]

21

that th[e] constitutionally protected 'discussion of governmental affairs' is an informed one."
*Globe Newspaper*, 457 U.S. at 604-05 (citation omitted).  To accept otherwise would be to give
the Executive branch unilateral power to determine when the First Amendment access right
applies.  Indeed, the D.C. Circuit has emphasized repeatedly that "it is the court, not the
Government, that has discretion to seal a judicial record."  *Bismullah v. Gates*, 501 F.3d 178, 188
(D.C. Cir. 2007); *see also El Sayegh*, 131 F.3d at 160 (same).

The third through fifth factors also weigh in favor of unsealing.  These factors—(3) the fact
that someone has objected to disclosure, and the identity of that person; (4) the strength of any
property and privacy interests asserted; and (5) the possibility of prejudice to those opposing
disclosure—can be considered together.  In this case, Plaintiffs have not objected to disclosure of
the parole determinations as long as their names and identifying information are redacted prior to
unsealing—to which CIR has consented.[9]  Defendants have objected, but have not provided a
justification for doing so, nor explained how they would be prejudiced by the unsealing.  Courts
have held that unsupported objections to unsealing, especially by parties, carry little weight.  *See
Hyatt v. Lee*, 251 F. Supp. 3d 181, 185 (D.D.C. 2017) (noting that "litigants to this proceeding
have a lesser claim to privacy than third parties"); *see also In re Appl. of N.Y. Times*, 585 F. Supp.
2d at 92-94 (granting The New York Times' motion to unseal warrant materials after an
investigation concluded, noting that the government-defendant failed to establish any possibility
of prejudice); *Cable News Network*, 384 F. Supp. 3d at 41-44 (granting access to judicial records

---

[9] Courts may order government-defendants to redact documents prior to unsealing them.  *See In
re Appl. of N.Y. Times Co. for Access to Certain Sealed Court Records*, 585 F. Supp. 2d 83, 94
(D.D.C. 2008) (granting The New York Times' motion to unseal and requiring the government-
defendant "to release the warrant materials, redacting limited portions that would tend to reveal
the identity of a confidential informer . . . [and to] promptly provide the Court with the proposed
redactions of their records.").

where the FBI failed to "articulate [a sufficient] basis for the Court to conclude that [the fourth and fifth factors] favor[ed] withholding.").

Finally, the sixth factor—the purposes for which the documents were introduced during the judicial proceedings—also weighs in favor of unsealing.  "The more relevant a pleading is to the central claims of the litigation, the stronger the presumption of unsealing the pleading becomes."  *United States v. Thompson*, 199 F. Supp. 3d 3, 12 (D.D.C. 2016); *see also U.S. ex rel. Durham v. Prospect Waterproofing, Inc.*, 818 F. Supp. 2d 64, 69 (D.D.C. 2011) (explaining that "there is less of a pressing concern to unseal pleadings if they are not relevant to the claims," for example, if they were not used at trial or relied upon by the trial judge in his or her decision).  Here, it is indisputable that Defendants' monthly productions of parole determinations are critical to the merits of the case.  The Court itself acknowledged that it ordered the Defendants to file these monthly reports "so that it could monitor compliance with the Directive and the injunction."  Dkt. No. 128 at 2.  These reports are direct proof of whether Defendants are, in fact, changing their practice and granting parole to any asylees or instead, continuing to mass-incarcerate them without due process.  Accordingly, these reports will continue to be of great importance in this litigation as they will likely provide one of the main sources of evidence for the parties at the summary judgment and permanent injunction stage.

Overall, because none of these six *Hubbard* factors overcomes the common law presumption in favor of disclosure of judicial records, the Court should grant the motion and allow the public to have access to Defendants' parole determinations.  *See Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 668-69 (D.C. Cir. 2017) (holding common law right of access attached to district court briefs and record); *see also EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1410 (D.C. Cir. 1996).

## **CONCLUSION**

For all the reasons stated, CIR respectfully requests that this Court grant its request for limited person intervention; order the immediate unsealing of the parole determinations filed under seal in this action; and order that any future parole determinations be filed as unsealed.

Date: August 20, 2020

/s/ *Chelsea T. Kelly*
Chelsea T. Kelly (DC Bar No. 1045673)
Davis Wright Tremaine LLP
1301 K Street NW, Suite 500 East
Washington, DC 20005
Phone:  (703) 850-6317
Fax:  (202) 973-4450
Email:  chelseakelly@dwt.com

*Counsel for Third-Party Intervenor The Center for Investigative Reporting*

Victoria Baranetsky (*pro hac vice* pending)
General Counsel
The Center for Investigative Reporting
1400 65th St., Suite 200
Emeryville, CA 94608
Telephone: 510-982-2890, Ext. 390
Email: vbaranetsky@revealnews.org

*Lead Counsel for Third-Party Intervenor The Center for Investigative Reporting*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 20, 2020, I served a copy of the foregoing document on the Court and all parties of record by causing this document to be filed with the clerk of the Court through the CM/ECF system, which will provide electronic notice of this document to all attorneys of record.

Date: August 20, 2020

/s/ *Chelsea T. Kelly*
Chelsea T. Kelly (DC Bar No. 1045673)
Davis Wright Tremaine LLP
1301 K Street NW, Suite 500 East
Washington, D.C. 20005
Phone:  (703) 850-6317
Fax:  (202) 973-4450
Email:  chelseakelly@dwt.com

*Counsel for Third-Party Intervenor The Center for Investigative Reporting*